**DrinkerBiddle&Reath**
L L P

Aaron M. Moyer
215-988-2824 Direct
215-988-2757 Fax
aaron.moyer@dbr.com

*Law Offices*

One Logan Square, Ste. 2000
Philadelphia, PA
19103-6996

215-988-2700 phone
215-988-2757 fax
www.drinkerbiddle.com

CALIFORNIA
DELAWARE
ILLINOIS
NEW JERSEY
NEW YORK
PENNSYLVANIA
WASHINGTON DC
WISCONSIN

*Established 1849*

July 12, 2013

**VIA ECF**

The Honorable Joel Schneider
United States District Court for the
 District of New Jersey
Mitchell H. Cohen Bldg. & U.S. Courthouse
4th and Cooper Streets, Room 1050
Camden, NJ  08101

Re:  **Bobryk v. Durand Glass Manufacturing Company, Inc.**
     **Civil Action No. 1:12-cv-05360-NLH-JS**

Dear Judge Schneider:

This office represents Defendant Durand Glass Manufacturing Co., Inc. ("Durand") in the above-referenced matter. I write in response to the July 11, 2013 letter filed by Plaintiff Bobryk's counsel regarding Durand's communications with putative class members and production of documents requested by Plaintiff.

## DECLARATIONS OF PUTATIVE CLASS MEMBERS

Plaintiff's counsel has misstated the law and, once again, misrepresented the facts.

The case law is clear that defendants are permitted to communicate with putative class members at the pre-certification stage. *See Babbitt v. Albertson's Inc.*, No. C-92-1883, 1993 WL 128089, at *7 (N.D. Cal. Jan. 28, 1993) (defense counsel's pre-certification "interviewing of defendant's employees cannot be construed as misconduct" because defense counsel had explained to the employees that (1) counsel worked for the defendant, (2) the purpose of the interview was to enable counsel to evaluate and defend the action, (3) the employees were not obligated to participate in the interviews, and (4) there would be no retaliation for refusing to so participate, or favorable treatment for so participating); *Webb v. Discover Prop. & Cas. Ins. Co.*, No. 3:08cv1607, 2008 U.S. Dist. LEXIS 95431 (M.D. Pa. Nov. 24, 2008) (denying Plaintiff's motion to limit defendant's ability to contact putative class members because there was no clear record with specific findings that support the need for limiting communications); *Fulco v. Continental Cablevision, Inc.*, 789 F.Supp. 45 (D.Mass 1992) (defendant in securities class action not precluded from interviewing putative class members who were its own employees; defendant was free to conduct discovery and communicate ex parte with those persons regarding alleged fraudulent solicitation); *cf. Harris v. Green Tree Financial Corp.*, No. 97-1128, 1997 WL 805254 (E.D. Pa. Dec. 17, 1997), rev'd on other grounds, 183 F.3d

DrinkerBiddle&Reath
L L P

The Honorable Joel Schneider
July 12, 2013
Page 2

173 (3d Cir. 1999) (although "[d]istrict courts may issue Rule 23 orders to prevent abuses of the class action process . . . before a class is certified, it will ordinarily not be deemed inappropriate for a defendant to seek to settle individual claims").

Moreover, the Manual for Complex Litigation, on which Plaintiff attempts to rely, also supports Durand's position. Specifically, it states, "Defendants ordinarily are not precluded from communications with putative class members, including discussions of settlement offers with individual class members before certification, but may not give false or misleading information or attempt to influence class members in making their decision whether to remain in the class." Manual for Complex Litigation, Third, § 30.24 (excerpt attached hereto at Ex. A). The guidance on the same topic in the subsequent, and current, version of the Manual for Complex Litigation is no different: "Defendants and their counsel generally may communicate with potential class members in the ordinary course of business, including discussing settlement before certification, but may not give false, misleading, or intimidating information, conceal material information, or attempt to influence the decision about whether t request exclusion from a class certified under Rule 23(b)(3)." Manual for Complex Litigation, Fourth, § 21.12 (excerpt attached hereto at Ex. B)

Here, Defense counsel's communications with Durand employees are well-within these guidelines. Each declaration evidences that Defense counsel's communications were entirely appropriate, with each declaration stating as follows:

> I have been informed that Cindy Bobryk contends in a lawsuit that she filed that Durand's employees were not paid properly. I also have been informed that Cindy Bobryk wants to proceed as representative of other Durand employees, including me, to attempt to recover damages for alleged wage violations that she contends affect all employees in some fashion.
>
> I spoke with Durand's attorney voluntarily and understand that Durand will use the information I provided to attempt to demonstrate that Cindy Bobryk's experiences were not representative and, further, that Durand has not violated any laws regarding paying its employees.

*See* Ex. C, Declarations Produced By Durand.

