# EXHIBIT

# B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| CINDY BOBRYK, et al. | : | |
| | : | |
| v. | : | No. 1-12-cv-05360 |
| | : | |
| DURAND GLASS MANUFACTURING | : | |
| COMPANY, INC., et al. | : | |
| | :. | |

DEFENDANT'S RESPONSES AND OBJECTIONS TO
PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION AND
SECOND SET OF INTERROGATORIES TO DEFENDANT
DURAND GLASS MANUFACTURING COMPANY, INC.

Defendant Durand Glass Manufacturing Company, Inc. ("Durand") hereby responds to

the correspondingly numbered paragraphs as follows:

## REQUESTS FOR ADMISSIONS

1.      **Admission 1:** Admit that Defendant currently applies the policy set forth in the "punching in/out – shift" memo (set forth at Durand – 724) to all non-exempt, hourly production employees of Defendant.

**RESPONSE:**

Admitted that Durand currently follows this policy as part of its overall time keeping

polices, which includes exceptions to this policy such as when an employee works overtime.

2.      **Admission 2:** Admit that Defendant's notice set forth in the "punching in/out – shift" memo (set forth at Durand – 724) was intended to be followed by all non-exempt, hourly production employees of Defendant upon publication of such.

**RESPONSE:**

Admitted, subject to Durand's clarification in Admission 1.

## DECLARATION OF CLARENCE NICHOLS PURSUANT TO 28 U.S.C. §1746

I, Clarence Nichols, declare pursuant to 28 U.S.C. § 1746 as follows:

1.      I, Clarence Nichols, am currently employed by Durand Glass Manufacturing Company, Inc. ("Durand" or the "Company") as a Batch House Operator. I have personal knowledge of the facts set forth in this Declaration and, if called as a witness, could and would testify competently to such facts under oath.

2.      I have been informed that Cindy Bobryk contends in a lawsuit that she filed that Durand's employees were not paid properly. I also have been informed that Cindy Bobryk wants to proceed as representative of other Durand employees, including me, to attempt to recover damages for alleged wage violations that she contends affect all employees in some fashion.

3.      I spoke with Durand's attorney voluntarily and understand that Durand will use the information I provided to attempt to demonstrate that Cindy Bobryk's experiences were not representative and, further, that Durand has not violated any laws regarding paying its employees.

4.      I am employed by Durand in the Millville plant as a Batch House Operator which involves unloading materials into the silo, mixing the batches and sending the batches to the holding bin.

5.      I work 8:00 a.m. to 6:00 p.m., 8 days on and 6 days off. I have been employed by Durand for approximately 23 years.   There are four other batch operators.

6.      When I arrive to work the first thing I do is that I clock in. I then put on my earplugs and safety glasses and proceed to the batch house. I come to work with my safety boots on. I have no other PPE.

7.      Once I arrive at the batch house after clocking in, I put on my dust mask and my gloves which I keep in my back pocket.

PHLIT/ 1853616.1

DURAND-01111

8.     When I come into work, generally no one is at the batch house. I check the log book which is handwritten once I get to the batch house. I do not use the computer or send emails. I do not have any handover conversations with anyone.

9.     It takes approximately 2 to 5 minutes to go from the time clock to the batch house.

10.    I am not aware of ever working before or after the start of my shift without getting paid.

11.    On rare occasions, I may work 10 minutes past my shift performing odds and ends. No one has asked me to do this and I am not required to work past the end of my shift. I generally do not put in for overtime and am not required to work past my shift.

12.    If I do work more than 15 minutes or more past my shift, I will submit an overtime slip.

13.    My supervisor is Bill White. We have meetings, approximately twice a week but these meetings occur during the shift.

I declare under penalty of perjury subject to the laws of the United States of America that the foregoing is true and correct.

Executed on this 14th day of MARCH, 2013, at Millville, New Jersey.


_Clarence E. Nichols Jr._
Clarence Nichols

PHLIT/ 1853616.1

DURAND-01112

## DECLARATION OF JAMES PITTMAN PURSUANT TO 28 U.S.C. §1746

I, James Pittman, declare pursuant to 28 U.S.C. § 1746 as follows:

1.     I, James Pittman, am currently employed by Durand Glass Manufacturing
Company, Inc. ("Durand" or the "Company") as a VAP Operator.  I have personal knowledge of
the facts set forth in this Declaration and, if called as a witness, could and would testify
competently to such facts under oath.

2.     I have been informed that Cindy Bobryk contends in a lawsuit that she filed that
Durand's employees were not paid properly.  I also have been informed that Cindy Bobryk wants
to proceed as representative of other Durand employees, including me, to attempt to recover
damages for alleged wage violations that she contends affect all employees in some fashion.

3.     I spoke with Durand's attorney voluntarily and understand that Durand will use
the information I provided to attempt to demonstrate that Cindy Bobryk's experiences were not
representative and, further, that Durand has not violated any laws regarding paying its
employees.

4.     I have been employed by Durand in the Millville plant for approximately 31
years.

5.     For the last 29 years, I have worked as a VAP operator on the Cold End
responsible for fusing glass components.

6.     My shift rotates on a weekly basis on all three shifts which are 7:00 a.m. 3:00
p.m., 3:00 p.m. to 11:00 p.m., and 11:00 p.m. to 7:00 a.m.

7.     I report to Dan Gentile.

8.     Generally I arrive 30 to 45 minutes early.  I put on my work boots (which I leave
at the plant) and spend the remaining time drinking coffee or engaging in other personal

DURAND-01113

activities. I put my boots on at the plant for my own convenience. I also wear safety glasses and ear plugs but no other PPE.

9. I do not clock in before 7 minutes before the hour per company rules, and I do not begin working until I am clocked in. I clock out between 53 minutes after the hour and the end of my shift.

10. My tools include a channel lock, and a 3/18" wrench.

11. I don't know when the company rule came into effect whereby I was not permitted to clock in earlier than 7 minutes before my shift. Prior to that company rule, I would clock in when I arrived but I wouldn't perform any work until the start of my shift. My routine has not changed. I just simply do not clock in now until 53 after the hour.

I declare under penalty of perjury subject to the laws of the United States of America that the foregoing is true and correct.

Executed on this _09/14_ day of _3_____, 2013, at Millville, New Jersey.

_____
James Pittman

- 2 -

DURAND-01114

## DECLARATION OF BRIAN RIO PURSUANT TO 28 U.S.C. §1746

I, Brian Rio, declare pursuant to 28 U.S.C. § 1746 as follows:

1.     I, Brian Rio, am currently employed by Durand Glass Manufacturing Company, Inc. ("Durand" or the "Company"). I have personal knowledge of the facts set forth in this Declaration and, if called as a witness, could and would testify competently to such facts under oath.

2.     I have been informed that Cindy Bobryk contends in a lawsuit that she filed that Durand's employees were not paid properly. I also have been informed that Cindy Bobryk wants to proceed as representative of other Durand employees, including me, to attempt to recover damages for alleged wage violations that she contends affect all employees in some fashion.

3.     I spoke with Durand's attorney voluntarily and understand that Durand will use the information I provided to attempt to demonstrate that Cindy Bobryk's experiences were not representative and, further, that Durand has not violated any laws regarding paying its employees.

