Thomas J. Barton
Aaron M. Moyer
DRINKER BIDDLE & REATH LLP
One Logan Square, Ste. 2000
Philadelphia, PA 19103-6996
(215) 988-2700
*Attorneys for Defendant Durand Glass Manufacturing Co., Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| CINDY BOBRYK, individually and on behalf of all those similarly situated, | : : : : | |
| Plaintiff, | : : | CIVIL ACTION NO. |
| v. | : : : | 1:12-cv-05360-NLH-JS |
| DURAND GLASS MANUFACTURING COMPANY, INC., | : : : | |
| Defendant. | : : : | |

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF CINDY BOBRYK'S MOTION TO COMPEL AND LIMIT PRECERTIFICATION COMMUNICATIONS WITH PUTATIVE CLASS MEMBERS

Thomas J. Barton, Esq.
Aaron M. Moyer, Esq.
**DRINKER BIDDLE & REATH LLP**
One Logan Square, Suite 2000
Philadelphia, PA 19103-6996
Tel: (215) 988-2700
Fax: (215) 988-2757
Thomas. Barton@dbr.com
Aaron.Moyer@dbr.com
*Attorneys for Defendant Durand Glass Manufacturing Company, Inc.*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................... ii

I.      INTRODUCTION ................................................................................................ 1

II.     BACKGROUND ................................................................................................. 3

        A.      Durand's Declarations ............................................................................. 3

III.    ARGUMENT ...................................................................................................... 4

        A.      Durand and Its Counsel Are Permitted to Communicate With Putative
                Class Members........................................................................................ 4

        B.      Judicial Intervention Into Communications With Putative Class Members
                Requires A Clear Record of Abuse and Must Be Limited As Appropriate
                Under the Circumstances ......................................................................... 8

        C.      Communications With Putative Class Members Do Not Violate the Rules
                of Professional Conduct........................................................................... 9

        D.      Durand's Communications Were Non-Misleading, Were Non-Coercive,
                and Provided Full Disclosure................................................................. 10

        E.      The Authority Cited By Plaintiff Is Not Relevant To This Case and Does
                Not Support The Relief Requested ........................................................ 16

        F.      Plaintiff Bobryk Engaged in Communications With Putative Class
                Members That Were Misleading, Did Not Provide Full Disclosure, and
                Were Defamatory................................................................................... 19

IV.     CONCLUSION.................................................................................................. 22

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Abdallah v. Coca-Cola Co.*,
  186 F.R.D.672 (N.D. Ga. 1999)................................................................18

*Babbitt v. Albertson's Inc.*,
  No. C-92-1883, 1993 WL 128089 (N.D. Cal. Jan. 28, 1993)...........................5, 11

*Basco v. Wal-Mart Stores, Inc.*,
  No. 00-3184, 2002 WL 272384 (E.D. La. Feb. 25, 2002)........................................6

*Bell v. Addus Healthcare, Inc.*,
  No. C06-5188, 2007 WL 2752893 (W.D. Wash. Sep. 19, 2007)...........................6

*Bouder v. Prudential Fin., Inc.*,
  No. 06-CV-4359, 2007 WL 3396303 (D.N.J. Nov. 8, 2007) ...........................20, 21

*Bower v. Bunker Hill Co.*,
  689 F. Supp. 1032 (E.D. Wash. 1985)..............................................................17

*Braun v. Wal-Mart Stores, Inc.*,
  60 Pa. D. & C.4th 13 (Ct. Com. Pl. Phila. Cnty. Jan. 15, 2003).........................9-10

*Dominguez v. Don Pedro Rest.*,
  No. 2:06 CV 241, 2007 WL 1650289 (N.D. Ind. June 1, 2007)...........................6

*Erhardt v. Prudential Grp., Inc.*,
  629 F.2d 843 (2d Cir. 1980)..............................................................17

*Flores v. Lifeway Foods, Inc.*,
  289 F. Supp. 2d 1042 (N.D. Ill. 2003) .............................................................5-6

*FTC v. Hope Now Modifications, LLC*,
  No. 09-1204, 2011 U.S. Dist. LEXIS 71921 (D.N.J. July 5, 2011)........................15

*Fulco v. Cont'l Cablevision, Inc.*,
  789 F.Supp. 45 (D.Mass 1992) ..........................................................................5

*Gulf Oil v. Bernard*,
  452 U.S. 89 (1981).....................................................................................4, 8

*Jackson v. Papa John's USA, Inc.*,
  No. 1:08-CV-2791, 2009 WL 650181 (N.D. Ohio Mar. 10, 2009).........................5

*Jennifer v. Del. Solid Waste Auth.*,
  No. 98-270, 1999 WL 117762 (D. Del. Feb. 25, 1999)....................................8, 13

*Jonites v. Exelon Corp.*,
    No. 05C 4234, 2006 WL 2873198 (N.D. Ill. Oct. 4, 2006) ...................................................5

*Kerce v. West Telemarketing Corp.*,
    575 F. Supp. 2d 1354 (S.D. Ga. 2008)...............................................................................6

*Kleiner v. First Nat'l Bank of Atlanta*,
    751 F.2d 1193 (11th Cir. 1985) ........................................................................................17

*Loatman v. Summit Bank*,
    174 F.R.D. 592 (D.N.J. 1997)..........................................................................................10

*Mevorah v. Wells Fargo Home Mortg., Inc.*,
    No. C 05-1175, 2005 U.S. Dist. LEXIS 28615 (N.D. Cal. 2005)......................................18

*N. Acceptance Trust v. AMFAC, Inc.*,
    51 F.R.D. 487 (D. Haw.1971)...........................................................................................17

