## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

CINDY BOBRYK, *et al.*

                Plaintiffs,

    v.

DURAND GLASS MANUFACTURING
COMPANY, INC., *et al.*

                Defendants.

CIVIL ACTION NO 1:12-05360

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT DURAND GLASS MANUFACTURING COMPANY, INC.'S MOTION FOR PROTECTIVE ORDER

Dated:       August 9, 2013
Counsel:    Nicholas George, Esq.
             Justin L. Swidler, Esq.
             Richard S. Swartz, Esq.

             SWARTZ SWIDLER LLC
             1878 Marlton Pike East. Ste. 10
             Cherry Hill NJ, 08003
             (856) 685-7420
             Attorneys for Plaintiffs

# TABLE OF CONTENTS

I.   **Introduction** ..................................................................................................................1

II.  **Legal Analysis** ............................................................................................................2

   A. The reports are not self-critical because such reports were initiated by customers of Defendant and not prepared for critical self-analysis or mandatory government reporting........5

   B. The pertinent information is not readily available from other sources in part due to Defendant's claims that its rounding policies were not uniform at the time the audits / reports were drafted. ............................................................................................................................6

   C. Plaintiffs, not Defendant, will suffer significant prejudice as a result of being denied discovery into such audits / reports. ...........................................................................................7

   D. Defendant's claim that it will suffer prejudice because the reports were prepared to ensure compliance with the law and were confidential does not demonstrate that Defendant will suffer legal prejudice as a result of the disclosure of such audits / reports at the pre-certification stage. .........................................................................................................................8

   E. The public interest is not served by withholding the audits / reports. ..................................9

   F. There is no comparison between *Bracco* and the case at bar. .............................................12

III. **Conclusion** .................................................................................................................**13**

# TABLE OF AUTHORITIES

**Cases**

Alaska Elec. Pension Fund v. Pharmacia Corp., 554 F.3d 342 (3rd Cir., 2009)..............................3

CPC Intern., Inc. v. Hartford Acc. And Indem. Co., 262 N.J. Super. 191 (1992, Bergen Co.) ....10

Bracco Diagnostics, Inc. v. Amersham Health Inc., et al., 2006 U.S. Dist 753359 (D.N.J., Oct. 13, 2006)................................................................................................................passim

Brunt v. Hunterdon County, 183 F.R.D. 181 (D.N.J., 1998) ..................................................3, 10

Cooper Hospital/University Med. Ctr. v. Sullivan, 183 F.R.D. 135 (D.N.J, 1998)....................10

Glenmede Trust Co. v. Thompson, 56 F.3d 476 (3d Cir. 1995)..................................................10

McClain v. College Hospital, 99 N.J. 346 (1985) .......................................................................3

McLaughlin v. Richland Shoe Co., 486 U.S. 128, 129 (1988)……………………………………8

Memory Bowl v. N. Pointe Ins. Co., 280 F.R.D. 181 (D.N.J, 2012)..............................................3

Morisky v. Public Serv. Elec. & Gas Co., 111 F. Supp. 2d 493 (D.N.J., 2000)...........................8

Spencer Savings Bank SLA v. Excell Mortg. Corp., 960 F. Supp. 835 (D.N.J., 1997) ................3

Todd v. S. Jersey Hosp. Sys., 152 F.R.D. 676 (D.N.J., 1993).................................... 4, 10, 14, 15

U.S. v. Hackensack Univ. Med. Ctr, 2003 U.S. Dist. LEXIS 15225 (D.N.J. August 13, 2003).....5

**Statutes**

Fed. R. Civ. P., R. 26(b) ...........................................................................................................2, 6

Fed. R. Civ. P., R. 23(a)(2)...........................................................................................................9

Fed. R. Evid., R. 403 ....................................................................................................................9

Fed. R. Evid., R. 407 ..................................................................................................................11

Fed. R. Evid., R. 501 ....................................................................................................................3

**Rules**

Cannon 3, Code of Conduct for United States Judges ..................................................................9

