[Doc. No. 35]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| CINDY BOBRYK, *et al.*,<br><br>            Plaintiffs,<br><br>      v.<br><br>DURAND GLASS MANUFACTURING<br>COMPANY, INC.,<br><br>            Defendant. | Civil No. 12-cv-5360 (NLH/JS) |

## OPINION

This matter is before the Court on "Plaintiffs' Motion to Compel and Limit Defendant Durand Glass' and Counsel's Pre-Certification Communications with Putative Class Members". [Doc. No. 35]. Plaintiffs seek to bar defendant from interviewing members of their putative class comprised of defendant's employees. The Court received defendant's opposition [Doc. No. 39] and plaintiffs' reply. [Doc. No. 42]. The Court recently held oral argument. For the reasons to be discussed, plaintiffs' motion is DENIED.

Background

Named plaintiff, Cindy Bobryk, filed the instant action on August 24, 2012, as an individual and collective action for

1

unpaid overtime and wages pursuant to Section 16(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), and as a Fed. R. Civ. P. 23 class action for unpaid overtime wages under the New Jersey Wage and Hour Law and the New Jersey Wage Payment Law. Complaint ("Compl.") at ¶14 [Doc. No. 1]. In sum and substance, plaintiffs are seeking to sue on behalf of all current and former employees of defendant's Millville, New Jersey facility, alleging that defendant required plaintiffs to work beyond their scheduled shift times, without compensating them for overtime wages earned during pre-shift and post-shift activities. See Compl. at ¶44. Since the lawsuit was filed, three individuals elected to opt-in as plaintiffs on the FLSA claim. [Doc. Nos. 16, 17, 19]. Defendant opposes class certification.

In the course of discovery defendant produced twenty (20) declarations from its employees. The basis of plaintiffs' motion is that defense counsel obtained misleading declarations from defendant's employees (hereinafter referred to as "putative class members") by improperly eliciting "statements of purported 'facts' that were known to be untrue by counsel at the time the declarations were drafted." Brief at 4. None of the declarations were obtained from opt-in plaintiffs. Plaintiffs contend the declarations were improperly obtained in light of defense counsel's alleged failure to advise putative class members of:

2

(1) the identity of plaintiffs' counsel (id. at 5, 19); (2) plaintiffs' theory of the case (id. at 5, 10); (3) their right to counsel (id. at 5, 19); (4) their legal rights (id. at 7); and (5) "the existence of a lawsuit related to a failure to pay overtime." (Id. at 19). Furthermore, plaintiffs complain that defense counsel never sought plaintiffs' authorization to engage in *ex parte* communications. Id.[1] Plaintiffs assert that defense counsel's interviews "were not simply investigative or to disseminate information" but were initiated for the improper purpose of procuring signed declarations binding putative class members to a set of facts adverse to their interests. Brief at 18-19. Thus, plaintiffs contend that such communications were improper and abusive under Rule 23(d), as well as unethical pursuant to Rule 4.2 of the Rules of Professional Conduct.

Plaintiffs seek to prohibit defendant and its counsel from engaging in any future *ex parte* communications with putative class members prior to class certification, and to preclude defendant from making any use of the declarations obtained during the course of their communications. Brief at 22-23.

---

[1]Plaintiffs' use of the term "*ex parte*" is a misnomer. Plaintiffs are referring to a situation where a defendant talks to a represented party. Here, since the putative class members have not yet opted-in to the collective class, and the Rule 23 class has not been certified, plaintiffs' counsel does not represent the putative class. The Court will nevertheless use the term in this Opinion with the understanding that no attorney-client relationship exists between plaintiffs' counsel and the putative class.