There is absolutely no evidence that Durand engaged in *any* improper communications, and there is no evidence to support Plaintiff's baseless allegations that Durand's investigation of Ms. Bobryk's Complaint had any "chilling" effect on this litigation. There is certainly no "clear record of abuse," as is required, from which the Court could make specific findings with regard to Durand's contact with putative class

DrinkerBiddle&Reath
L L P

The Honorable Joel Schneider
July 12, 2013
Page 3

members and subsequently impose limitations. Indeed, Plaintiff received Durand's first set of declarations in early April and never raised this issue regarding communications with putative class members until now in its July 11, 2013 letter to the Court, after receiving additional declarations signed by Durand employees. There is also no basis for the relief that Plaintiff suggests, and, specifically, there is no basis for invading the work product protection of any attorneys' notes of communications with putative class members.

Plaintiff's only offer of authority for her position is an unpublished docket order from a special master in 2003. That Order is merely a response to a joint submission by the parties requesting that the special master help the parties resolve a dispute over the appropriate parameters of an advisory notice to be given to putative class members prior to defendants communicating with such putative class members. There is no such joint request before this Court; nor are there any facts to support Court intervention at this time.

**PRODUCTION OF DOCUMENTS**

The "extensive" production of documents on July 9, 2013 about which Plaintiff complains contained two categories of documents: (1) the time records and wage records for the opt-in plaintiffs that Durand seeks to depose (records that Plaintiff has requested in the instant discovery dispute), and (2) twelve additional declarations that were signed by Durand employees the week before they were produced.

First, as to the time records and wage records, these are exactly the documents that Plaintiff is seeking in the instant discovery dispute, which Durand agreed to produce prior to the depositions of the three opt-in plaintiffs. Durand has now produced those documents, though Plaintiff has not agreed to produce the three opt-in plaintiffs for depositions.

Plaintiff's continued argument that Durand must produce names and contact information and time records and wage records for the entire putative class is without basis, and Plaintiff's reliance on *Stillman v. Staples, Inc.*, No. 07-849, 2007 U.S. Dist. LEXIS 58873 (D.N.J. July 20, 2007) and Judge Falk's July 3, 2013 Order is misplaced. As Judge Falk noted, his Order, in line with the holding in *Stillman*, required the defendant to produce "the names, addresses, position and title *of employees with the same or similar job duties as the plaintiff*." (emphasis added). Judge Falk continued: "This Court will allow the discovery identified in *Stillman* . . . and nothing more at this time." (emphasis added). Ms. Bobryk testified in her deposition that she was not paid for pre-shift and post-shift duties in which she engaged prior to clocking in and after clocking out, including obtaining her tools and bike, changing into her uniform, and gathering critical information from the off-going shift. Ms. Bobryk was a rotating shift cold end

DrinkerBiddle&Reath
L L P

The Honorable Joel Schneider
July 12, 2013
Page 4

electromechanic, yet she requests information for the approximately 66 positions at Durand. There is no showing by Plaintiff that all 66 positions are similar to hers. In fact, not all the other positions for which she demands discovery require tools or a bike, the other positions do not require a uniform (and employees have the option of changing at the facility or not), and the exchange of information Ms. Bobryk claims is particular to her role in maintaining the plant machinery as a cold end electromechanic (in fact, many other positions, such as production workers on a continuous line, have little or no handover information). Accordingly, Durand has already produced time records and wage records for the other cold end electromechanics (which inherently includes the names and contact information for such individuals), who are the individuals that, in line with *Stillman*, have the same or similar job duties as the plaintiff. As set forth in Durand's July 3, 2013 letter, Durand has also produced significant class-wide discovery for the entire putative class, including job descriptions, policies, shift times, PPE, pay differential, information on the rounding system, and 30(b)(6) representatives to testify as to each and every one of the 25 separate topics identified by Plaintiff related to the entire putative class. Plaintiff's contention that there has been no class-wide discovery is simply not true.

Furthermore, Plaintiff has not provided any basis to compel production of time and wage records beyond what Durand has already produced. In fact, Judge Falk's Order is clear: no further production beyond the names, addresses, positions and titles of the employees with the same job duties at the pre-certification stage.

Second, as to the declarations, these declarations were signed the week prior to being produced and after the close of the discovery period. Durand timely produced the declarations.[1]

Regardless, Durand does not object to the extension of the deadline for Plaintiffs' motion for conditional and Rule 23 certification. In fact, Durand has already made that exact request so that it could take the depositions of the three opt-in plaintiffs, which is how the instant dispute came before the Court.

Thank you for Your Honor's attention to this matter. I look forward to addressing these issues with the Court on July 12, 2013 at 11:30 am.

---

[1] The undersigned was on vacation over the 4th of July holiday, returned to work on July 8, 2013, and produced these declarations the following day.

DrinkerBiddle&Reath
L L P

The Honorable Joel Schneider
July 12, 2013
Page 5

Respectfully submitted,

Aaron M. Moyer

AMM/bb

cc: Justin Swidler, Esq. (via ECF)
Nicholas George, Esq. (via ECF)
Thomas J. Barton, Esq. (via ECF)

PHLIT/ 1953715.1