4.     I have been employed by Durand for approximately seven months. I work on a rotating schedule with the "C" crew.

5.     I commute to work with one of the Chief Operators and arrive approximately one half hour before my shift. I spend this time eating, smoking cigarettes outside and generally chatting with my co-workers. I do not perform work during this time.

6.     I clock in 5 – 7 minutes before my shift and clock out 5 – 7 minutes before the end of my shift, and I only perform work while I am clocked in.

7.     I wear ear plugs and glasses while working. I wear my work boots into work. I do not wear any other PPE. I do not shower after the end of my shift. I do change out of my work clothes at the plant, but I do this for my own convenience.

DURAND-01115

I declare under penalty of perjury subject to the laws of the United States of America that the foregoing is true and correct.

Executed on this $\underline{14}$ day of $\underline{M \ Ar Ch}$, 2013, at Millville, New Jersey.

Brian Rio

- 2 -

DURAND-01116

## DECLARATION OF DAVID SUTTON PURSUANT TO 28 U.S.C. §1746

I, David Sutton, declare pursuant to 28 U.S.C. § 1746 as follows:

1. My name is David Sutton. I have been employed by Durand Glass Manufacturing ("Durand" or the "Company") in the Millville plant for approximately 12 years in the position of Hot End Electro-Mechanic, known as a "Hot End EM." I have personal knowledge of the facts set forth in this Declaration and, if called as a witness, could and would testify competently to such facts under oath.

2. I have been informed that Cindy Bobryk contends in a lawsuit that she filed that Durand's employees were not paid properly. I also have been informed that Cindy Bobryk wants to proceed as representative of other Durand employees, including me, to attempt to recover damages for alleged wage violations that she contends affect all employees in some fashion.

3. I spoke with Durand's attorney voluntarily and understand that Durand will use the information I provided to attempt to demonstrate that Cindy Bobryk's experiences were not representative and, further, that Durand has not violated any laws regarding paying its employees.

4. During my 12 years as a Hot End EM, I have worked the same Day Shift, on a 6:00 a.m. to 2:30 p.m. schedule.

5. My supervisor is Jim Hite.

6. My understanding of the policy for Hot End EMs is that we are required to report for our shift between 10 and 15 minutes prior to the scheduled time. During my 12 years as a

DURAND-01117

Hot End EM, I have always been paid for all time and overtime I have worked, including for each time that I arrived 10-15 minutes early for my shift.

7.  The process for getting paid for unscheduled time (including the 10-15 minute early .arrival) is to submit overtime slips to my supervisor and to the maintenance secretary, Theresa. I have never not been paid overtime or had overtime denied.

8.  When I arrive at the plant, the first thing I do is get changed into my uniform. Uniforms are not required, but I find it more convenient to use the laundry service offered by Durand and to change in and out of my uniform at the plant. I then put on composite-toed boots, which are required for my position, and then clock in for my shift. The only other thing I put on are safety glasses, which I always have on me. I have the choice of dressing at home and just coming into work without needing to change into a uniform or boots, but I find changing in the locker room is more convenient.

9.  After I am dressed, I clock in at the time clock, which is right outside the locker room and right next to the EM Shop, where I report for work. I do not clock in before 7 minutes before my scheduled time per company rules.

10. Most days (about 80% of them) I begin my shift in the shop by speaking to the Hot End EM who was working on the overnight shift, and have a 1-2 minute conversation to effect the shift handover. I also review the shift notes that the previous Hot End EM usually prepares.

11. After I clock in and report to the shop, I gather my tools, which are located in a locker in the Hot End area. After gathering my tools, my job duties involve performing repairs on equipment in the Hot End.

12. On most days (about 80% of the time), I return from the Hot End floor to the shop about 30-45 minutes prior to the scheduled end of my shift. At that time, I prepare my shift notes and enter my work time in Maximo, which is a computer program in which all EMs enter the precise amount of time they spent working on each machine during each day.

13. I clock out between 53 minutes after the hour and the scheduled end of my shift. I work past my scheduled shift only when there is an issue with a machine that I need to address, or if I need to cover part of the following shift due to absence or vacation. In those cases, I submit an overtime slip and am always paid for the time I worked past my originally scheduled shift.

I declare under penalty of perjury subject to the laws of the United States of America that the foregoing is true and correct.

Executed on this _14_ day of _March_, 2013, at Millville, New Jersey.

David Sutton

PHLIT/ 1862468.1

## DECLARATION OF FREDDY ROIG PURSUANT TO 28 U.S.C. §1746

I, Freddy Roig, declare pursuant to 28 U.S.C. § 1746 as follows:

1.    I, Freddy Roig, am currently employed by Durand Glass Manufacturing Company, Inc. ("Durand" or the "Company") as a PW technician. I have personal knowledge of the facts set forth in this Declaration and, if called as a witness, could and would testify competently to such facts under oath.

2.    I have been informed that Cindy Bobryk contends in a lawsuit that she filed that Durand's employees were not paid properly. I also have been informed that Cindy Bobryk wants to proceed as representative of other Durand employees, including me, to attempt to recover damages for alleged wage violations that she contends affect all employees in some fashion.

3.    I spoke with Durand's attorney voluntarily and understand that Durand will use the information I provided to attempt to demonstrate that Cindy Bobryk's experiences were not representative and, further, that Durand has not violated any laws regarding paying its employees.

4.    I am employed by Durand in the Millville plant as a PW technician, and provide service and support to the operating lines.

5.    I am currently assigned to Line 22 (Yankee Candle lids), which is located in the packaging and warehouse area.

6.    I use a device called a sensor which measures the fit of the lid to the jar and I use it to check for defects and a tight fit.

7.    I current work from 7:30 a.m. to 4:00 p.m. with a lunch break. I clock in and out for lunch. I also receive a morning and afternoon break which is paid.

PHLIT/ 1853541.1

8. In terms of equipment, I wear steel toed boots, safety glasses, and ear plugs. On occasion I wear chemical gloves or a face shield when I am doing welding which I put on and take off in the course of my work while clocked in.

9. My supervisor is Angel Chavez, who is in charge of the Cold End mechanics.

10. My typical routine when I arrive at work is to go to the locker room and change my boots and put on my safety goggles.

11. I proceed to the maintenance shop after I clock in. At the maintenance shop I will pick up my tool cart if needed or sometimes I use a red toolbox.

12. After I clock in, first priority is to go to Line 22 and speak with the crew leader, Tony Lamateer to see if there are any problems on the Line.

13. If I am not finished with a piece of equipment at the end of the day I power down the equipment so that the next shift PW tech can deal with it. If the equipment I am working on can't wait for the next PW tech, I will work overtime and will submit an overtime slip.

14. I track my jobs on a system called Maximo. I create work order in the system and routinely update the jobs that I am working throughout the day.

15. I do not believe that the Company failed to pay me for working before or after my scheduled shift.

PHLIT/ 1853541.1

DURAND-01121

16.    On occasion I am scheduled to be on call. If I am called in, I am guaranteed four hours of work at a minimum.

I declare under penalty of perjury subject to the laws of the United States of America that the foregoing is true and correct.

Executed on this _14_ day of __March__, 2013, at Millville, New Jersey.