*Parks v. Eastwood Ins. Servs.*,
    235 F. Supp. 2d 1082 (C.D. Cal. 2002) ...........................................................................5, 9

*Pruitt v. City of Chicago*,
    No. 03 C 287, 2004 WL 1146110 (N.D. Ill. May 20, 2004), *aff'd*,
    472 F.3d 925 (7th Cir. 2006) ............................................................................................6

*Rubery v. Buth-Na-Bodhaige, Inc.*,
    514 F. Supp. 2d 431 (W.D.N.Y. 2007) .............................................................................21

*In Re Sch. Asbestos Litig.*,
    842 F.2d 671 (3d Cir. 1988).............................................................................................8

*Sandra T.E. v. S. Berwyn Sch. Dist.*,
    600 F.2d 612 (7th Cir. 2009) ..........................................................................................14, 15

*Tayler v. CompUSA*,
    No. 1:04-CV-718, 2004 U.S. Dist. LEXIS 14520 (N.D. Go. June 29, 2004) .....................20

*Upjohn Co. v. United States*,
    449 U.S. 383 (1981)........................................................................................................15

*United States v. Nobles*,
    422 U.S. 225 (1975)........................................................................................................14-15

*Webb v. Discover Prop. & Cas. Ins. Co.*,
    422 U.S. 225 (1975)........................................................................................................4-5

## STATUTES, RULES & REGULATIONS

Fed R. Civ. P. 23...............................................................................................................14, 15

**OTHER AUTHORITIES**

Manual for Complex Litigation, Fourth § 21.12.............................................................................8

I.      **INTRODUCTION**

Plaintiff Cindy Bobryk is a former Cold End Maintenance Department Electro-Mechanic at Durand Glass Manufacturing Company, Inc. ("Durand"), who was terminated in August, 2012 for sleeping on the job following prior disciplines for numerous other infractions.  Prior to her termination, Ms. Bobryk performed maintenance on the equipment used on the glass manufacturing production lines in the "Cold End" of the facility.  Unlike other employees, she was required to use a toolbox and fill out reports regarding the job orders on which she worked. Although disputed by Plaintiff, she was <u>not</u> required to don or doff any PPE other than her safety glasses and earplugs.  She had the option of wearing a uniform and safety shoes but was not required to do so and could wear street clothes and shoes.

Plaintiff attempts to bring off-the-clock wage and hour claims on behalf of approximately 500 current and former employees, who are or were employed largely in different departments and positions, the vast majority of whom were production employees whose normal pre-shift activities involved putting on their safety glasses and ear plugs and walking to their position on the line.  The majority of employees do not retrieve tool boxes; they either do not use tools at all, carry two or three small wrenches in their pocket or their tools are located at the work station. The vast majority of employees are not required to prepare or give reports.  They were merely required to be on the production line to relieve the person coming off the line.  With the exception of a few positions, none of the employees are required to wear safety shoes ("steel toed shoes") or uniforms.

As typical in these cases, Defendant has obtained declarations from employees in various positions and departments to demonstrate that these employees' job responsibilities and routines are significantly different than Ms. Bobryk's and that these employees did not engage in pre-shift

activities for which they were not compensated.  Defense counsels' communications with the employees was at all times careful, ethical, professional and appropriate.

Defendant asserts that donning and doffing safety glasses and earplugs, which takes less than a minute, is not compensable.  And, depending on the employee and position, this was done after the employee had already clocked-in.  Defendant also asserts that it is not required to compensate some employees for deciding to change into a uniform or safety shoes at work, which was the choice of each individual employee.  This dispute on the merits is relevant to the instant discovery motion because Plaintiff characterizes this as pre-shift "work" thereby putting the rabbit in the hat and assuming that all employees including the declarants performed pre-shift "work."

When Plaintiff's counsel first raised this matter before the Court on July 11, 2013, their primary argument was that Defendant's counsel was not permitted to have <u>any</u> <u>contact</u> with putative class members and, ignoring the extensive case law with which they as experienced counsel are familiar, relied solely upon a Special Master's out-of-context reference to the Complex Litigation Manual.  Their argument is at odds with the decisions of the United States Supreme Court and the overwhelming federal authority that make it clear that Defendant may contact and obtain declarations from putative wage and hour class members prior to certification.

Recognizing there is no legitimate basis for her initial position, Plaintiff's second argument, and the focus of the instant motion, is that defense counsel engaged in "serious abuse" by obtaining declarations "which they knew to be untrue."  Plaintiff raises this serious accusation of unethical conduct without any evidence for the sole purpose of excluding evidence relevant to the litigation.  Plaintiff draws this conclusion by attempting to point out inconsistencies within the witnesses' own statements.  Defendant disagrees with these characterizations which are

better suited for argument on the motion for certification. If anything, defense counsel erred on the side of making sure the witness' full statement was included in the witness' own words.

Moreover, defense counsel read to each employee a privileged, detailed introduction prepared with great care and an eye towards its ethical obligations, which counsel takes very seriously. The statement, among other things, informed the employee: that counsel represented Durand; about the lawsuit initiated by Plaintiff; that Plaintiff alleged she was not paid properly, including for time spent putting on and taking off equipment and for time spent during shift handover; that Plaintiff claims all Durand hourly employees have the same experiences that she had; that Plaintiff seeks to proceed as a representative of the other Durand employees; that attorneys for both sides are investigating the claims and gathering information; that Durand will use the information it gathers to defend itself in the lawsuit; that counsel would prepare a written summary of what was discussed, which the individual could sign if he or she chose to; that speaking with the attorneys was completely voluntary and Durand would not retaliate against employees. Durand's counsel also ensured that the individual was not represented by counsel or had joined the lawsuit. There is simply no merit to Plaintiff's accusation.