## I.   <u>Introduction</u>

Defendant Durand Glass Manufacturing Company ("Defendant"), on page two of its Memorandum of Law In Support of its Motion for Protective Order ("Brief in Support"), explicitly acknowledges that such audits / reports for which it seeks a protective order, "*were initiated by customers of Durand ….*"  Defendant's Brief in Support, p. 2 (Dkt. 34-1, p. 5, ECF numbering).  Thus, the mandatory factor necessary to protect communications pursuant to the self-critical analysis privilege – namely that the self-criticism be internally generated – is lacking for the documents Defendant seeks to protect by way of its Motion for a Protective Order (Dkt. 34).

Because such criticism *was initiated by customers of Durand* the confidential production[1] of the same for this litigation only would not discourage companies such as Defendant from engaging in such analysis in the future.  Audits initiated by customers have no bearing on whether employers (like Defendant) engage in their own self critical analysis.  The purpose of the self-critical analysis privilege is not to discourage entities from periodically reviewing its policies to ensure compliance with the laws (particularly in the realm of worker and consumer safety).  However, applying such privilege to audits initiated by at the behest of non-governmental third-parties extends the doctrine well beyond its limited scope recognized heretofore in this district.  Moreover, the self-critical analysis must be analyzed on a case by case basis.  The particularized circumstances of this litigation weigh in favor of production.  These audits in question do not relate to health or safety; these are not the type of audits which, if revealed, would discourage employers from investigating accidents or regulatory violations in the future.  In a wage and hour context, audits performed to ensure compliance with the laws will

---

[1] *See* Discovery Confidentiality Order (Dkt. 18), dated June 6, 2013.

always benefit the employer, as they help ensure that the employer is paying its employees properly and limiting future exposure to wage and hour violations.  In this sense, employers will never be discouraged from engaging in wage and hour audits (unless such audits are performed in anticipation of litigation, which these were not).[2]

Moreover, Plaintiffs' ability to vindicate their rights and the rights of putative class members is substantially prejudiced without the disclosure of the documents withheld. Defendant has vigorously denied that its wage and hour policies are uniform with respect to its non-exempt production employees.  Such audits analyzing Defendant's wage and hour practices are directly relevant to the question of uniformity.  Indeed, the withheld documents relate directly to the conditional certification of this matter under the Fair Labor Standards Act and class certification under Rule 23 as well.  Such materials, prepared without the specter or threat of litigation, are entirely insightful into Defendant's actual pay policies and practices.  There is no legitimate substitute to information free of adversarial bias prepared without the anticipation of litigation.  Simply because Plaintiffs conducted depositions of prepared witnesses and received interrogatories prepared by skilled attorneys should not deny their right to the discovery of relevant and unbiased audits appropriate for pre-certification discovery.  Accordingly, as Defendant failed to meet its burden that the audits / reports and related communications are self-critical, and that the protection of such documents will not promote the public interest, Defendant's Motion for a Protective Order (Dkt. 34) must be denied.

## II.   __Legal Analysis__

Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the

---

[2] If that were the case however, such audits would not require the cloak of the self-critical analysis privilege as such documents / reports would be subject to protection under the work product doctrine.  Therefore, there remains no good reason to extend the self-critical analysis privilege to the wage and hour context.