Additionally, plaintiffs request that the Court compel defendant to "(1) produce all notes from *ex parte* communications; (2) identify all putative class members contacted by Defendant or Defendant's counsel for investigations or the solicitation of declarations (including the dates of such communications and the manner of contact); (3) produce all drafts of declarations; (4) produce all writings shared with or reviewed by such putative class members in connection with such investigations; and (5) distribute the form letter (attached as Exhibit C [to plaintiffs' motion]) to all putative class members to remediate any misunderstandings in connection with this matter as a result of the *ex parte* communications by Defendant and/or its counsel." Brief at 23.

In its response, defendant argues that communications between defendants and prospective class members are permitted during the pre-certification stage of class action litigation so long as the communications are neither misleading nor coercive. Brief at 4-5. Defendant asserts that its purpose for obtaining the declarations from various employees in different departments was "to demonstrate that these employees' job responsibilities and routines are significantly different than Ms. Bobryk's and that these employees did not engage in pre-shift activities for which they were not compensated." Id. at 1-2. Defendant counters plaintiffs' accusations by relying on a scripted "detailed

introduction" statement ("script") it claims its counsel read to each putative class member before obtaining their declaration. See Def.'s September 18, 2013 Letter ("Def. Letter") Ex. A, Aff. of Daniel H. Aiken, Esquire; Ex. B, Aff. of Thomas J. Barton, Esquire; Ex. C, Aff. of Aaron M. Moyer, Esquire. See also Transcript of September 24, 2013 Oral Argument ("Tr.") 4:12-5:9. The script prepared by defense counsel states in pertinent part:

(1) Attorneys with DBR, representing Durand in a lawsuit brought by Cindy Bobyrk, who alleges she was not paid properly for time putting on and taking off equipment, and for time spent during shift holdover with other EM's.

(2) Ms. Bobryk claims that all Durand hourly employees have the same experiences as she had. For this reason, she feels she should be able to recover wages on behalf of all hourly employees in the plant, as their representative.

- No court has determined that Ms. Bobryk has the right to bring claims and attempt to collect any money on behalf of other employees, like you.

- At this stage of the lawsuit, the attorneys for both sides are investigating the claims and gathering information, which is why we are speaking with you and other employees. We expect to use this information to show that not all hourly employees in the plant have the same experience as Plaintiff had and [] she should not be able to be representative for all hourly employees

- If Court agrees with us, Ms. Bobryk will only be able to bring claims on her own behalf.

- We also will use the information gathered to show that Durand has paid its employees as required by law.

- At the end of our conversation, I will prepare a written summary of what we've discussed and [use] it for you[r] review.

- You are not required to speak with us. We are not Durand employees, and Durand will not retaliate against you for anything that you tell me. We won't share your answers with your manager, so you may speak freely.

- But, if it seems a manager has made a mistake, we may work to correct that mistake without identifying any employee by name.

Def. Letter at 5-6.[2] According to defense counsel, the purpose of the script was "to ensure that each employee was appropriately advised of, among other things, the lawsuit, the employee's right not to speak with [defendant]'s counsel, and the fact that the employee would not be retaliated against in any way." Brief at 11-12. Defendant further asserts that before defense counsel spoke with its employees about substantive issues it ensured that the putative class members were not represented by counsel or had already joined the action. Id. at 3. Thus, defendant argues that in light of plaintiffs' failure to demonstrate a "clear record of abuse," judicial intervention into the communications between the parties is unwarranted. Id. at 8. The Court agrees.

---

[2] When defendant filed its brief in response to plaintiffs' motion it took the position that the script read to the declarants during their interviews was protected under the work-product doctrine. Brief at 14-16. At oral argument, however, the Court found that the script was discoverable and ordered its production to plaintiffs.