_Wichecto Roigh._
Freddy Roig

- 3 -

DURAND-01122

## DECLARATION OF THOMAS SWANSON PURSUANT TO 28 U.S.C. §1746

I, Thomas Swanson, declare pursuant to 28 U.S.C. § 1746 as follows:

1.     I, Thomas Swanson, am currently employed by Durand Glass Manufacturing Company, Inc. ("Durand" or the "Company") as an electrician. I have personal knowledge of the facts set forth in this Declaration and, if called as a witness, could and would testify competently to such facts under oath.

2.     I have been informed that Cindy Bobryk contends in a lawsuit that she filed that Durand's employees were not paid properly. I also have been informed that Cindy Bobryk wants to proceed as representative of other Durand employees, including me, to attempt to recover damages for alleged wage violations that she contends affect all employees in some fashion.

3.     I spoke with Durand's attorney voluntarily and understand that Durand will use the information I provided to attempt to demonstrate that Cindy Bobryk's experiences were not representative and, further, that Durand has not violated any laws regarding paying its employees.

4.     I am employed by Durand in the Millville plant as an Electrician. For the last several years, I have worked on the 7:00 a.m. to 3:00 p.m. shift.

5.     I generally arrive to work at approximately 20 minutes before the start of my shift. Before I punch in, I put on my boots, turn on my computer, and read the paper until it is time to punch in. I do not perform any work before punching in.

6.     I do not relieve another employee when I start my shift and am not relieved by another employee, so there is no shift handover.

7.     I also wear safety glasses and ear plugs.

PHLIT/ 1853356.1

DURAND-01123

8. I wear my street clothes, along with appropriate foot wear, to work. On occasion, I will wear a "flash suit" when working with high voltage. I will change into a flash suit, as necessary, during my shift.

9. I clock in no earlier than 7 minutes before my shift. After I clock in, I get my tools, which are in a locked cabinet in the office.

10. I clock out between 7 minutes before and the end of my shift.

11. I report currently to James Hite. On occasion I am asked to work overtime either before the start of my shift in which case I will submit an overtime slip. Anytime I work past my scheduled time, I submit an overtime slip to be paid for that time, and I have never had a problem getting paid for all time worked.

12. I do not believe that I have worked any time in the last three years before the start of my shift or after the end of my shift for which I wasn't paid.

I declare under penalty of perjury subject to the laws of the United States of America that the foregoing is true and correct.

Executed on this _14_ day of _March_____, 2013, at Millville, New Jersey.

Thomas Swanson

DURAND-01124

## DECLARATION OF JOHN WOJCULEWSKI PURSUANT TO 28 U.S.C. §1746

I, John Wojculewski, declare pursuant to 28 U.S.C. § 1746 as follows:

1. I, John Wojculewski, am currently employed by Durand Glass Manufacturing Company, Inc. ("Durand" or the "Company") as the Set Up Decorator. I have personal knowledge of the facts set forth in this Declaration and, if called as a witness, could and would testify competently to such facts under oath.

2. I have been informed that Cindy Bobryk contends in a lawsuit that she filed that Durand's employees were not paid properly. I also have been informed that Cindy Bobryk wants to proceed as representative of other Durand employees, including me, to attempt to recover damages for alleged wage violations that she contends affect all employees in some fashion.

3. I spoke with Durand's attorney voluntarily and understand that Durand will use the information I provided to attempt to demonstrate that Cindy Bobryk's experiences were not representative and, further, that Durand has not violated any laws regarding paying its employees.

4. I am employed by Durand in the Millville plant as the Set Up Decorator, which involves affixing labels or other painting on our glassware.

5. I have been employed for approximately 16 years and currently work from 5:00 a.m. to 1:00 p.m. Monday through Friday. My supervisor is Dan Gentile.

6. I usually arrive at approximately 10 minutes before my shift. I walk into the building and clock in.

7. If I arrive any earlier than 10 minutes, I will stay in my car in the employee parking lot.

PHLIT/ 1853468.1

DURAND-01125

8.      After I clock in, I put on my glasses and ear plugs and walk to my machine where I leave my gloves. I wear appropriate footwear as required by Durand, but I generally do not change my shoes or clothes at the plant.

9.      I do not have any meetings prior to or after the start of my shift. All the tools that I need I leave at my workstation in the decorating area.

10.     I never worked overtime before or after my shift for which I do not get paid.

11.     On occasion I work overtime and am paid for it.

I declare under penalty of perjury subject to the laws of the United States of America that the foregoing is true and correct.

Executed on this __14__ day of __March__, 2013, at Millville, New Jersey.

John Wojculewski

DURAND-01126

## DECLARATION OF DONALD SCHRODER PURSUANT TO 28 U.S.C. §1746

I, Donald Schroder, declare pursuant to 28 U.S.C. § 1746 as follows:

1.     I, Donald Schroder, am currently employed by Durand Glass Manufacturing Company, Inc. ("Durand" or the "Company") as a Fusion Leader. I have personal knowledge of the facts set forth in this Declaration and, if called as a witness, could and would testify competently to such facts under oath.

2.     I have been informed that Cindy Bobryk contends in a lawsuit that she filed that Durand's employees were not paid properly. I also have been informed that Cindy Bobryk wants to proceed as representative of other Durand employees, including me, to attempt to recover damages for alleged wage violations that she contends affect all employees in some fashion.

3.     I spoke with Durand's attorney voluntarily and understand that Durand will use the information I provided to attempt to demonstrate that Cindy Bobryk's experiences were not representative and, further, that Durand has not violated any laws regarding paying its employees.

4.     I am employed by Durand in the Millville plant working as a Fusion Leader from 8:00 a.m. to 5:00 p.m. Monday through Friday with a one hour lunch break.

5.     I report to Frank Vanaman.

6.     I have been in my position since 1995. I started with the company in 1988.

7.     The first thing I do when I arrive to work is that I clock in. I then usually go to the office and put on my shoes. Generally, the next thing I do is go to the furnace.

8.     I also wear safety glasses , safety shoes and ear plugs, and usually gloves, while working. Sometimes I also wear a mask, depending on what I am doing.

9.     I have no pre-shift or post-shift meetings and no changeover conversations.

10. From in the batch house, I get reports of receiving and consumption of the previous day and I enter it into SAP. I do this while I am clocked in.

11. I do not perform work while I am not clocked in.

I declare under penalty of perjury subject to the laws of the United States of America that the foregoing is true and correct.

Executed on this 14TH day of ___MARCH___, 2013, at Millville, New Jersey.

Donald Schroder

PHLIT/ 1853587.1

DURAND-01128

## DECLARATION OF FELIX GARCIA PURSUANT TO 28 U.S.C. §1746

I, Felix Garcia, declare pursuant to 28 U.S.C. § 1746 as follows:

1.      I, Felix Garcia, am currently employed by Durand Glass Manufacturing Company, Inc. ("Durand" or the "Company") as a Hot End Operator. I have personal knowledge of the facts set forth in this Declaration and, if called as a witness, could and would testify competently to such facts under oath.

2.      I have been informed that Cindy Bobryk contends in a lawsuit that she filed that Durand's employees were not paid properly. I also have been informed that Cindy Bobryk wants to proceed as representative of other Durand employees, including me, to attempt to recover damages for alleged wage violations that she contends affect all employees in some fashion.