## II.    **BACKGROUND**

Plaintiff Bobryk initiated the instant matter as an individual, class and collective action on August 24, 2012 alleging that she and others similarly situated to her have not been paid appropriately by Durand for certain pre- and post-shift activities. Since initiation of this lawsuit, three individuals have filed consents to opt-in as plaintiffs in this matter. Plaintiffs' motion for conditional and Rule 23 certification has not yet been filed and is currently due on September 30, 2013.

### A.    *Durand's Declarations*

On April 5, 2013, during the conditional and Rule 23 discovery period, Durand produced

eight declarations signed by Durand employees.  Ex. A, April 5, 2013 Letter from Moyer.

Counsel for Plaintiff referred to and used at least one of the declarations in its 30(b)(6)

depositions, which were held nearly three months later on June 26, 2013.  On July 9, 2013,

Durand produced 12 additional declarations from Durand employees.  The declarations had been

signed the week before.

On July 11, 2013, without previously raising the issue or conferring with Durand's

counsel, Plaintiff filed a letter with the Court complaining about the declarations and Durand's

communications with putative class members.  At no point prior to Plaintiff's counsel's July 11,

2013 letter to the Court—including during the Rule 26 meet and confer, in the parties' joint

discovery plan, during the Scheduling Conference with the Court on December 19, 2013, or even

after receiving and using in discovery the first set of declarations—did Plaintiff's counsel request

that there be any type of limitation on communications with putative class members or disclosure

of specific information to putative class members prior to communications  After receiving

Plaintiff's July 11, 2013 letter, the Court ordered Plaintiff to submit a formal motion regarding

this issue, and Plaintiff filed the instant motion.

The declarations are attached to Plaintiff's motion at Ex. A.  Despite Plaintiff's

mischaracterizations, the declarations, discussed in greater detail below, speak for themselves.

III.   **ARGUMENT**

    A.   ***Durand and Its Counsel Are Permitted to Communicate With Putative Class Members***

The United States Supreme Court and subsequent cases have made it clear that

defendants are permitted to communicate with putative class members at the pre-certification

stage.  *See Gulf Oil v. Bernard*, 452 U.S. 89 (1981); *Webb v. Discover Prop. & Cas. Ins. Co.*,

No. 3:08cv1607, 2008 U.S. Dist. LEXIS 95431 (M.D. Pa. Nov. 24, 2008) (denying Plaintiff's

motion to limit defendant's ability to contact putative class members because there was no clear record with specific findings that support the need for limiting communications); *Parks v. Eastwood Ins. Servs.*, Inc., 235 F. Supp. 2d 1082, 1084 (C.D. Cal. 2002) (denying plaintiffs' attempt to prevent defense communications with potential opt-in class members and finding the "Second Circuit, state and federal district courts in California, and a leading treatise conclude Rule 23 pre-certification communication is permissible because no attorney-client relationship yet exists"); *Babbitt v. Albertson's Inc.*, No. C-92-1883, 1993 WL 128089, at *7 (N.D. Cal. Jan. 28, 1993) (defense counsel's pre-certification "interviewing of defendant's employees cannot be construed as misconduct"); *Fulco v. Cont'l Cablevision, Inc.*, 789 F. Supp. 45 (D.Mass 1992) (defendant in securities class action not precluded from interviewing putative class members who were its own employees; defendant was free to conduct discovery and communicate ex parte with those persons regarding alleged fraudulent solicitation).

As long as the communications are non-misleading and non-coercive, courts will not restrict such communications. *See, e.g., Jackson v. Papa John's USA, Inc.*, No. 1:08-CV-2791, 2009 WL 650181, at *2 (N.D. Ohio Mar. 10, 2009) (denying plaintiff's motion for protective order, which would have prevented defendant from communicating with putative collective action members during the notice period, where there was no evidence that the six pre-certification interviews that the defendant employer conducted were coercive, misleading, or improper); *Jonites v. Exelon Corp.*, No. 05C 4234, 2006 WL 2873198, at *7 (N.D. Ill. Oct. 4, 2006) (declining to grant protective order barring defendants from contacting putative class and/or collective action members where plaintiffs failed to present facts indicating need for such a limitation); *Flores v. Lifeway Foods, Inc.*, 289 F. Supp. 2d 1042, 1047 (N.D. Ill. 2003) (holding that an order that bars or limits communications between a party and putative collective action

members must be based on a clear record and weigh the need for limitation with potential interference with the rights of the parties, and that plaintiffs had not demonstrated clear record and specific findings necessary to limit defendant's communications). Plaintiff does not accuse defense counsel of coercion. Rather Plaintiff accuses defense counsel of "misleading" the witnesses in its description of the case based on nothing more than the declarations themselves.