pending action. . . ."  A party seeking a protective order on the basis of privilege bears the burden of proving that the materials at issue qualify for protection from disclosure.  <u>Memory Bowl v. N. Pointe Ins. Co.</u>, 280 F.R.D. 181, 185 (D.N.J, 2012).  For cases pending in the federal courts, the question of whether materials are privileged or not is determined by resorting to federal common law.  Fed. R. Evid., R. 501.  The "self-critical analysis privilege" is a limited privilege that has never been recognized by the Third Circuit.  *See* <u>Alaska Elec. Pension Fund v. Pharmacia Corp.</u>, 554 F.3d 342, 351 n. 12 (3rd Cir., 2009) ("The self-critical analysis privilege has never been recognized by this Court and we see no reason to recognize it now."); *see also* <u>Spencer Savings Bank SLA v. Excell Mortg. Corp.</u>, 960 F. Supp. 835, 843-844 (D.N.J., 1997) (Hedges, J.) (holding that the self-critical analysis privilege is not recognized as federal common law).  To the extent that the self-critical analysis privilege has been recognized in this judicial district, the privilege is limited[3] and is not appropriate when the privilege does not further the public interest.  *See* <u>McClain v. College Hospital</u>, 99 N.J. 346, 359 (1985) (holding that courts have recognized a qualified privilege of self-examination or self-critical analysis as furthering the public interest); <u>Brunt v. Hunterdon County</u>, 183 F.R.D. 181, 186-187 (D.N.J., 1998) (to qualify for the self-critical analysis privilege, the public must have a strong interest in preserving the free flow of the type of information sought and the information must be of the type whose flow would be curtailed if discovery were allowed); <u>Bracco Diagnostics, Inc. v. Amersham Health Inc., et al.</u>, 2006 U.S. Dist 753359, at *20 (D.N.J., Oct. 13, 2006) (holding that reports were protected by the self-critical analysis privilege when created in response to future claims or litigation and to ensure that defendant's sales and marketing practices complied with FDA regulations

---

[3]For example, in a Lexis key word search conducted on August 4, 2013, of the District of New Jersey and Third Circuit cases, none of the cases in which the term "self-critical analysis privilege" appeared applied such a privilege to the Fair Labor Standards Act or wage and hour laws generally.  Extending this privilege to the wage and hour context does not promote the public interest

responsible for protecting public health and safety); Todd v. S. Jersey Hosp. Sys., 152 F.R.D. 676, 683-684 (D.N.J., 1993) (denying application of the self-critical analysis privilege to confidential hospital peer review committee reports, in part, because the *disclosure* of such documents would promote the public good in the context of a medical and administrative malpractice lawsuit, and because peer review committees "will continue to be attractive" to hospital administrators regardless of whether such documents are occasionally subject to disclosure). If the conclusions of such audits and reports are not followed, the public interest is not served by protection of the documents. *See Todd*, 152 F.R.D. at 684 ("[W]hen there is evidence suggesting that the [party seeking a protective order] might be failing to respond to the information and opinions generated by these committees[' reports], the public is better served and the purpose of the committee more effectively advanced by permitting disclosure."). Similarly, "even if [such] materials are occasionally discoverable," audits related to wage and hour compliance will "continue to be attractive" to employers because such investigations limit the employer's future potential exposure to wage and hour violations. *See Todd*, 152 F.R.D. at 683-684 (reasoning that hospitals will not be disincentivized from participating in confidential peer review committees even if such reports are occasionally subject to discovery because such peer reviews will continue to be beneficial to such hospitals).

Assuming, *arguendo*, that audits related to wage and hour practices of an employer may be subject to a limited self-critical analysis privilege in this judicial district, factors weighing in favor of the protection requested by Defendant are wholly deficient when applied to the facts at hand. When analyzing whether the self-critical analysis privilege is appropriate, a court must balance (1) whether the information is the result of a self-critical analysis undertaken by the party seeking protection, (2) the extent to which the information is available from other sources,

4

(3) the degree of harm the litigant will suffer from the information's unavailability, (4) the possible prejudice to the party asserting the privilege, (5) the public interest in preserving the free flow of the type of information sought, and (6) whether the information is of the type whose flow would be curtailed if discovery were allowed. *Bracco*, 2006 U.S. Dist 753359, at \*8-\*9.

### A. The reports are not self-critical because such reports were initiated by customers of Defendant and not prepared for critical self-analysis or mandatory government reporting.

To determine whether a report or document is the result of a self-critical analysis, the Court must look at whether "(1) the material sought has been prepared for mandatory government reports *or* for a critical-self analysis" and (2) the privilege is being "extend[ed] only to subjective, evaluative materials, not to objective data." *Bracco*, 2006 U.S. Dist 753359, at \*9-\*10, *citing* U.S. v. Hackensack Univ. Med. Ctr, 2003 U.S. Dist. LEXIS 15225 at \* 6-7 (D.N.J. August 13, 2003).