Discussion

The applicable case law makes it quite clear that there is no bright-line rule barring a defendant from speaking with putative class members. Pursuant to Rule 23(d)(1) "the court may issue orders that: . . . (C) impose conditions on the representative parties or on intervenors . . . [and] (E) deal with simple procedural matters." While district courts have both the duty and broad discretion to limit communications between parties and putative class members in the class action context, such discretion is not without limits. Gulf Oil Co. v. Bernard, 452 U.S. 89, 100 (1981); see also Slavinski v. Columbia Assoc., Inc., No. 08-890, 2011 WL 1310256, at *3 (D. Md. Mar. 30, 2011). District courts must use their power to restrict communications in class actions sparingly given the significant First Amendment concerns associated with any such restraint. Longcrier v. HL-A Co., Inc., 595 F. Supp. 2d 1218, 1226 (S.D. Ala. 2008). However, the majority of federal courts hold that a "defendant in a § 216(b) action is not categorically forbidden from communicating with prospective opt-in plaintiffs." Id. at 1225 ("As a general matter, employers are free to communicate with unrepresented prospective class members about the lawsuit and even to solicit affidavits from them concerning the subject matter of the suit"); see also Parks v. Eastwood Ins. Servs., Inc., 235 F. Supp. 2d 1082, 1084 (C.D. Cal. 2002) ("[t]he law is not settled

on this issue, but the majority view seems to be against a ban
on pre-certification communication between Defendant and
potential class members.").

    In Gulf Oil, supra, the Supreme Court addressed the
question of whether district courts possess the authority to
limit communications between parties and prospective class
members. The Court held that "an order limiting communications
between parties and potential class members should be based on a
clear record and specific findings that reflect a weighing of
the need for a limitation and the potential interference with
the rights of the parties." 452 U.S. at 100.[3] The Court went on
to explain that "such a weighing—identifying the potential
abuses being addressed—should result in a carefully drawn order
that limits speech as little as possible, consistent with the
rights of the parties under the circumstances." Id. at 102.
Thus, in order to demonstrate that a limitation on
communications between a defendant and putative class members is

―――――――――――――――――

[3] In Gulf Oil, plaintiffs brought a class action "on behalf of all
black present and former employees, and rejected applicants for
employment" at the defendant's refinery. The suit was filed
after the defendant reached a conciliation agreement with the
Equal Employment Opportunity Commission to cease discriminatory
practices against its employees and offer backpay to the alleged
victims of racial discrimination. Id. at 91. After granting the
defendant's motion to limit the parties and their counsel from
communicating with potential class members, the court modified
its initial order by imposing "a complete ban on all
communications concerning the class action between parties or
their counsel and any actual or potential class member who was
not a formal party." Id. at 94.

warranted, the plaintiff must show "(1) that a particular form of communication has occurred or is threatened to occur and (2) that the particular form of communication at issue is abusive in that it threatens the proper functioning of the litigation." Slavinski, 2011 WL 1310256, at *3 (quoting Longcrier, 595 F. Supp. 2d at 1226-27).

Federal courts have restricted communications in class actions, in both Rule 23 and § 216(b) settings, "where a party has engaged in misleading or coercive behavior" with respect to potential class members. Longcrier, 595 F. Supp. 2d at 1227. Imposing restrictions on a defendant's communications with a putative class or representative plaintiffs serves to protect the attorney-client relationship and prevent opposing lawyers from communicating with a party the lawyer knows to be represented by counsel regarding the subject matter of the representation. See Parks, 235 F. Supp. 2d at 1083. "In tracing out the fault line between conduct which warrants restrictions and conduct which does not, it bears emphasis that mere inherent coerciveness in the employment relationship is insufficient, in and of itself, to warrant imposition of limitations on employers' ability to speak with potential class members prior to certification." Longcrier, 595 F. Supp. 2d at 1227. With respect to "defense communication with § 216(b) prospective plaintiffs, the situation is analogous to a *pre-certification*

9

Rule 23 class action, when the prospective plaintiffs are still unrepresented parties." <u>Parks</u>, 235 F. Supp. 2d at 1083 (emphasis in original) ("the defense communication allowed in a § 216(b) representative action during the period before a prospective plaintiff 'opts in' should be the same as in a Rule 23 class action before certification and creation of a represented class."); <u>Slavinski</u>, 2011 WL 1310256, at *3; <u>Kerce v. West Telemarketing Corp.</u>, 575 F. Supp. 2d 1354, 1366-67 (S.D. Ga. 2008).