3.      I spoke with Durand's attorney voluntarily and understand that Durand will use the information I provided to attempt to demonstrate that Cindy Bobryk's experiences were not representative and, further, that Durand has not violated any laws regarding paying its employees.

4.      I have worked for Durand as a Hot End Operator for the last 5 years. I currently work on Line 12 which is nearest to the break room and time clock.

5.      I work all three shifts on a rotating basis.

6.      I generally arrived at the locker room about 20 – 25 minutes prior to my shift. I change into by boots and uniform. I grab my safety glass and tools (a 17/19 box wrench, a 9/16 box wrench and pliers). I keep my tools in my pocket. I then put my food away in the break room. I usually then speak to my co-workers until the start of my shift.

7.      I punch in approximately 7 minutes or less before the start of my shift. I immediately relieve the prior shift operator. I do not have any meetings or discussions with the

DURAND-02662

operators and do not begin working until I am clocked in. The Chief Operators, however, do meet to discuss the shift changeover.

8.     I clock out approximately 5 minutes or less before the end of the shift.

9.     I go to the locker room, shower and change my clothes. I am not required to wear a specific uniform and I shower and change for my own convenience.

I declare under penalty of perjury subject to the laws of the United States of America that the foregoing is true and correct.

Executed on this ___1___ day of ___7-1-13___, 2013, at Millville, New Jersey.


_Felix Garcia_
Felix Garcia

- 2 -

PHLIT/ 1862293.1

DURAND-02663

## DECLARATION OF JEFF PIERCE PURSUANT TO 28 U.S.C. §1746

I, Jeff Pierce, declare pursuant to 28 U.S.C. § 1746 as follows:

1.     I, Jeff Pierce, am currently employed by Durand Glass Manufacturing Company, Inc. ("Durand" or the "Company") as Day Shift Mechanic. I have personal knowledge of the facts set forth in this Declaration and, if called as a witness, could and would testify competently to such facts under oath.

2.     I have been informed that Cindy Bobryk contends in a lawsuit that she filed that Durand's employees were not paid properly. I also have been informed that Cindy Bobryk wants to proceed as representative of other Durand employees, including me, to attempt to recover damages for alleged wage violations that she contends affect all employees in some fashion.

3.     I spoke with Durand's attorney voluntarily and understand that Durand will use the information I provided to attempt to demonstrate that Cindy Bobryk's experiences were not representative and, further, that Durand has not violated any laws regarding paying its employees.

4.     I am employed by Durand in the Millville plant as the Day Shift Mechanic from 7:00 a.m. through 3:00 p.m.

5.     I typically arrive to work about 20-30 minutes prior to my scheduled shift. I am not required to arrive early but prefer to do so because I do not like jumping right into work. Before punching in, I generally have a cup of coffee but I consider it to be "my time." I do not do any work, or even touch my tool box before punching in.

6.     I do not perform any work until I am punched in.

7.     I am not required to wear a uniform or any other specific equipment other than safety shoes, safety glasses, and ear protection. I can come to work with all of these items already on me and am not required to put on these items at the plant.

PHLIT/ 1853427.1

DURAND-02664

8.   I wear safety glasses, ear plugs and appropriate shoes but no other PPE.

9.   On occasion I am required to come in early, perhaps a few hours early, and in those cases I fill out an overtime slip and submit it to Teresa.

10.   I do not believe that I have ever been denied overtime in the past three years. I have been paid for all work I have performed before, during, or after my shift.

11.   There is no other Cold End Mechanic, so I do not have any shift handover when I begin or finish my shift.

12.   On almost all days, I finish my shift and punch out at my scheduled time of 4:00 p.m. On average, there are about ten work days within a two month period on which I work past my scheduled shift end time due to a mechanical breakdown. In those cases, I fill out an overtime slip and give it to Theresa. I have always been paid overtime for all times that I have stayed past my scheduled time.

I declare under penalty of perjury subject to the laws of the United States of America that the foregoing is true and correct.

Executed on this ___1___ day of ___July___, 2013, at Millville, New Jersey.

_____
Jeff Pierce

-2-

DURAND-02665

## DECLARATION OF SHAWN HOGAN PURSUANT TO 28 U.S.C. §1746

I, Shawn Hogan, declare pursuant to 28 U.S.C. § 1746 as follows:

1.  My name is Shawn Hogan. I am employed by Durand Glass Manufacturing ("Durand" or the "Company") in the Millville plant in the Hot End in the position of Production Set Up. I have personal knowledge of the facts set forth in this Declaration and, if called as a witness, could and would testify competently to such facts under oath.

2.  I have been informed that Cindy Bobryk contends in a lawsuit that she filed that Durand's employees were not paid properly. I also have been informed that Cindy Bobryk wants to proceed as representative of other Durand employees, including me, to attempt to recover damages for alleged wage violations that she contends affect all employees in some fashion.

3.  I spoke with Durand's attorney voluntarily and understand that Durand will use the information I provided to attempt to demonstrate that Cindy Bobryk's experiences were not representative and, further, that Durand has not violated any laws regarding paying its employees.

4.  My shift is from 7:00 am to 3:00 pm, Monday through Friday. I do not relieve another set up person, so there is no handover conversation when I begin my shift.

5.  Usually I arrive at Durand at around 6:00 am each day before work, but I do not clock in until seven minutes before my shift is schedule to begin. I usually clock out seven minutes before my shift is scheduled to end, or as soon as I can after seven minutes before the end time. Prior to clocking in, I change my clothes, drink coffee, smoke, and talk with the other guys. If I happen to run into a Chief Operator, I may ask if there were any issues with my machine overnight.

PHIL177 1864495.1

6.   After I clock in, I go to my tool locker; collect my gloves tools, set up sheets, and gauges; put them in my pocket; and go to my machine to begin working.

7.   Sometimes there are problems with the machine when I arrive at work, so I clock in early and begin working. Usually, in those cases, I clock out early at the end of the day after working my eight hours. If I work more than my scheduled shift, I submit an overtime slip and am paid for that time. I have always been paid overtime when I submit an overtime slip.

8.   I choose to get dressed at the plant for my own convenience. I am not required to get changed at the plant. I also choose to shower at the plant because I personally find it more convenient. I also choose to wear a uniform, which I obtain through Durand, though wearing a uniform is not required. I just find it more convenient to wear the uniform.

9.   I am required to wear ear plugs, safety glasses, a long sleeve shirt, and appropriate boots while working each day. I also wear hot gloves while performing certain tasks during the day.

10. I believe that I have been paid properly for all the time that I have worked at Durand. I have never had a problem being properly paid for all overtime that I worked at Durand.

I declare under penalty of perjury subject to the laws of the United States of America that the foregoing is true and correct.

Executed on this _____ day of _Juy_____, 2013, at Millville, New Jersey.

_____
Shawn Hogan

DURAND-02667

## DECLARATION OF RICH RYDEL PURSUANT TO 28 U.S.C. §1746

I, Rich Rydel, declare pursuant to 28 U.S.C. § 1746 as follows:

1. My name is Rich Rydel. I have been employed by Durand Glass Manufacturing ("Durand" or the "Company") in the Millville plant for approximately 27 years, and I currently work in the Hot End in Setup. I have personal knowledge of the facts set forth in this Declaration and, if called as a witness, could and would testify competently to such facts under oath.