In fact, defendant employers routinely interview putative class members, including employees, and obtain declarations in response to lawsuits such as the instant suit. *See, e.g., Kerce v. West Telemarketing Corp.* , 575 F. Supp. 2d 1354, 1366-67 (S.D. Ga. 2008) (denying plaintiff's motion to strike declarations, made by certain putative collection action members and submitted by defendants, in which the individuals stated that they did not want to join the litigation, because there was no evidence that defendants misrepresented facts or discouraged participation in the suit); *Dominguez v. Don Pedro Rest.*, No. 2:06 CV 241, 2007 WL 1650289, at *2-3 (N.D. Ind. June 1, 2007) (concluding that defendant's actions in obtaining declarations were legitimate attempts to gather evidence showing that no FLSA violation had occurred, and there was no evidence that defendant had discouraged participation in the lawsuit; the fact of employer-employee relationship was not sufficient to find coercion); *Pruitt v. City of Chicago*, No. 03 C 287, No. C06-5188, 2004 WL 1146110 (N.D. Ill. May 20, 2004), *aff'd*, 472 F.3d 925 (7th Cir. 2006) (refusing to strike affidavits obtained by employer from members of the putative class); *Bell v. Addus Healthcare, Inc.*, No. 00-3184, 2007 WL 2752893, at *3 (W.D. Wash. Sep. 19, 2007) (nothing improper about interviewing employees on a voluntary basis as the employer has the right to fully investigate the case); *Basco v. Wal-Mart Stores, Inc.*, 2002 WL 272384, at *3 (E.D. La. Feb. 25, 2002) (denying plaintiff's motion for a protective order seeking to stop defendant employer's communications with its employees about the pending class and seeking

affidavits from witnesses, including class members). It would be an oddity and a First Amendment violation if Plaintiff and her counsel could solicit, interview and obtain declarations for Defendant's own employees but Defendant could have no such contact.

As these cases recognize, such investigation is reasonable and necessary in order for an employer to defend itself. Even the 2003 Docket Order on which Plaintiff relies recognizes this. *Guitierrez v. Johnson & Johnson*, No. 2:01-cv-532 (D.N.J.) (Order of Special Master dated April 3, 2003, Dkt. 30, p. 4). Docket Order ("It is a truism that in the investigation of a complaint against a company, the company has the right to gather information from its employees. In fact, it would be virtually impossible for a corporation to mount a defense without such an investigation."). This is Plaintiff's only citation for the proposition that Defendant may not obtain pre-certification declarations from putative class members.

Moreover, the Manual for Complex Litigation, on which Plaintiff also attempts to rely, affirms that defendants may communicate with putative class members. Specifically, it states: "Defendants ordinarily are not precluded from communications with putative class members, including discussions of settlement offers with individual class members before certification, but may not give false or misleading information or attempt to influence class members in making their decision whether to remain in the class." Manual for Complex Litigation, Third, § 30.24 (excerpt attached hereto at ex. B). The guidance on the same topic in the subsequent, and current, version of the Manual for Complex Litigation is no different: "Defendants and their counsel generally may communicate with potential class members in the ordinary course of business, including discussing settlement before certification, but may not give false, misleading, or intimidating information, conceal material information, or attempt to influence the decision about whether to request exclusion from a class certified under Rule 23(b)(3)." Manual for

Complex Litigation, Fourth, § 21.12 (excerpt attached hereto at Ex. C).

    B.    ***Judicial Intervention Into Communications With Putative Class Members Requires A Clear Record of Abuse and Must Be Limited As Appropriate Under the Circumstances***

    Courts may not restrict communications between the parties or their counsel and potential class members except when necessary to prevent serious misconduct. *See* Manual for Complex Litigation, Fourth, § 21.12 (citing *Gulf Oil Co.*, 452 U.S. 89 ). The Supreme Court instructed that an order restricting pre-certification communications "should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties," or run the risk of imposing an unconstitutional prior restraint on speech. *Gulf Oil*, 452 U.S. at 101; *In Re School Asbestos Litig.*, 842 F.2d 671 (3d Cir. 1988) (authorizing limited restrictive order only where court found a likelihood of serious abuse based on lower court's findings to satisfy *Gulf Oil*'s standard of clarity and specificity related to the alleged communications); Manual for Complex Litigation, Fourth, § 21.12 (citing *Gulf Oil Co.*, 452 U.S. at 101-02 ) (judicial intervention justified only on a clear record and with specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties).

    Thus, any order should be "carefully drawn" so as to limit speech as little as possible, consistent with the rights of the parties under the circumstances. *Gulf Oil*, 452 U.S. at 102. Even if a court finds there has been abuse, less burdensome remedies may suffice, such as requiring parties to initiate communication with potential class members only in writing or to file copies of all nonprivileged communications with class members. Manual for Complex Litigation, Fourth, § 21.12. "The test for coercion is whether the conduct somehow overpowers the free will or business judgment of the potential class members." *Jennifer v. Del. Solid Waste Auth.*, No. 98-270, 1999 WL 117762, at *5 (D. Del. Feb. 25, 1999).

C.   *Communications With Putative Class Members Do Not Violate the Rules of Professional Conduct*

Contrary to Plaintiff's argument, it is not ethically improper for the parties to communicate with putative class members.

First, Plaintiff's argument that Rule of Professional Conduct 4.2 prohibits such communications (in addition to being implicitly, if not explicitly, rejected in the overwhelming authority cited above permitting such communications) has been rejected in a formal ABA opinion. *See Contact by Counsel with Putative Members of Class Prior to Class Certification*, ABA Formal Opinion 07-445 (April 11, 2007) ("Before a class action has been certified, counsel for plaintiff and defense have interests in contacting putative members of the class.  Model Rules of Professional Conduct 4.2 and 7.3 do not generally prohibit counsel for either plaintiff or defendant from communicating with persons who may in the future become members of the class.") (attached hereto at ex. D).