Defendant has made no claim that the reports in question were prepared for mandatory government reporting. To the contrary, Defendant's entire argument rests on the notion that such reports were for a critical self analysis. Defendant admits, however, that such reports were "audits *initiated* by customers … " and not by Defendant. Defendant's Brief in Support, pp. 2, 4 (Dkt. 34-1, pp. 5, 7, ECF numbering), *see also* Decl. of Stephanie Ojeda, ¶2 (Dkt. 34-3, p. 2, ECF numbering).

Defendant has continuously and repeatedly represented that such reports / audits were initiated by its customers. *See* e-mail from Defendant's counsel, p. 1, dated July 9, 2013 ("The audits were initiated by various customers of Durand Glass …."), a true and correct copy of which is attached hereto as Exhibit A. Defendant readily admits that the audits in question were initiated by *customers* – and not on its own initiative as was the case in *Bracco*. *See* 2006 U.S.

Dist 753359, at *11-*12 (finding that report by PricewaterhouseCooper was prepared to ensure compliance with governmental regulations and for a self-critical analysis because such report was initiated by in- house counsel as part of its internal compliance program).   Accordingly, because the reports at issue were not created for a "self-critical" purpose, there is no need for this Court even to look into the additional prongs of the *Hackensack* analysis.  *Id.*[4]

> **B. The pertinent information is not readily available from other sources in part due to Defendant's claims that its rounding policies were not uniform at the time the audits / reports were drafted.**

Defendant's argument that Plaintiffs are not entitled to further relevant discovery into Defendant's wage and hour practices because Plaintiffs have taken depositions and received responsive written discovery is contrary to Rule 26, which protects a party's right to discovery regarding *any nonprivileged matter* relevant to any party's claim or defense.  Fed. R. Civ. P., R. 26(b) (emphasis added).  Plaintiffs should not be denied pertinent, non-privileged, discovery relevant to Defendant's wage and hour practices and policies.

While pre-certification discovery is more limited than post-certification discovery, Defendant has not argued that the audits are outside of the scope of pre-certification discovery. To the contrary, such audits were identified as relevant by way of Defendant's privilege log.  *See* Defendant's Privilege Log, pp. 10-11, a true and correct copy of which is attached hereto as Exhibit B.  Moreover, because such audits / reports investigated Defendant's pay policies and practices – the audits / reports are appropriate for pre-certification discovery.  *See* Scheduling Order (Dkt. 12), dated December 19, 2012 (providing for conditional and Rule 23 class

---

[4] Judge Bongiovanni's opinion in *Bracco* clearly indicates that if the documents at issue are not prepared for a "self-critical purpose," the analysis stops there because the justification of the privilege – encouraging entities to engage in self-critical analysis for purposes of public safety or regulatory compliance  – is nullified.  *Bracco*, 2006 U.S. Dist 753359, at *2-*3.  *See also id.* at *11-*12 ("The Court is therefore  satisfied that the PWC report was prepared to ensure compliance with governmental regulations and for a self-critical analysis, and therefore the Court looks to the second prong of the *Hackensack* analysis.").

6

discovery at the pre-certification stage); *see also* Defendant's Brief in Support, p. 1 (Dkt. 34-1, p. 4, ECF numbering) ("The audits were initiated by customers of Durand and were designed to ensure [Durand's] existing and ongoing compliance with various laws, *including wage and hour laws* . . . .").

At the onset of litigation, Defendant denied Plaintiffs' contention that its pay policies and practices were uniformly applied to putative class members. *See*, e.g., Defendant's Responses and Objections to Plaintiff's First Set of Interrogatories, Response No. 2 ("Prior to approximately July 2012, Durand did not have a rounding system that *applied to* all employees.") (emphasis added). A true and correct copy of Defendant's Response No. 2 is attached hereto as Exhibit C.