On the present record the Court finds that plaintiffs have failed to demonstrate that defense counsel's communications with putative class members were misleading or coercive. Thus, a pre-certification order limiting communications between putative class members and defendant is not warranted. The record does not show any misconduct by defense counsel or evidence to support plaintiffs' contention that defense counsel's actions deterred putative class members from participating in the collective action. Defense counsel did not willfully conceal any material information from putative class members, nor did they engage in behavior that threatened, intimidated or influenced the putative class members' decision to sign a declaration.

An instructive case is <u>Slavinski</u>, <u>supra</u>. In <u>Slavinski</u>, the plaintiff sued her employer on behalf of herself and other similarly situated employees for the recovery of unpaid overtime

10

wages under the FLSA claiming that her employer improperly classified her as exempt. Id. at *1. Prior to conditional certification, and in the course of discovery, the defendant's attorney investigated the plaintiff's claims by interviewing current employees that had been classified as exempt by the plaintiff's employer. Id. at *2. During each interview the defense attorney was: (1) introduced as counsel for the defendant; (2) explained that the purpose of the meeting was to discuss the plaintiff's lawsuit; (3) provided a copy of the complaint; (4) explained the plaintiff's allegations; (5) clarified to the employees that their participation in the interview was voluntary; and (6) informed the employees of the potential impact that signing the declaration could have on their ability to join the lawsuit. Id. at *3. In response to the defense attorney's interviews, the plaintiff filed a motion seeking to enjoin "further improper communications with prospective members." Id.

In denying the plaintiff's motion, the court found that the defense attorney's interviews were neither improper nor abusive, explaining that because the employees interviewed by the defense attorney "had not yet opted-in to the lawsuit . . . in the absence of any court order restricting such contact, defense counsel was not required either to inform plaintiff's counsel, or invite[] him to participate." Id. The court also rejected the

11

plaintiff's arguments concerning the coercive effect of the employer-employee relationship, reiterating that in and of itself "[t]he inherently coercive nature of the employer-employee relationship is [] insufficient to demonstrate that the [defendant]'s interviews were improper." Id. at *4. The court distinguished between the interviews conducted in the case before it and cases where the communications between employers and prospective class members were actually abusive, holding that the plaintiff "provided no evidence that [defense counsel] misrepresented facts about the lawsuit or discouraged participation in the suit." Id.; see also Ross v. Wolf Fire Prot., Inc., 799 F. Supp. 2d 518, 527 (D. Md. 2011) (finding plaintiffs failed to demonstrate that defense counsel "subvert[ed] the class action process, or show the bad faith typically present in cases in which broad protective orders . . . have been issued").

The interviews conducted in Slavinski are analogous to the interviews defendant conducted. While plaintiffs have shown that a "particular form of communication has occurred," they have failed to demonstrate that the communications threatened the proper functioning of the litigation. See Longcrier, 595 F. Supp. 2d at 1226-27. Similar to the defense attorney's pre-interview disclosures in Slavinski, defense counsel's script provided the putative class members with a fair, objective and

plain language explanation of plaintiffs' claims. Despite
plaintiffs' assertion that the script omits essential
information, such as plaintiffs' counsel's contact information,
a "neutral advisement of Plaintiff's theory of the case," and
the right to speak with class counsel, the Court finds
defendant's script satisfies most of plaintiffs' concerns.
Specifically, before the putative class members signed their
declarations they were told: (1) that they were speaking to
defendant's attorney and why; (2) that the purpose of the
interview was to discuss Ms. Bobryk's lawsuit; (3) the general
nature of Ms. Bobryk's claims; (4) Ms. Bobryk was proceeding as
a representative on behalf of defendant's employees; (5) their
participation was voluntary; (6) defendant would be using the
information to demonstrate that Ms. Bobryk's work experiences
were not representative of their own; (7) they would not be
retaliated against; and (8) their answers would not be shared
with their managers. This disclosure to the declarants evidences
that defendant's interviews were not coercive or abusive, and
did not thwart the proper functioning of the litigation.