2. I have been informed that Cindy Bobryk contends in a lawsuit that she filed that Durand's employees were not paid properly. I also have been informed that Cindy Bobryk wants to proceed as representative of other Durand employees, including me, to attempt to recover damages for alleged wage violations that she contends affect all employees in some fashion.

3. I spoke with Durand's attorney voluntarily and understand that Durand will use the information I provided to attempt to demonstrate that Cindy Bobryk's experiences were not representative and, further, that Durand has not violated any laws regarding paying its employees.

4. My scheduled shift is 7:00 am to 3:00 pm, Monday through Friday. I clock in as early as seven minutes before the scheduled start time, but I understand that I have a window between seven minutes before and seven minutes after my scheduled start time to clock in.

5. I usually arrive at the plant at around 6:15 or 6:20 in the morning. When I get there, I change my clothes, drink coffee, and smoke. Although I am not required to do it, I also may briefly look at the computer to see if there are any issues with my machine. If I happen to see

DURAND-02668

someone coming off of night shift, I may ask that person if my machine had any issues. I do not begin working, however, until I am clocked in.

6. After I clock in, I gather my tools from the Hot End locker room and determine what I need to do on the shift that day, and I then begin working. Also, after I clock in, I check with the Operator on the machine to see if there are any issues on the machine that I should be aware of. Getting this information from the Operator is part of my job.

7. Sometimes, when I arrive at the plant, there is a problem on the machines and I will clock in immediately and begin working. In these instances, someone fills out an overtime slip for me and I am paid appropriately for the extra time worked. If I forget to fill out an overtime slip, someone from payroll will remind me, and I complete an overtime slip and am paid appropriately for the time worked. I have always been paid for overtime that I worked.

8. I am required to wear ear plugs, safety glasses, and appropriate boots. I also wear gloves while performing certain tasks during my shift.

9. I choose to wear a uniform, though I am not required to do so. I also choose to change into my uniform at the plant for my own convenience. I find it easier to have the uniform washed by the Company's service than taking the dirty clothes home with me and washing them at home each day.

10. Sometimes I am required to attend production meetings. Usually these meetings occur during my shift. Sometimes, however, they occur after the end of my shift, in which case I am paid overtime for attending the meeting.

PHLIT7 1864610.1

11. I believe that I have always been paid for my time worked at Durand. I have never had a problem with the Company paying me appropriately, and I have been paid for all overtime that I worked.

I declare under penalty of perjury subject to the laws of the United States of America that the foregoing is true and correct.

Executed on this ___1___ day of _____7_____ 2013, at Millville, New Jersey.

_Richard Rydel_

Rich Rydel

DURAND-02670

### DECLARATION OF CHRISTOPHER ELDRIDGE PURSUANT TO 28 U.S.C. §1746

I, Christopher Eldridge, declare pursuant to 28 U.S.C. § 1746 as follows:

1. My name is Christopher Eldridge. I have been employed by Durand Glass Manufacturing ("Durand" or the "Company") in the Millville plant for almost one and a half years in the position of Relief Operator in the Hot End. I have personal knowledge of the facts set forth in this Declaration and, if called as a witness, could and would testify competently to such facts under oath.

2. I have been informed that Cindy Bobryk contends in a lawsuit that she filed that Durand's employees were not paid properly. I also have been informed that Cindy Bobryk wants to proceed as representative of other Durand employees, including me, to attempt to recover damages for alleged wage violations that she contends affect all employees in some fashion.

3. I spoke with Durand's attorney voluntarily and understand that Durand will use the information I provided to attempt to demonstrate that Cindy Bobryk's experiences were not representative and, further, that Durand has not violated any laws regarding paying its employees.

4. I typically arrive to work about 30-45 minutes before my shift, but I do not clock in until seven minutes before my shift begins. Before I clock in, I usually go to the cafeteria, smoke, change my clothes, and relax before the work day begins. I consider this to be my personal time and am not required to be at the plant during this time. I do not perform any work prior to clocking in, and I do not perform any work after clocking out at the end of the day.

5. I change my clothes at the plant. However, I am not required to do this, and I do it for my own convenience because I find it easier to get dressed for work at the plant.

PHLIT7 1864476.1

DURAND-02671

6. After I clock in and report to the machine where I will be working, I have a very brief conversation with the operator that I am relieving to find out whether there were any problems on the previous shift. This conversation is not required by the Company, but I find the information helpful when I begin working on the machine. This conversation is usually less than one minute long, however if there are any issues it could be up to 2-3 minutes long. The machine continues running and must be manned at all times so there is very little time for this conversation to occur.

7. I wear safety glasses, ear plugs and boots while working. I am not required to wear a uniform. Sometimes I wear a face shield, and sometimes I wear gloves, depending on the task that I am performing. If needed, I get these items after I am clocked in.

8. I believe that I have been paid properly for all the time that I have worked at Durand, including all overtime that I worked.

I declare under penalty of perjury subject to the laws of the United States of America that the foregoing is true and correct.

Executed on this ____1____ day of ___July___, 2013, at Millville, New Jersey.

_____
Christopher Eldridge

<u>DECLARATION OF EDGAR WOLBERT, JR. PURSUANT TO 28 U.S.C. §1746</u>

I, Edgar Wolbert, Jr., declare pursuant to 28 U.S.C. § 1746 as follows:

1. My name is Edgar Wolbert, Jr., though most people call me Rusty. I have been employed by Durand Glass Manufacturing ("Durand" or the "Company") in the Millville plant for approximately 22 years, and I currently work as an Operator in the Hot End. I have personal knowledge of the facts set forth in this Declaration and, if called as a witness, could and would testify competently to such facts under oath.

2. I have been informed that Cindy Bobryk contends in a lawsuit that she filed that Durand's employees were not paid properly. I also have been informed that Cindy Bobryk wants to proceed as representative of other Durand employees, including me, to attempt to recover damages for alleged wage violations that she contends affect all employees in some fashion.

3. I spoke with Durand's attorney voluntarily and understand that Durand will use the information I provided to attempt to demonstrate that Cindy Bobryk's experiences were not representative and, further, that Durand has not violated any laws regarding paying its employees.

4. I typically arrive about one-half hour before my shift is scheduled to start, but I do not clock in until seven minutes before my shift is scheduled to start. Prior to clocking in, I go to the locker room and put on my boots, I get my tool bag, and I go to the break room to chat with the guys. I consider this my personal time before I begin working.

5. I wear ear plugs, safety glasses, and boots while working. I put in my ear plugs after clocking in, and I put on my safety glasses after having clocked in and while on my way to my work area. I choose to put on my boots at the plant for my own convenience, but I am not

PHLIT7 1864634.1

DURAND-02673

required to put them on at the plant. I could also shower at the plant, if I wanted to, but I choose not to do so.

6.  When I get to my machine to begin working, I ask the Operator who I am relieving if the machine had any issues during the past shift. This conversation is very brief, only 2-3 minutes at most. We are both clocked in when this conversation occurs.

7.  When I work overtime, my foreman submits an overtime slip for me, and I call the office to let them know. I have always been paid appropriately for the overtime that I have worked at Durand.