Second, the case law cited by Plaintiff has either been rejected or is inapposite.  The view in the *Dondore*, *Braun*, and *Bell* cases have been overwhelmingly rejected.  *See* Section III.A. above (citing cases permitting such communications); *see also Parks v. Eastwood Ins. Servs., Inc.*, 235 F. Supp. 2d 1082, 1084 (C.D. Cal. 2002) (rejecting the *Dondore* opinion and concluding that "the weight of authority seems unwilling to adopt the *Dondore* view"); Ex. D, ABA Formal Opinion 07-445, n.14 ("The majority rule is that there is no client-lawyer relationship between putative class members and lawyers seeking class certification until the class has been certified.").  The *Braun* court, which was deciding the matter as an issue of first impression under Pennsylvania law, specifically stated that its decision was based only on, and thus limited to, Pennsylvania state law.  The *Braun* court stated that it "is not bound by, nor need it consider persuasive, any federal or state court decisions that do not address Pennsylvania law."

*Braun v. Wal-Mart Stores, Inc.*, 60 Pa. D. & C.4th 13, 16 (Ct. Com. Pl. Phila. Cnty. Jan. 15, 2003).[1]  Plaintiff also relies on a Docket Order entered by a Special Master in 2003 in which the parties presented a joint request for parameters for communications with putative class members, and the Special Master considered preemptively what disclosures counsel should make to putative class members during such communications.  There is no such joint request before the Court in this case.  In fact, to the contrary, Plaintiff chose not to raise this issue until after receiving Durand's second production of declarations.

Third, Plaintiff presents the Manual for Complex Litigation for the proposition that there is an "incipient fiduciary relationship between class counsel and the class he or she is seeking to represent."  Pltf's. Br. at 17-18.  Plaintiff ignores, however, the fact that the Manual also states, as discussed above, that "Defendants are not ordinarily precluded from communications with putative class members…"  Ex. B, Manual for Complex Litigation, Third, § 30.24.  As discussed above, the current edition of the Manual for Complex Litigation, citing *Gulf Oil*, likewise permits such communications.

### D.   *Durand's Communications Were Not Misleading, Were Non-Coercive, and Provided Full Disclosure*

Defense counsel's communications with Durand employees were ethical, careful and appropriate.  The declarations evidence that Defense counsel's affirmed the following with each employee:

> I have been informed that Cindy Bobryk contends in a lawsuit that she filed that Durand's employees were not paid properly.  I also have been informed that Cindy Bobryk wants to proceed as representative of other Durand employees, including me, to attempt to recover damages for alleged wage violations that she

---

[1] Plaintiff also cites *Loatman v. Summit Bank*, 174 F.R.D. 592 (D.N.J. 1997).  However, in *Loatman*, an executive at the defendant company contacted the lead plaintiff personally, against the demand of class counsel who represented her, to offer a settlement worth ten times the value of her monetary claim in exchange for dropping the case.  Durand has not spoken to any individual known to be represented by counsel.  The issue before the Court is communications with putative class members: *Loatman* is thus irrelevant.

contends affect all employees in some fashion.

I spoke with Durand's attorney voluntarily and understand that Durand will use the information I provided to attempt to demonstrate that Cindy Bobryk's experiences were not representative and, further, that Durand has not violated any laws regarding paying its employees.

*See* ex. A of Pltf.'s Brief.  Plaintiff's mischaracterizations and complaints about these statements notwithstanding, the statements clearly evidence that Durand's counsel provided full and appropriate disclosure when communicating with employees.

As in *Babbit*, these statements show that Durand's counsel clearly advised employees about the case, that counsel represented Durand, that Durand intended to use the information in the declarations to defend itself, that the individual spoke with Durand's attorney voluntarily, and that Plaintiff Bobryk is trying to proceed in the lawsuit as a representative of Durand employees, including the declarant, to recover damages.  Though Plaintiff claims the employees were not informed that the lawsuit was filed as a class action "on behalf of" Durand's employees, the declarations explicitly state that Ms. Bobryk seeks to "proceed as a representative of other Durand employees, including me, to attempt to recover damages for alleged wage violations that she contends affect all employees in some fashion."  Such disclosures make clear that the communications were up front and non-misleading. *See Babbitt*, 1993 WL 128089, at *7 (interviewing employees not misconduct because defense counsel had explained to the employees that (1) counsel worked for the defendant, (2) the purpose of the interview was to enable counsel to evaluate and defend the action, (3) the employees were not obligated to participate in the interviews, and (4) there would be no retaliation for refusing to so participate, or favorable treatment for so participating).

Further, Plaintiff incorrectly assumes that the declaration reflects the entire disclosure made by defense counsel to the individuals.  When Durand's counsel spoke with employees,

counsel followed a script of various disclosures to ensure that each employee was appropriately advised of, among other things, the lawsuit, the employee's right not to speak with Durand's counsel, and the fact that the employee would not be retaliated against in any way. Plaintiff's argument that the disclosures evidenced in the declarations were either too much (in some instances) or not enough (in others) thus fails to take into account the entirety of the disclosures during the communications.[2] Courts do not require magic language or a specific script, but rather simply require that communications not be misleading or coercive.

Plaintiff further contends that the declarations on their face show that the declarants were misled. This argument assumes, without her having proved her case, that Plaintiff's entire set of allegations in this case are true, which Durand vehemently denies. Plaintiff argues that the declarations show that the declarants engaged in work activities during time for which they were not paid, but that the declarants also stated they were paid for all time worked. Plaintiff then blames Durand's counsel for the declarants' statements that they believe they were paid for all time worked. This argument mischaracterizes the facts, the declarations, and the law.