Such reports / audits are therefore pertinent for discovery given Defendant's denials in the litigation that its policies were not uniform *as applied* to all employees. For example, the audits / reports in question were all drafted prior to July, 2012. *See* Ex. B, pp. 10-11. The wage and hour audits therefore will provide vital insight into its wage and hour practices before July, 2012, *as applied* to putative class members. As Defendant denied that such a uniform policy / practice existed, the audits / reports into the same are not only relevant but vital for purposes of conditional and Rule 23 class certification.

### C. Plaintiffs, not Defendant, will suffer significant prejudice as a result of being denied discovery into such audits / reports.

Defendant's claim that it will suffer greater prejudice by being compelled to produce the relevant, non-self-critical documents, than Plaintiffs will suffer if denied access to the same, is entirely self-serving and lacks merit. *See* Defendant's Brief, pp. 5-6 (Dkt. 34-1, pp. 8-9, ECF numbering). Defendant has entirely failed to meet its burden of showing that it would suffer

legal prejudice as a result of disclosure of the audits / reports and communications related thereto.

As discussed *infra*, Section II.B., there is no good substitute to the information contained in the audits / reports because such audits / reports relate to Defendant's wage and hour practices *as applied* to putative class members *prior to the expectation of litigation or the assertion of defenses in this litigation*. Notwithstanding that that the audits / reports themselves are directly relevant to the issue of willfulness (an element of Plaintiffs' legal claim with respect to Defendant's alleged violations of the Fair Labor Standards Act),[5] Plaintiffs will suffer significant prejudice at the current pre-certification stage of litigation absent disclosure of audits / reports, prepared without the defensive specter of litigation, investigating Defendant's wage and hour practices applied prior to July 2012.

### D. Defendant's claim that it will suffer prejudice because the reports were prepared to ensure compliance with the law and were confidential does not demonstrate that Defendant will suffer legal prejudice as a result of the disclosure of such audits / reports at the pre-certification stage.

Defendant's claim that it will suffer significant prejudice if the audit/reports are disclosed because the "audits were performed in an effort to ensure compliance with various laws and standards", *see* Defendant's Brief (Dkt. 34-1), p. 6 (ECF numbering, p. 9), is non-persuasive. Such audits / reports are relevant to the question of whether putative class members are "similarly situated" for purposes of the FLSA, *see* Morisky v. Public Serv. Elec. & Gas Co., 111 F. Supp. 2d 493, 496 (D.N.J., 2000), and whether there are questions of facts or law common to the class, *see* Fed. R. Civ. P., Rule 23(a)(2). The mere existence of such reports / audits,

---

[5] Willfulness is directly relevant with respect to the statute of limitations applicable to the Fair Labor Standards Act ("FLSA"). Therefore the audits / reports are directly relevant to the legal elements of Plaintiffs' claims. 29 U.S.C. § 255(a). The statute provides that such actions must be commenced within two years "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." McLaughlin v. Richland Shoe Co., 486 U.S. 128, 129 (1988). In this respect, the wage and hour reports / audits are directly relevant to the statute of limitations affecting Plaintiffs' and the putative class members' legal claims.

however, will not be held against Defendant at this stage in the litigation.  No fact-finder will have access to such audits / reports at this time.  Such audits will not prejudice Defendant's ability to argue against conditional and Rule 23 class certification; these are questions that will be decided by the Court impartially.  *See* Cannon 3, Code of Conduct for United States Judges (ensuring judicial impartiality).   Once produced, Defendant may still challenge the audits'/reports' admissibility at trial.  *See*, *e.g.,* Fed. R. Evid., R. 403 (balancing the probative value against prejudicial value of evidence for purposes of admissibility at trial).  Defendant's argument that the audits / reports were prepared to ensure compliance with the law is of no moment at the pre-certification stage of litigation.