District courts maintain "broad authority to exercise
control over a class action and to enter appropriate orders
governing the conduct of counsel and parties." Gulf Oil, 452
U.S. at 100. In the absence of a bright-line rule controlling
pre-certification communications between defendants and putative

class members, courts have discretion when assessing whether the factual circumstances surrounding *ex parte* communications warrant the imposition of restrictions on speech. See id. The Court is unaware of any statutory rule or case law that requires defense counsel to give specific information and instructions to putative class members, nor is the Court aware of any "magic words" that must be disclosed. Plaintiffs have not cited to any particular script that must be read. Instead, the Court examines the entirety of defendant's conduct and communications. The Court rejects plaintiffs' argument that in the absence of all of the specific instructions they request to be given, defendant's communications were improper. Given the content of defense counsel's disclosures to the putative class members, and in the absence of evidence that defendant's actions were misleading or coercive, the Court finds that plaintiffs' allegations regarding alleged abusive and unethical communications are unfounded.

The cases plaintiffs rely upon are inapposite. In those cases, unlike here, there was evidence of abuse and misleading statements. In Mevorah v. Wells Fargo Home Mortg., Inc., No. 05-1175, 2005 WL 4813532, at *1,*6 (N.D. Cal. Nov. 17, 2005), the defendant's attorney conducted pre-certification interviews and prepared declarations for the defendant's employees, all of whom were putative class members in the underlying FLSA class action. The court found that the defense counsel's mischaracterizations

14

of the lawsuit induced the putative class members to participate in declarations binding them to a set of facts adverse to their interests. Id. at *5. In this case, there is no evidence to suggest defense counsel "mischaracterized" the nature of Ms. Bobryk's claims. While the Court, as well as defense counsel, recognizes the possibility that the putative class members may become bound by the factual statements in their declarations, they are not bound by their uninformed statements of law, e.g., that defendant satisfied its payment obligations under the FLSA. In addition, the record does not indicate that defense counsel attempted to persuade the putative class members into believing that the success of plaintiffs' lawsuit would negatively impact their future compensation or adversely affect their interests. See Ross, 799 F. Supp. 2d at 526 (denying motion to strike affidavits containing statements which could have prevented employees from joining the class).

Likewise, the Court finds that plaintiffs' reliance on Kleiner v. First Nat'l Bank of Atlanta, 751 F.2d 1193, 1212 (11th Cir. 1985) is unpersuasive. In Kleiner, the court examined its authority to impose a ban on the defendant's solicitation of "class exclusion requests as a means to reduce[] its potential liability and quelling the adverse publicity the lawsuit had spawned." Id. at 1197. In direct violation of the court's initial order limiting unsupervised contacts between the

defendant and putative class members, the defendant's executives orchestrated a wide-scale "communication program," directing a team of its employees to call potential class members and persuade them to withdraw from the class.[4] Here, defense counsel's communications with putative class members are not remotely comparable to the defendant's conduct in Kleiner. The case is also distinguishable because plaintiffs have not argued that defendant's actions exceeded the scope of an earlier order. Also, conditional certification is still pending.

To the extent plaintiffs argue that Abdallah v. Coca Cola Co., 186 F.R.D. 672, 679 (N.D. Ga. 1999) supports the imposition of restrictions on communications between parties "'even in the absence of any reason to suspect' that misleading communications or coercion would occur," the Court finds such an assertion runs counter to the holding in Gulf Oil, supra.[5] See Kerce, 575 F.