I declare under penalty of perjury subject to the laws of the United States of America that the foregoing is true and correct.

Executed on this __1__ day of ____July____, 2013, at Millville, New Jersey.

_Edgar M. Wolber Sr._
Edgar Wolbert, Jr.

DURAND-02674

## DECLARATION OF ANDREW RISLEY PURSUANT TO 28 U.S.C. §1746

I, Andrew Risley, declare pursuant to 28 U.S.C. § 1746 as follows:

1. My name is Andrew Risley. I have been employed by Durand Glass Manufacturing ("Durand" or the "Company") in the Millville plant for about 12 years. I have worked as a Relief Operator for the past year-and-a-half. I have personal knowledge of the facts set forth in this Declaration and, if called as a witness, could and would testify competently to such facts under oath.

2. I have been informed that Cindy Bobryk contends in a lawsuit that she filed that Durand's employees were not paid properly. I also have been informed that Cindy Bobryk wants to proceed as representative of other Durand employees, including me, to attempt to recover damages for alleged wage violations that she contends affect all employees in some fashion.

3. I spoke with Durand's attorney voluntarily and understand that Durand will use the information I provided to attempt to demonstrate that Cindy Bobryk's experiences were not representative and, further, that Durand has not violated any laws regarding paying its employees.

4. I work on a rotating shift. This means that my scheduled shift changes every week. The shifts for Hot End Operators are 7:30 a.m. to 3:30 p.m.; 3:30 p.m. to 11:30 p.m.; and 11:30 p.m. to 7:30 a.m.

5. I typically arrive at the plant about thirty minutes before my scheduled shift, but I do not clock in until seven minutes before my shift begins. I prefer to arrive early because I do not like to rush into my shift. After I arrive at the plant, I go to the locker room to change into my uniform and boots.

DURAND-02675

6. I am not required to wear a uniform, but I prefer that over dirtying my own clothes. I use the uniform cleaning service offered by the Company because I prefer that over washing the uniform myself. Sometimes I take a clean uniform home with me so that I can arrive to work in my uniform the next day. Other days, I just change into my uniform at work. I also change into my boots in the locker room to avoid getting my car dirty. After I am finished changing, I go to the break room to wait for my shift to begin. In the break room I eat, talk to my co-workers, and generally hang out. I do not perform any work or go onto the production floor until after I clock in. For the past year, I have not clocked in until seven minutes prior to my shift due to the rule that requires me not to clock in until seven minutes prior to my shift. Before this rule was in place, I followed the same routine set forth above, except that I would typically clock in when I arrived at the plant. I always started work around my scheduled time despite clocking in well in advance.

7. While I am waiting in the break room, I check the line up, which tells me my assignment for the day. Usually, I start my shift without needing to relieve another Operator, so I perform general labor tasks, like making sure there is water and Gatorade on the production floor. Sometimes, I need tools for my job. I have a bag of tools that I keep in a locker located on the Hot End. I get my bag of tools after I am clocked in.

8. When I relieve another Operator, I speak to them briefly about the machine, but this conversation only takes 1-2 minutes, at the most. Since the Operator is taking a break, we are both clocked in when this conversation occurs.

9. About ninety percent of the time, I am finished working and clock out by the scheduled end of my shift. The other 10% of the time, I stay over because I am working overtime, for

DURAND-02676

which I am paid. When I work overtime, my foreman fills out an overtime slip to verify that I worked overtime. I have never worked past my scheduled time and not been paid overtime for doing so.

10. After I am finished working and clock out, I go to the locker room to change out of my work clothes. I shower at home, at my choice.

11. I also wear safety glasses and ear plugs while working. I keep my safety glasses in my locker. If I need ear plugs, they are found throughout the production and right before I enter the floor.

12. I believe that I have been paid properly for all the time that I have worked at Durand, including all overtime that I worked.

I declare under penalty of perjury subject to the laws of the United States of America that the foregoing is true and correct.

Executed on this ___2___ day of ___July___, 2013, at Millville, New Jersey.

_Andrew D. Risley_
Andrew Risley

PHIL17/1942475.1

DURAND-02677

## DECLARATION OF ROY BOWER PURSUANT TO 28 U.S.C. §1746

I, Roy Bower, declare pursuant to 28 U.S.C. § 1746 as follows:

1. My name is Roy Bower. I have been employed by Durand Glass Manufacturing ("Durand" or the "Company") in the Millville plant for thirteen years as an Operator in the Hot End. I have personal knowledge of the facts set forth in this Declaration and, if called as a witness, could and would testify competently to such facts under oath.

2. I have been informed that Cindy Bobryk contends in a lawsuit that she filed that Durand's employees were not paid properly. I also have been informed that Cindy Bobryk wants to proceed as representative of other Durand employees, including me, to attempt to recover damages for alleged wage violations that she contends affect all employees in some fashion.

3. I spoke with Durand's attorney voluntarily and understand that Durand will use the information I provided to attempt to demonstrate that Cindy Bobryk's experiences were not representative and, further, that Durand has not violated any laws regarding paying its employees.

4. I work on a rotating shift. This means that my scheduled shift changes every week. The shifts for Hot End Operators are 7:30 a.m. to 3:30 p.m.; 3:30 p.m. to 11:30 p.m.; and 11:30 p.m. to 7:30 a.m.

5. I usually arrive to the plant about 20-25 minutes prior to the scheduled start of my shift. After I pull into the plant parking lot, I go to the locker room to change into my uniform and boots. I am not required to wear a uniform, but I prefer that over dirtying my own clothes. I use the uniform cleaning service offered by the Company, so it is in my locker when I arrive to work.

PHLIT/ 1942472.1

DURAND-02678

I also keep my boots in my locker so that I do not get grease in my car. This is my choice. It is also my choice to show up to the plant early.

6. After I change into my uniform, I go to the break room to wait for my shift to begin. I do not perform any work until after I clock in. I do not clock in until seven minutes prior to my shift. I am usually on the production floor by five minutes prior to my scheduled shift. When I arrive on the production floor, I speak with the Operator from the prior shift to find out about any issues that may have occurred. This conversation takes only about 30 seconds.

7. About ninety-five percent of the time, I am finished working and off the floor by my scheduled end of shift, or a few minutes early. About five percent of the time, the incoming Operator is late and I am finished working and off the floor within five minutes after the scheduled shift end. I believe the extra minutes in these cases even out over the course of time given that I also sometimes clock out early and am nevertheless paid for my scheduled shift.

8. In addition to a uniform and boots, I wear safety glasses, ear plugs and, gloves while working. The gloves and safety glasses are in my locker when I arrive to work. Ear plugs are located in dispensers throughout the floor and right before I enter the production floor.

9. I believe that I have been paid properly for all the time that I have worked at Durand, including all overtime that I worked.

PHLIT/ 1942472.1

I declare under penalty of perjury subject to the laws of the United States of America that the foregoing is true and correct.

Executed on this ___2___ day of ___July___, 2013, at Millville, New Jersey.