The declarations simply record the statements of the employees; they do not show evidence of anyone being misled. The declarations recite the individual's work habits and simply state the declarant's belief that he/she was paid for all time worked. In other words, the declarations merely reflect the words of the declarants. They do not reflect words that anyone

---

[2] Plaintiff complains in her Brief at p. 20, n.9 that Durand's disclosure to the declarants identified Plaintiff Bobryk as having initiated the suit and alleging that others are similarly situated to her. Plaintiff complains that, because her employment was terminated prior to her initiation of the lawsuit, the association of her to this case, despite the fact that she is the named Plaintiff, will "chill[] a putative class member's desire to be associated with Ms. Bobryk (*ergo*, the litigation) out of fear of potential reprisal." Plaintiff cannot at the same time complain that Durand failed to properly disclose the lawsuit and then complain that Durand should not have disclosed the parties and allegations in the lawsuit.

What's more, Ms. Bobryk was terminated prior to initiating this lawsuit for, as she admits on Facebook and in her deposition, sleeping on the job. *See* ex. F, Facebook Post; Ex. E, Bobryk Dep. 235:8-22, 237:19 – 238:2. Her termination had nothing to do with the instant lawsuit.

told them to say, and they do not show that the individuals were misled in any way.  There is also

no evidence that the individuals were told not to participate in the lawsuit, threatened in any way,

warned about participating in the lawsuit, or in any other way dissuaded from participating if

they desired to do so.  In short, there is no evidence of coercive or misleading communications.

*See Jennifer*, 1999 WL 117762, at *5 ("The Court finds that the evidence does not establish that

putative class members would be threatened or coerced into foregoing any claims in the present

lawsuit.").

Further, the "work" that Plaintiff alleges was performed without compensation includes

putting on appropriate footwear (which many employees simply wear to the facility) and putting

on safety glasses and ear plugs.  Plaintiff offers the conclusion that these individuals engaged in

compensable working activity but provides no support for such a conclusion (a conclusion that

Durand disputes).  What's more, many of the declarations affirm that work activities were

performed while clocked in.  Presumably, an employee working the time would be the first to

know if he/she was not paid for all such time worked.

Durand's timekeeping system currently uses a seven minute rounding rule that complies

with applicable law and specific guidance from the Department of Labor.  Plaintiff wrongfully

assumes that employees are not being paid according to the law for all time worked in the

instance where an employee clocks in to work within seven minutes before his/her shift starts or

clocks out within seven minutes after his/her shift ends.  Plaintiff disregards the fact that, for

example, if an employee clocks in seven minutes early and begins working, he/she is also

permitted to clock out seven minutes early and stop working at the end of the day.  Plaintiff also

disregards the fact that, if an employee clocks in up to seven minutes past the start time, his/her

hours are rounded back to the start time so that the individual is paid for up to seven minutes that

he/she did not actually work. Accordingly, even if the declarations showed that employees were engaging in work seven minutes before or after their shifts (which Durand disputes), this does not establish that employees were not paid appropriately for all time worked.

Furthermore, if Plaintiff believes the declarations contain contradictions, then the appropriate course of action is for Plaintiff to pursue those issues in discovery, and the appropriate place for Plaintiff to pursue this argument is in her motion for class certification.

In short, there is no evidence that the declarations, or communications with putative class members, were in any way misleading, coercive, or abusive. Because there were no improper communications, the relief requested by Plaintiff is unnecessary. Even if some form of relief were appropriate (which it is not), the relief requested by Plaintiff is unnecessary and overreaching, contrary to the carefully drawn, narrow relief that the Supreme Court said in *Gulf Oil* is required.

First, both parties have engaged in communications with putative class members. There is no basis for a total ban on Durand's ability to communicate with putative class members. This would inhibit Durand from defending itself. There is also no basis or support for Plaintiff's request that Durand be prohibited from using the declarations in this litigation. Indeed, Plaintiff cites no authority for such a position.

Second, there is no reason to invade the work product privilege by requiring production of any notes counsel may have from communications with putative class members. The notes taken by counsel during the witness interviews are privileged, and there is no basis to compel their production. The work-product doctrine protects documents prepared by attorneys in anticipation of litigation for the purpose of analyzing or preparing a client's case. Fed. R. Civ. P. 26(b)(3); *United States v. Nobles*, 422 U.S. 225, 238-39 (1975); *Sandra T.E. v. S. Berwyn Sch.*

*Dist. 100*, 600 F.2d 612, 618 (7th Cir. 2009).  Witness interview notes made during interviews in response to the filing of a lawsuit are privileged under the work-product doctrine.  *Sandra*, 600 F.2d at 621.  In limited situations, documents protected as attorney work product are nonetheless discoverable if a party can establish a "substantial need" for the documents and cannot obtain equivalent materials without "undue hardship."  Fed. R. Civ. P. 26(b)(3)(A)(ii).  Even when work product is discoverable, though, the Court must "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney … concerning the litigation." *FTC v. Hope Now Modifications, LLC*, No. 09-1204, 2011 U.S. Dist. LEXIS 71921, at *11-12 (D.N.J. July 5, 2011) (Schneider, J.) (citing Fed. R. Civ. P. 26(b)(3) and noting that memoranda summarizing oral interviews will be discoverable on in a "rare situation").

Disclosure of witness interviews and related documents, however, is particularly discouraged.  *See, e.g., Upjohn Co. v. United States*, 449 U.S. 383, 398-99 (1981) ("Forcing an attorney to disclose notes and memoranda of witness' oral statements is particularly disfavored because it tends to reveal the attorney's mental processes…"); *Sandra*, 600 F.2d at 622.  Where the work product sought is based on oral statements from witnesses, a "far stronger showing is required than the 'substantial need' and 'without undue hardship' standard…" *Hope Now*, 2011 U.S. Dist. LEXIS 71921 at *12.