Defendant's other argument that the production of the audits / reports will result in prejudice because such documents are confidential in nature is also of no moment.  There is already a confidentiality protective order in place.  Discovery Confidentiality Order (Dkt. 18), dated June 6, 2013.  As the Confidentiality Order protects the documents from disclosure outside of this litigation, and Plaintiffs do not contest the confidentiality of such documents, Defendant suffers no prejudice as a result of the disclosure of confidential audits / reports, and communications related thereto.

**E. The public interest is not served by withholding the audits / reports.**

Defendant also failed to establish that a protective order in this instance promotes the public interest.   Defendant's allegation that the disclosure of these audits / reports will discourage future auditing activities of Defendant and/or other entities (by curtailing the "flow of information," Defendant's Brief, p. 6 (Dkt. 34-1, p. 9, ECF numbering) is unsupported and not justified by the facts.  Whether non-disclosure promotes the "public interest" requires analysis of the particular set of facts and circumstances of the case.  *See*, *e.g.,* CPC Intern., Inc. v. Hartford

Acc. And Indem. Co., 262 N.J. Super. 191, 202 (1992, Bergen Co.) ("[T]his Court finds that the public need for disclosure of documents relating to environmental pollution and *the circumstances of such pollution* outweighs the public's need for confidentiality in such documents.") (emphasis added); *Brunt*, 183 F.R.D. at 189 ("Although [the party seeking non-disclosure] refers to legitimate policy concerns, they do not outweigh Plaintiff's interest in obtaining the requested information *in this particular case*.") (emphasis added); Cooper Hospital/University Med. Ctr. v. Sullivan, 183 F.R.D. 135, 143 (D.N.J. 1998) (Courts, when issuing discovery orders, focus on "the particular circumstances in the cases before them . . . ."), *citing* Glenmede Trust Co. v. Thompson, 56 F.3d 476, 483 (3d Cir. 1995).

Defendant's statement that the audits "were initiated to ensure compliance with, among other things, wage and hour laws designed to protect employees" is misleading.  The audits were initiated by Defendant's *customers*, not Defendant.  In this sense, Defendant was not engaged in an ongoing process to ensure compliance with wage and hour laws to "protect employees" or promote the law, nullifying the policy justification of the self-critical analysis privilege. *Bracco*, 2006 U.S. Dist 753359, at *2-*3 (discussed *supra*, n. 4).  The 5 audits reports in question were performed over a period of seventeen months; no further activity has taken place since October, 2011. Ex. B, pp. 10-11.

Importantly, the audits in question do not warrant protection additionally *because such audits effectuated no change to Defendant's wage and hour policies / practices* with respect to the payment of non-exempt production employees for actual time worked.[6] *See Todd*, 152

---

[6] In part because Defendant *did not* change its pay practices and policies since the audits in question with respect to the payment of putative class members for pre-shift and post-shift duties worked, the instant litigation is necessary. It is Plaintiffs, not Defendant, who seek to "ensure compliance with . . . wage and hour laws designed to protect employees." *See* Defendant's Brief, *supra*, p. 6.  As the disclosure of the audits in question will assist Plaintiffs in vindicating the wage and hour rights of all non-exempt production employees, the disclosure of such audits / reports promote the public interest.  *See Todd,* 152 F.R.D. 683-684 (holding that the self-critical analysis privilege is not appropriate when disclosure of self critical documents promote the public interest).

F.R.D. at 684 (holding that when the conclusions of such audits and reports are not followed, the public interest is not served by protection of the documents).

It is irrelevant that the audits / reports may have included "follow up" measures to be taken, *see* Decl. of Stephanie Ojeda, ¶2 (Dkt. 34-3, p. 2, ECF numbering).  What is important is that the audits / reports did not effectuate any changes with respect to Defendant's actual pay policies / practices.