---

[4] In Kleiner, the court affirmed the district court's order imposing sanctions against the defendant and its counsel for secretly soliciting exclusion requests from potential class members. The court found that "the carefully constructed edifice of check and countercheck, notice and reply, was obliterated when the telephones were lifted from their cradles." Id. at 1203. The court further noted that the "[defendant]'s subterfuge and subversion constituted an intolerable affront to the authority of the district court to police class member contacts." Id.

[5] In Gulf Oil, the Court cited the Third Circuit's holding in Coles v. Marsh, 560 F.2d 186, 189 (3d Cir. 1977), which stated:

> [T]o the extent that the district court is empowered . . .
> to restrict certain communications in order to prevent

16

Supp. 2d at 1367. In Abdallah, the plaintiffs brought a class
action against their employer alleging systematic discrimination
against African American employees. Id. at 673. Prior to class
certification, the plaintiffs filed a motion for leave to
interview prospective class members and to limit the defendant's
company-wide communications with potential class members
regarding the lawsuit. Id. at 678. Despite the fact that the
defendant-employer did not give the court "any reason to suspect
that it [would] attempt to mislead its employees and coerce them
into non-participation" in the class action, the court
prohibited the defendant from discussing the underlying lawsuit
directly with potential class members. Id. at 678-79. The court
did, however, allow the defendant to share its views of the
lawsuit with its employees, but required that all such
communications include language explaining that the
communication represented the defendant's opinion of the lawsuit
and that it was unlawful for the defendant to retaliate against
its employees for joining the action. Id.

---

    frustration of the policies of Rule 23, it may not exercise
    the power without a specific record showing by the moving
    party of the particular abuses by which it is threatened.
    Moreover, the district court must find that the showing
    provides a satisfactory basis for relief and that the
    relief sought would be consistent with the policies of Rule
    23 giving explicit consideration to the narrowest possible
    relief which would protect the respective parties.

452 U.S. at 102.

In Abdallah the court was concerned that the defendant's chief executive officer's company-wide emails concerning the class action "could deter potential class members from participating in the suit out of concern for the effect it would have on their jobs." Id. at 679. Here, there is no evidence that defendant's corporate executives or managers initiated any contact with the putative class members to discuss the plaintiffs' lawsuit. In fact, defense counsel's script specifically stated that none of the putative class members' answers in the declarations would be shared with their managers. Furthermore, Abdallah's significance is minimized in light of the case law holding that the mere existence of an employer-employee relationship does not by itself warrant the imposition of restrictions on communications between employers and potential class members. See Longcrier, 595 F. Supp. 2d at 1226 ("Without question . . . there is no mandatory, across-the-board prohibition against employer contact with prospective class members in an FLSA action at the pre-certification stage."). The applicable case law instructs district courts to exercise restraint before restricting communications between parties and potential class members. Plaintiffs bear the burden as the moving party to establish a "clear record and specific findings" of "abusive" communications threatening the proper functioning of the litigation. Plaintiffs have failed to meet their burden.

18

See Gulf Oil, 452 U.S. at 102; Longcrier, 595 F. Supp. 2d at
1226; Ross, 799 F. Supp. 2d at 526 ("A communication is
sufficiently abusive to warrant a protective order if it seeks
to coerce prospective class members into excluding themselves
from the litigation, contains false, misleading or confusing
statements, or undermines 'cooperation with or confidence in
class counsel.'") (citation omitted).

Plaintiffs also rely on In re School Asbestos Litigation,
842 F.2d 671, 683 (3d Cir. 1988), in which an association,
composed entirely of defendant-asbestos manufacturers, mailed
roughly 31,000 informational booklets directly to class members
in the underlying action for the purpose of educating the class
of the alleged exaggerated dangers of asbestos in buildings.[6] In
response, the class plaintiffs moved for a preliminary
injunction to prohibit the association from "directly or
indirectly communicating with any class member outside the
normal scope of business without prior [c]ourt approval." Id. at
676. The district court subsequently entered a pretrial order
that required the association to "prominently display" a notice
before communicating with class members, which identified the
association's member companies, noted that the member companies

---

[6] The booklets promoted the defendants' collective views "that the
presence of asbestos in buildings rarely poses a health hazard,
that asbestos removal often is not an appropriate response and
may increase risks, [and] that alternatives to removal should be
seriously considered." Id. at 675.