_____
Roy ~~Bower~~ Bowser

DURAND-02680

<u>DECLARATION OF QUANDA PETERSON PURSUANT TO 28 U.S.C. §1746</u>

I, Quanda Peterson, declare pursuant to 28 U.S.C. § 1746 as follows:

1.  My name is Quanda Peterson. I have been employed by Durand Glass Manufacturing ("Durand" or the "Company") in the Millville plant for approximately eight years in the position of Cold End Packer. I have personal knowledge of the facts set forth in this Declaration and, if called as a witness, could and would testify competently to such facts under oath.

2.  I have been informed that Cindy Bobryk contends in a lawsuit that she filed that Durand's employees were not paid properly. I also have been informed that Cindy Bobryk wants to proceed as representative of other Durand employees, including me, to attempt to recover damages for alleged wage violations that she contends affect all employees in some fashion.

3.  I spoke with Durand's attorney voluntarily and understand that Durand will use the information I provided to attempt to demonstrate that Cindy Bobryk's experiences were not representative and, further, that Durand has not violated any laws regarding paying its employees.

4.  I clock in to begin my shift seven minutes before my shift is schedule to begin. I typically arrive to Durand approximately 15-20 minutes before my shift is scheduled to begin. When I arrive, I read from the board where I will be working that shift, and then I wait until seven minutes before the shift to clock in. I do not perform any work until I am clocked in.

5.  I am often scheduled to be a relief person. When I am working as a relief person, I go to the office after clocking in to receive direction from the foreman as to where I should go to provide relief first.

PHIL1T/ 1864554.1

DURAND-02681

6. I understand that the Company used to permit clocking in up to 20 minutes before the shift started, but, even then, I would not begin working until the start of my shift.

7. I usually clock out between seven minutes before and the end time of my scheduled shift. Every now and then, perhaps once per month, the person relieving me is late at the end of the shift and I am unable to clock out by the scheduled end time. Even in these situations, I usually am able to clock out within a few minutes after my scheduled end time.

8. I am required to sign up for up to three overtime shifts per week, although I am not always scheduled to work all of those shifts. When I do work overtime, I am paid properly for it.

9. I am required to wear safety glasses, ear plugs, and appropriate shoes. I am also required to wear gloves for certain things I do during the shift. I am not required to wear a uniform.

10. I wear my work shoes into the plant each day and home after my shift. I could get changed at the plant if I wanted to, but I choose not to do so.

I declare under penalty of perjury subject to the laws of the United States of America that the foregoing is true and correct.

Executed on this __2__ day of ____July____, 2013, at Millville, New Jersey.

_Quanda Peterson_
Quanda Peterson

PHIL1 7 1864554.1

DECLARATION OF DALE MASON PURSUANT TO 28 U.S.C. §1746

I, Dale Mason, declare pursuant to 28 U.S.C. § 1746 as follows:

1.  My name is Dale Mason.  I am employed by Durand Glass Manufacturing ("Durand" or the "Company") in the Millville plant, and I currently work as a Packer and Forklift Driver in the Cold End.  I have personal knowledge of the facts set forth in this Declaration and, if called as a witness, could and would testify competently to such facts under oath.

2.  I have been informed that Cindy Bobryk contends in a lawsuit that she filed that Durand's employees were not paid properly.  I also have been informed that Cindy Bobryk wants to proceed as representative of other Durand employees, including me, to attempt to recover damages for alleged wage violations that she contends affect all employees in some fashion.

3.  I spoke with Durand's attorney voluntarily and understand that Durand will use the information I provided to attempt to demonstrate that Cindy Bobryk's experiences were not representative and, further, that Durand has not violated any laws regarding paying its employees.

4.  I clock in no earlier than seven minutes before my shift begins.  When I am on day shift, I usually arrive to the plant about 15-20 minutes before my shift is scheduled to begin, but when I am on other shifts I often arrive closer to the start time.  Prior to clocking in, I sit in the break room, relax, and go outside to smoke cigarettes.  I do not perform any work until I am clocked in.

5.  As a Forklift driver, after clocking in I get the check sheet for my forklift from the office and then go over my forklift with the check sheet.  Once I have completed that, I drive to my assigned area for the shift.  Sometimes the forklift driver who is coming off the previous shift

PHLIT/ 1864663.1

will tell me if there are any issues that I should be aware of. However, this is an informal conversation that usually lasts less than one minute and we are both clocked in when this occurs.

6. I usually clock out between seven minutes before the end of my shift and the end of my shift.

7. I wear safety glasses, ear plugs, and appropriate shoes for each shift. I also wear gloves when performing certain tasks.

8. I do not usually change my clothes at the plant, and I choose not to wear a uniform. Although I also do not typically shower at the plant, sometimes I will do so for my own convenience. For example, if I have a specific place to go after work and need to shower and change to go there, I find it more convenient to shower at the plant after my shift ends.

9. I believe that I have been paid properly for all hours that I have worked at Durand, including overtime.

I declare under penalty of perjury subject to the laws of the United States of America that the foregoing is true and correct.

Executed on this __2__ day of _____July_____, 2013, at Millville, New Jersey.

_____
Dale Mason

DURAND-02684

## DECLARATION OF WILLIAM SEDA PURSUANT TO 28 U.S.C. §1746

I, William Seda, declare pursuant to 28 U.S.C. § 1746 as follows:

1. My name is William Seda. I am employed by Durand Glass Manufacturing ("Durand" or the "Company") in the Millville plant, and I currently work as a Packer in the Cold End. I have personal knowledge of the facts set forth in this Declaration and, if called as a witness, could and would testify competently to such facts under oath.

2. I have been informed that Cindy Bobryk contends in a lawsuit that she filed that Durand's employees were not paid properly. I also have been informed that Cindy Bobryk wants to proceed as representative of other Durand employees, including me, to attempt to recover damages for alleged wage violations that she contends affect all employees in some fashion.

3. I spoke with Durand's attorney voluntarily and understand that Durand will use the information I provided to attempt to demonstrate that Cindy Bobryk's experiences were not representative and, further, that Durand has not violated any laws regarding paying its employees.

4. I am required to sign up for three overtime shifts per week, though I am not always required to work all three overtime shifts. I am always paid for this overtime when I work it.

5. I can punch in as early as seven minutes before my shift is scheduled to start. When my shift starts at 8:00 am, I usually arrive to the plant at around 6:30 or 7:00 in the morning, though I do not punch in until seven minutes before my shift. Prior to punching in, I drink coffee, smoke cigarettes, and hang out in the break room. I consider this my own personal time and am not required by the Company to be at the plant during this time. I do not perform any work prior to punching in.

DURAND-02685

6. After I clock in, I go to the office to get a pair of gloves, go to the line, and begin working. I wear ear plugs, safety glasses, appropriate shoes, and gloves while working. I am not required to wear a uniform. I typically always have my glasses on, and I put in my ear plugs and put on my gloves after clocking in.

7. I wear my work shoes to the plant when I arrive and then home after the shift, I do not change my shoes at the plant. I have the option of showering and changing clothes at the plant, but I choose not to do so.

8. Although I am not required to do so, I have a very brief conversation with the Packer that I am relieving who worked the prior shift. I like to ask whether there were any problems on the prior shift that I should be aware of. Typically, this conversation lasts only about one minute, if that long. If there is a larger problem, the conversation may last up to about two minutes. We are both clocked in during this conversation.