It would be practically impossible to reveal facts from the interviews in this case without revealing work product as well.  *See Hope Now*, 2011 U.S. Dist. LEXIS 71921, at *16-17 ("even where the attorney's summary of a witness's oral statements appears to be entirely factual, the attorney's mental processes are necessarily disclosed to some degree").  Furthermore, Plaintiff presents no "substantial need" for the information contained in counsel's notes, and there is no "undue hardship" to obtain such information: Plaintiff can simply depose the individuals with

whom counsel spoke.  There is no argument that witnesses are not available or can only be

reached with great difficulty or that witnesses would refuse to answer questions at a deposition.

Thus, there is no reason to invade the well-established work-product doctrine, and Plaintiff offers

no authority for doing so.

Third, Plaintiff's proposed curative notice is not the type of neutral communication

necessary to unrepresented parties but instead presents a one-sided and unfair position.  The

notice is the opposite of the neutral communication that is to be given to putative class members

and that Plaintiff demands that Durand make.  Although no such notice is necessary, the one

proposed by Plaintiff would do more harm than good.

Finally, the remaining relief requested by Plaintiff is simply unnecessary.  Plaintiffs have

taken, and continue to take, significant discovery in this matter.  Plaintiff presents no argument

as to how the requested additional information will cure her perceived issue.  Plaintiff has the

information she needs, and she has the ability to take discovery pursuant to the Court's orders.

Plaintiff had opportunity at the beginning of this litigation to ask for limitations on

communications with putative class members but chose not to do so.  Plaintiff has also known

since the beginning of April that Durand obtained declarations from putative class members, and

Plaintiff took no steps to address the issue (including asking that those declarations being

stricken) or stop such communications until receiving additional declarations in July that are also

adverse her claims.  Plaintiff cannot now be heard to complain about communications to putative

class members of which she was aware and about which she took no effort to restrict until now.

E.    ***The Authority Cited By Plaintiff Is Not Relevant To This Case and Does Not
       Support The Relief Requested***

Cases restricting pre-certification contact or taking other curative measures are situations

in which communications with putative class members were specifically found to be misleading

or improper.  The cases on which Plaintiff relies are either not relevant or factually distinct from the instant matter.

For example, in *Kleiner v. First National Bank of Atlanta*, 751 F.2d 1193 (11th Cir. 1985), after the class was certified, the defendant orchestrated a telephone campaign to contact as many class members as possible to solicit class exclusion requests.  One employee was forced to resign for objecting and refusing to participate in the campaign.  As the Court described it, "[s]ecrecy and haste shrouded the undertaking, which would coincide with the district judge's vacation." *Id.* at 1197.  The Court's ability to take corrective action in response to this egregious action was affirmed.  Durand engaged in no such coordinated campaign to obtain class exclusions and ensured that everyone involved understood there would be no retaliation for refusing to discuss the matter.

In *Erhardt v. Prudential Group, Inc.*, 629 F.2d 843 (2d Cir. 1980), which was decided, pre-*Gulf Oil*, the Court found an officer of defendant company in contempt of the Court's class certification order because he made specific communications with class members that the Court had previously refused to allow.  Here, the Court has not restricted communications with putative class members.

In *Northern Acceptance Trust v. AMFAC, Inc.*, 51 F.R.D. 487 (D. Haw.1971), which was decided pre-*Gulf Oil*, the Court questioned whether affidavits had been obtained in compliance with the spirit of Rule 23 (without discussing the details for such a belief) but rejected the issue as immaterial and made no further finding or decision on the issue.

In *Bower v. Bunker Hill Co.*, 689 F. Supp. 1032 (E.D. Wash. 1985), the court denied the defendant's motion to interview potential class members as the court had already granted plaintiffs' motion certifying the class.  Here, plaintiff has not even filed a motion to certify the

class, and the parties have not filed a motion requesting permission to speak to putative class members.

In *Abdallah v. Coca-Cola Co.*, 186 F.R.D. 672 (N.D. Ga. 1999), the issue before the Court was a motion for leave to interview prospective class members. Although the Court limited the putative class members who the defendant could interview about the case, the Court found that the defendant could continue communicating with employees about the case so long as communications had the following: "The foregoing represents Coca-Cola's opinion of this lawsuit. It is unlawful for Coca-Cola to retaliate against employees who choose to participate in this case." *Id.* at 679.

In *Mevorah v. Wells Fargo Home Mortgage, Inc.*, No. C 05-1175, 2005 U.S. Dist. LEXIS 28615, at*10 (N.D. Cal. Nov. 17, 2005), the Court stated: "Pre-certification communications to potential class members by both parties are generally permitted, and also considered to constitute constitutionally protected speech." However, the Court found defendant's description of the case to putative class members during interviews to obtain affidavits was misleading, including because a putative class member who refused to provide the defendant a declaration claimed that she had been led to an inaccurate understanding of the case by defendant. The Court subsequently prohibited both sides from communicating with the class going forward, and provided for other curative measures. Plaintiff offers no proof, other than the declarations themselves, that there has been any inaccurate or misleading communications to putative class members.

Accordingly, Plaintiff's authority is distinguishable from the instant case where there is no evidence of improper or misleading communications.