Defendant did implement the "seven minute rule" (prohibiting employees from clocking in and out more than 7 minutes before and after, respectively, the start and end times of their shifts) in close proximity with some of the audits / communications in question.  *See* Ex. B.  However, such a rule *only* affected the time in which an employee was permitted to clock in and out without discipline.[7]  That policy *did not change the manner in which Defendant compensated non-exempt production employees for time worked*.  Thus, after the initiation of the "seven minute rule," Defendant continued not to compensate for the performance of pre- and post-shift duties, and that time continued not to be counted towards weekly overtime.  *See* Complaint (Dkt. 1), ¶¶48-49.  *See also* Plaintiffs' Brief in Support of Their Motion to Compel (Dkt. 35), p. 11 (p. 19, ECF numbering).  Thus, Defendant's comparison of the audits / reports to "a subsequent remedial measure" protected from admissibility by Fed. R. Evid., Rule 407 is misplaced.  *See* Defendant's Brief in Support, p. 6 (Dkt. 34-1, p. 9, ECF numbering).  *See also Bracco*, 2006 U.S. Dist. LEXIS 75359, at *16-*19.

---

[7] For a more in depth discussion of the "seven minute rule" applied by Defendant, and Defendant's failure to pay for pre- and post- shift time worked by putative class members when those individuals clock in and out in accordance with the seven minute rule, see Plaintiffs' Brief in Support of Their Motion to Compel (Dkt. 35), p. 11 (p. 19, ECF numbering).

**F. There is no comparison between *Bracco* and the case at bar.**

Defendant, despite citing extensively to *Bracco* in its Brief, failed to point out numerous differences between *Bracco* and the case at bar. *See* Defendant's Brief in Support, pp. 4-5 (Dkt. 34-1, pp. 9-11). While this Court in *Bracco* ordered that defendant's internal compliance report was protected by the self-critical analysis privilege, *Bracco* is completely inapposite. *Id.*, at *26

In *Bracco*, the internal compliance report was initiated by defendant's in-house counsel. *Id.*, at *11. The report was further conducted "in contemplation of possible future claims or litigation;" hence an appropriate analogy to Rule 407 and subsequent remedial measures. *Id.*, at *14, *16-*19. The report in *Bracco* was also prepared as a "step in furtherance of added safety," ensuring compliance with FDA standards. *Id.*, at *21.

Comparatively, the instant audits / reports were initiated by Defendant's *customers* (not in-house counsel), were not prepared in contemplation of future claims or litigation,[8] and were not done to promote public safety. Moreover, the disclosure of non-self critical wage and hour investigations in this litigation will have no bearing on entities wishing to engage in internal wage and hour investigative measures in the future.

Unlike internal investigations into safety measures (which business entities may avoid out of fear that their discovery could lead to oppressive punitive damages in the context of malpractice litigation), wage and hour investigations will serve an employer's financial interest regardless of subsequent disclosure. Employers remain incentivized to review their wage and hour practices, as a cost saving measure against potential wage and hour violations. *See Todd*,

---

[8] The most recent audit listed on Defendant's Privilege Log is dated October 10, 2011. *See* Exhibit B, p. 10.

12

152 F.R.D. at 683-684 (reasoning that the self-critical analysis is not necessary when entities will not be disincentivized from participating in such reviews).  There is indeed no justification of the extension of the self-critical privilege to wage and hour investigations.

Moreover, the audits / reports in question investigated the wage and hour policies and practices of Defendant, yet did not result in remedial measures to the policies as applied to the putative class members.  Accordingly, in litigation styled to protect the wage and hour rights of such putative class members, it is the *disclosure* – and not the protection -- of such audits / reports that will promote the public good.  *See Todd*, 152 F.R.D. at 683-684.

## III.   <u>Conclusion</u>

For the foregoing reasons, Defendant failed to meet its burden of proof, and its Motion for a Protective Order should be denied.

Respectfully Submitted,

<u>s/Nicholas D. George</u>
Nicholas D. George, Esq.
Justin L. Swidler, Esq.
Richard S. Swartz, Esq.
**SWARTZ SWIDLER, LLC**
1878 Marlton Pike East, Suite 10
Cherry Hill, NJ 08003
ngeorge@swartz-legal.com
Phone: (856) 685-7420
Fax: (856) 685-7417

Dated: August 9, 2013                 **ATTORNEYS FOR PLAINTIFFS**

13