19

funded the association, and explained that the member companies were defendants in the underlying litigation and that the plaintiff class consisted of school districts nationwide. Id.

On appeal, the Third Circuit considered the role district courts play in protecting class members from "communications that mislead or otherwise threaten to create confusion and to influence the threshold decision whether to remain in the class." Id. at 683.[7] The Court determined that the booklets were "misleading as to [their] objectivity and neutrality," recognizing the possibility that the booklets could convince members of the plaintiff class to forego asbestos removal in their buildings. Id. at 683.[8] The Third Circuit determined that the information disseminated in the association's booklet was not "litigation neutral" because the communications sought to protect the "defendants' pecuniary interests by influencing decisions that will determine defendants' ultimate potential liability in the litigation." Id. at 682-83.

---

[7] The Third Circuit explained that "Rule 23(d) does not . . . require a finding of actual harm; it authorizes the imposition of a restricting order to guard against the 'likelihood of serious abuses.'" 842 F.2d at 683 (emphasis in original) (quoting Gulf Oil, 452 U.S. at 104).

[8] The court in In re School Asbestos Litigation vacated the district court's order limiting the defendants' future communications with class plaintiffs for being overbroad, concluding that "neither the nature of harm identified by the district court, nor the scope of its findings provid[ed] a basis for the kind of sweeping disclosure requirement" imposed by the court. Id. at 683.

Unlike the "misleading" booklets mailed directly to the class plaintiffs in In re School Asbestos Litigation, defense counsel's interviews with the putative class members did not pose a risk of influencing or discouraging their participation in the collective action. The Court agrees with defendant's argument that the declarations reflect the putative class members' understanding of their work habits, pre-shift and post-shift duties, and whether each employee received compensation for overtime. As the declarations suggest, the declarants were free to decline to sign if they disagreed with the statements or facts contained in their statements. Moreover, the improper communications in In re School Asbestos Litigation took place after class certification was granted, not during the pre-certification stage as is the case in the present action.

To the extent plaintiffs claim defense counsel presented the putative class members with false or misleading information concerning plaintiffs' lawsuit, the Court finds these arguments to be without merit. Plaintiffs point to alleged "contradictions" and "incorrect statements" in the declarations to support their contention that defense counsel "dubiously attempted to refute the notion that defendant improperly failed to pay overtime to [its] employees" by misleading the declarants. Brief at 10. However, plaintiffs' claim is unfounded. Plaintiffs ignore the possibility that the

declarants' work habits, job responsibilities and the manner in which they were compensated may actually differ from Ms. Bobyrk's experiences. Further, plaintiffs are quibbling about certain words in defendant's declarations that have no legal significance. Plaintiffs had the opportunity to establish a clear record of abuse by interviewing the declarants and taking their depositions, but they failed to do so. In the absence of a clear record that defense counsel misrepresented facts about the plaintiffs' action, discouraged participation in the suit, or undermined the putative class members' confidence in, or cooperation with plaintiffs' counsel, the Court declines to grant plaintiffs' requested relief. See Kerce, 575 F. Supp. 2d at 1367 (denying motion to strike declarations from potential class members who stated they had no interest in pursuing lawsuit).