9. Every now and then, though not often, the person relieving my from my shift is late arriving and I am not able to punch out by the scheduled end of my shift. However, even when

PHIL77 1864709.1

DURAND-02686

this occurs, I am still usually able to clock out and leave within 2-5 minutes of my scheduled shift end time.

I declare under penalty of perjury subject to the laws of the United States of America that the foregoing is true and correct.

Executed on this __2__ day of __July__, 2013, at Millville, New Jersey.

_William Seda_
William Seda

PHLIT/ 1864709.1

DURAND-02687

## DECLARATION OF GERRY BRICKER PURSUANT TO 28 U.S.C. §1746

I, Gerry Brinker, declare pursuant to 28 U.S.C. § 1746 as follows:

1.     I, Gerry Bricker, am currently employed by Durand Glass Manufacturing Company, Inc. ("Durand" or the "Company") as Chief Operator on the Hot End. I have personal knowledge of the facts set forth in this Declaration and, if called as a witness, could and would testify competently to such facts under oath.

2.     I have been informed that Cindy Bobryk contends in a lawsuit that she filed that Durand's employees were not paid properly. I also have been informed that Cindy Bobryk wants to proceed as representative of other Durand employees, including me, to attempt to recover damages for alleged wage violations that she contends affect all employees in some fashion.

3.     I spoke with Durand's attorney voluntarily and understand that Durand will use the information I provided to attempt to demonstrate that Cindy Bobryk's experiences were not representative and, further, that Durand has not violated any laws regarding paying its employees.

4.     I have been employed by Durand for approximately 20 years. I am currently a Chief Operator on the Hot End. My duties include troubleshooting defects or problems with the machines.  As an example, if a tube breaks, I will replace it.

5.     My shift rotates weekly as follows:  3:30 p.m. to 11:30 p.m., 11:30 p.m. to 7:30 a.m. and 7:30 a.m. to 3:30 p.m.

6.     Before each shift, I attend a scheduled 15 minute handover meeting with the outgoing Chief Operator. I am paid appropriately for an additional 15 minutes of time for this meeting.

7.     I generally arrive 1/2 hour early. I go to the locker room, put on my boots and work clothes and grab my tools (a box wrench which I keep in my pocket), my safety gloves and

PHLIT7 1862228.1

flashlight. This takes 5 minutes or less. I then usually go outside and have a cigarette. I then clock in and go to the pre-shift meeting which lasts 10-15 minutes. Other than safety glasses and ear plugs, I have no other protective equipment that I wear every day.

8.      About 15 minutes prior to the end of the shift, I attend the shift change-over meeting. I then punch out at the end of my shift.

9.      After I punch out, I shower and change back into my street clothes. I am not required to wear any specific clothing and I shower and change at Durand for my own convenience. Some of the guys on the Hot End shower and change at the plant; some do not.

I declare under penalty of perjury subject to the laws of the United States of America that the foregoing is true and correct.

Executed on this ___|___ day of ___July___, 2013, at Millville, New Jersey.

_____
Gerry Bricker

PHLIT/ 1862228.1

DURAND-02689

3.     **Admission 3:**  Admit that Defendant's rounding policy for rounding down for all time worked up to seven minutes in any quarter hour (as described in Defendant's Interrogatory Response No. 2(2)) currently applies to all non-exempt hourly production employees of Defendant.

**RESPONSE:**

Admitted only that the description in Durand's interrogatory response currently applies to

all non-exempt hourly production employees of Defendant.


4.     **Admission 4:**  Admit that after Defendant's publication of the policy set forth in Durand – 724, Defendant (by way of Sandy Bacon or other agents) on at least one occasion modified the clock in time of a non-exempt production employee – when that clock in time was greater than seven minutes in advance of the scheduled start time – to fall within the "seven minute rule" for clocking in and out. See Durand – 724.

**RESPONSE:**

Denied.


5.     **Admission 5:**  Admit that if an hourly non-exempt production employee clocked into his or her daily shift 7 minutes prior to the scheduled start time in a given 8 hour shift, and clocked out 7 minutes after the scheduled end time in a given 8 hour shift, under your current rounding system, that employee would be compensated for 8 hours of paid time for that given shift.

**RESPONSE:**

Admitted only that Durand currently follows the 15 minute interval policy permitted

under the FLSA and which is further described in Durand's interrogatory responses.

## SECOND SET OF INTERROGATORIES DIRECT TO DEFENDANT

**Interrogatory No. 11:**  If Defendant has denied any Requests for Admissions (*supra*), please provide the factual support for such denial, and identify those individuals with knowledge as to that denial.

**RESPONSE:**

Request for Admission Number 4 is a misstatement.  Time entries were changed in certain instances where appropriate to reflect actual time worked.  Individuals with knowledge of this include Ms. Bacon, Tom Reed, Stephanie Ojeda, and Kathy Mauro.

Dated:  May 10, 2013

Thomas J. Barton, Esq.
Aaron M. Moyer, Esq.
**DRINKER BIDDLE & REATH LLP**
One Logan Square, Ste. 2000
Philadelphia, PA 19103-6996
Tel: (215) 988-2700
Fax: (215) 988-2757

*Counsel for Defendant Durand Glass*
*Manufacturing Company, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

CINDY BOBRYK,

:
:                    CIVIL ACTION NO.

            Plaintiff,

:
:                    1:12-cv-05360-NLH-JS

              v.

:
:

DURAND GLASS MANUFACTURING
COMPANY, INC.,

:
:
:

            Defendant.

:
:

## CERTIFICATE OF SERVICE

I, Aaron M. Moyer, do hereby certify that on this date, I served a true and correct copy of

the foregoing Defendant's Responses and Objections to Plaintiff's First Set Requests for

Admission and Second Set of Interrogatories via electronic and first class mail, postage prepaid,

upon the following:

Justin Swidler, Esq.
Swartz Swidler, LLC
1878 Marlton Pike East, Ste. 10
Cherry Hill, NJ 08003

Dated:  May 10, 2013

_____
Aaron M. Moyer



# IMPORTANT NOTICE

## PUNCHING IN /OUT - SHIFT

## PUNCHING IN/OUT -LUNCH

### SHIFT PUNCHES :

Employees are required to punch in for the beginning of their shift **NO SOONER THAN 7 MINUTES PRIOR** to their shift begin time, and **NO LATER THAN 7 MINUTES** after their shift end time. Punching in MORE than 7 minutes before the beginning of shift or more than 7 minutes after the end of shift presents serious payroll issues and excessive administrative intervention to correct.

### LUNCH PUNCHES:

Employees who punch in and out for lunch must punch at the beginning of their lunch, and at the end of their lunch period. If their lunch period is interrupted, and they are required to return to work, they must punch back in. When they take the remainder of their lunch later in the day they must punch out, and then punch back in. If you are scheduled for a 30 minute lunch period, the total lunch time reflected on your time record MUST BE 30 minutes. (exceptions must be approved by your supervisor) If you are scheduled for a 60 minute lunch period, the total lunch time reflected on your time record MUST BE 60 minutes. (exceptions must be approved by your supervisor) .

These issues require a significant amount of administrative manual corrections, and must be resolved. It is one of the 8 wastes that we will work to eliminate!

Stephanie Ojeda
Human Resource Manager
4/15/11