F.   ***Plaintiff Bobryk Engaged in Communications With Putative Class Members That Were Misleading, Did Not Provide Full Disclosure, and Were Defamatory***

Plaintiff Bobryk has attempted to communicate with putative class members on a number of occasions, including through her Facebook account on which she has 1,200 "friends." Ex. E, Bobryk Dep. 177:9-14; *see also* 225:7-16 (admitting that Durand employees with whom she is friends on Facebook have full access to her Facebook page).  On August 11, 2010, Ms. Bobryk posted the following:

> I got something for their [Durand's] ass.  I fell asleep an got caught . . . so I screwed myself but the law suit is for clockin in an out an not getting paid for it. They just made the rule of the time limit but even packers clock in 10 of an get relieved late the court is gonna supeona their time clock records for everyone so whoever can will be paid also.  Hahaha.  Guess I hope to get the last laugh.

Ex. F, Facebook Post bates labeled DURAND-00479.  When someone responded to the post, Ms. Bobryk wrote further:

> Well a lot of ppl used to clock in early an out late.  There is a time line by law but they only got strict bout it bout 8 mos ago but by law they can go back 3 years an anyone who worked an didn't get paid for it will now.  My lawyer will represent anyone they knew what they did was illegal that's why they changed their policy. So if u clocked in early out late relieved late that's time an a half......lol

*Id.*

> Two months later, in October 2012, Ms. Bobryk continued:
>
> ...Also extra bonus got a law suit u can google Bobryk vs Durand Glass for everyone who clocked in early an out late for the past 3 years u will be paid overtime.  Federal Court is making submit everyone's hours filed Aug. 24th for everyone.....  (: hope everyone gets a settlement check. (:
>
> . . .
>
> I told them how packers, everyone gets to work early an we used to clock in when we got there an packers get relieved late an just gotta take it then they made it 7 mins before an after so to those clock in like that r gonna be paid for it.  Google it. I have a lawyer from Charry Hill. So I get the last laugh....

Ex. G, Facebook Post DURAND-00491-92.  This post led one person to respond simply:

"$$$$$$$$$$$$$$$$$$$$$$$." *Id.* Even Plaintiffs' counsel has a portion of its website devoted to soliciting putative class members. Ex. H, Copy of Swartz Swidler website. *See also* ex. I, Facebook Post PCB000032 (soliciting putative class members to participate in the litigation).

Durand requested in written discovery that Plaintiff Bobryk identify and produce all communications between her and putative class members related to this lawsuit. *See* ex. J, Durand's Document Requests, Nos. 6 and 7; ex. K, Durand's Interrogatories, No. 2. On multiple occasions (including on May 21, 2013 and July 9, 2013) after receiving Plaintiff Bobryk's discovery responses, Durand asked Plaintiff's counsel to confirm that Plaintiff Bobryk had produced *all* such communications. Plaintiff's counsel has failed or refused to respond, and Durand is thus without knowledge as to whether Plaintiff Bobryk has made further misleading or defamatory comments to putative class members.

In the same way that defendants are limited from making misleading or coercive statements to putative class members, plaintiffs are likewise prohibited from making false or misleading communications to putative class members. *See Bouder v. Prudential Fin., Inc.*, No. 06-CV-4359, 2007 WL 3396303, at*3 (D.N.J. Nov. 8, 2007) (ordering plaintiffs to cease mass communications to putative class members because the letter and enclosed consent to sue form were deceptive and misleading and contained multiple false statements); *Tayler v. CompUSA*, No. 1:04-CV-718, 2004 U.S. Dist. LEXIS 14520, at *12 (N.D. Ga. June 29, 2004) (holding that until the court ruled on conditional certification and approved an official notice, plaintiffs were prohibited from making "unqualified, misleading statements" to putative collective action members).

Ms. Bobryk's communications directed to the putative class mischaracterize the case, mischaracterize the claims, misstate the law, mischaracterize what the Court will do, fail to state

that Durand denies the allegations, and make baseless, defamatory comments regarding Durand and its actions and motives.  Among other things, she has broadcast to as many putative class members as she could that all employees who clock in and/or out at certain times will be paid overtime, that this Court would subpoena every single employee's time records, and that Durand knowingly engaged in unlawful pay practices.  In addition, none of Plaintiff Bobryk's communications included the type of clear, explicit disclosures that Durand provided to each and every one of the putative class members with whom its counsel spoke.  Plaintiff Bobryk's communications have been improper and misleading.  *See Bouder*, 2007 WL 339603, at *3 (finding it improper that Plaintiff planned to send a letter without court approval that suggested that all employees to whom it was directed would be eligible to participate in the putative collective action).

Accordingly, Durand requests that Plaintiff be prohibited from making any such further misleading, inaccurate, and/or defamatory statements.  Durand seeks no further relief at this time.  However, Durand reserves its right to do so.  To the extent that Durand becomes aware of any additional misleading or defamatory communications made to the class by Plaintiff or her counsel and to the extent that any class or conditional class is certified in this matter, Durand reserves its right to request that such inaccuracies and misstatements be remedied.  *Rubery v. Buth-Na-Bodhaige, Inc.*, 514 F. Supp. 2d 431, 434-35 (W.D.N.Y. 2007) (holding that inaccuracies in plaintiffs' letter to putative collective action members could be remedied by issuing a corrective notice if the class were later certified).

IV.     **CONCLUSION**

For the foregoing reasons, Durand respectfully requests that Plaintiff's motion be denied.


Dated:  August 9, 2013                    /s/ Thomas J. Barton
                                          Thomas J. Barton, Esq.
                                          thomas.barton@dbr.com
                                          Aaron M. Moyer, Esq.
                                          aaron.moyer@dbr.com
                                          DRINKER BIDDLE &REATH LLP
                                          One Logan Square, Ste. 2000
                                          Philadelphia, PA 19103-6996
                                          Tel: (215) 988-2700
                                          Fax: (215) 988-2757