Plaintiffs also rely on Dondore v. NGK Metals Corp., 152 F. Supp. 2d 662, 677 (E.D. Pa. 2001) and Gutierrez v. Johnson & Johnson, No. 01-5302 (D.N.J. Apr. 3, 2003) (Opinion of Politan, Special Master) in support of their argument that defense counsel violated Rule 4.2 of the New Jersey Rules of Professional Conduct by failing to identify plaintiffs' counsel to putative class members and notify plaintiffs' counsel of its

*ex parte* communications. <u>See</u> Brief at 16-18.[9] The court in

<u>Dondore</u> prohibited defense counsel from contacting putative

class members, holding that "the mere initiation of a class

action" triggers certain protections afforded to potential class

members given their status as "passive beneficiaries of the

action brought in their behalf." <u>Id.</u> at 665 (quoting <u>Am. Pipe &</u>

<u>Constr. Co. v. Utah</u>, 414 U.S. 538, 552 (1974)). Similarly, in

<u>Gutierrez</u>, the Special Master considered whether putative class

members enjoyed a "fully developed attorney-client relationship"

or "some type of hybrid." <u>Id.</u> at 4. The Special Master noted the

majority view that "before certification as a class, no fully

developed attorney-client relationship exists between putative

class members and class counsel," acknowledged that the

"identification of counsel is not specifically required by the

Rules [of Professional Conduct]," and discussed the "employer's

right to formulate a defense by interviewing its own employees."

<u>Id.</u> at 4-7. The Special Master held, however, that putative

class members were entitled to certain rights "stemming from

their potential interest in the litigation." <u>Id</u> at 6. As such,

---

[9] R.P.C. 4.2 states in pertinent part:

> In representing a client, a lawyer shall not communicate
> about the subject of the representations with a person the
> lawyer knows, or by the exercise of reasonable diligence
> should know, to be represented by another lawyer in the
> matters . . . unless the lawyer has the consent of the
> other lawyer, or is authorized by law or court order to do
> so, or unless the person is in fact represented.

23

in order to protect those rights the Special Master held that the "putative class members be informed of the existence of the lawsuit and the identity of the attorneys for the plaintiffs, as well as the fact that it is a class action, and that they may be part of the class." Id.

The Court declines to follow Dondore and Gutierrez. The complete ban on communications that occurred in Dondore is simply not supported by Gulf Oil and its progeny. As to the non-binding Special Master decision in Gutierrez, defendant disclosed most of the information noted therein. As noted, however, the Court rejects the notion that it is an absolute necessity that plaintiffs' counsel must be specifically identified. Further, certain language in Dondore and Gutierrez is inconsistent with the majority of case law that holds that the attorney-client relationship with putative class members "does not begin until the class has been certified and the time for opting out by a potential member of the class has expired." ABA Formal Op. 07-445 (2007) (discussing contact between counsel and putative class members prior to certification). Until putative class members affirmatively opt-in to benefit from a collective action, or until a Rule 23 class is certified and the opt-out period expires, defense counsel is not completely barred from communicating with putative class members. See Parks, 235 F. Supp. 2d at 1085. So long as defense counsel's communications

24

with the putative class are not misleading or coercive, defense counsel is entitled to gather information from employee witnesses, "especially . . . where the court has not yet granted a conditional class certification and it is still unclear whether the employees are similarly situated to the plaintiff." Slavinski, 2011 WL 1310256 at *3. Since defendant's conduct in this case was not misleading or coercive, the Court denies plaintiffs' request to bar defendant's communications. The Court also denies plaintiffs' requested curative relief to address defendant's alleged misdeeds.[10]

Conclusion

        Accordingly, for all the foregoing reasons, plaintiffs' motion is DENIED. An appropriate order will be entered.




                              s/ Joel Schneider
                              Joel Schneider
                              UNITED STATES MAGISTRATE JUDGE


Dated: October 9, 2013

---

[10] Defendant's interviews, notes, questions and draft declarations are protected work-product. See F.T.C. v. Hope Now Modifications, LLC, No. 09-1204 (JBS/JS), 2011 WL 2634029, at *1,*5 (D.N.J. July 5, 2011) (holding plaintiff's notes summarizing oral interview with witness were protected under work-product doctrine).