[Doc. No. 34]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| CINDY BOBRYK, et al., <br><br> Plaintiffs, <br><br> v. <br><br> DURAND GLASS MANUFACTURING COMPANY, INC. <br><br> Defendant. | Civil No. 12-5360 (NLH/JS) |

**<u>MEMORANDUM OPINION</u>**

This matter is before the Court on defendant's Motion for Protective Order. [Doc. No. 34]. Defendant claims wage and hour inspection and audit reports of its Millville, New Jersey facility are protected by the "self-critical analysis" privilege and do not have to be produced in discovery.[1] Plaintiffs disagree and insist the documents be produced. The Court received plaintiffs' opposition [Doc. No. 40] and defendant's reply [Doc. No. 41]. The Court recently held oral argument. After the conclusion of oral argument the Court denied defendant's motion. This Memorandum Opinion explains in more detail the basis of the Court's decision.

<u>Background</u>

Plaintiff Cindy Bobryk filed this action on August 24, 2012, individually and on "behalf of all those similarly situated"

---

[1] The documents at issue will be collectively referred to as "inspection reports."

present and former employees of defendant Durand Glass Manufacturing Company, Inc. ("Durand").[2] Bobryk seeks payment of unpaid overtime and wages, certification of the case as a collective action under the Fair Labor Standards Act, 29 U.S.C. §216(b), and certification of a class action pursuant to Fed. R. Civ. P. 23.

Durand is a glass manufacturer. As a condition to maintaining its business relationship with certain of its customers, the customers required that Durand's facility be inspected to assure compliance with, inter alia, applicable wage and hour laws. The inspections and reports were prepared by third-parties. Although Durand contends that it paid for some inspections and its customers paid for others, it could not identify who paid for the inspections at issue.

Approximately fifteen (15) documents are at issue, all of which the Court reviewed in camera. The documents touch on five inspections and include the actual inspection reports, resulting corrective actions, and a handful of internal e-mails regarding the inspections. The relevancy of the documents is not at issue. The documents address inspections that occurred during the proposed class period and discuss issues the parties dispute. The sole basis of defendant's motion is its contention that the subject

---

[2]After the case was filed Lashon Golden, Brendan Dunn and Cynthia Brownlow opted into the case.

documents are protected by the self-critical analysis privilege.

Discussion

The self-critical analysis privilege has been recognized when confidentiality "is essential to the free flow of information and ... the free flow of information is essential to recognize public interests." Harding v. Dana Transport, Inc., 914 F. Supp. 1084, 1100 (D.N.J. 1996)(citation and quotation omitted). The privilege protects from disclosure evaluative materials "created in accordance with governmental requirements, or for purposes of 'self-improvement'." See Craig v. Rite Aid Corp., C.A. No. 4:08-CV-2317, 2010 WL 5463292, at *2 (E.D. Pa. Dec. 29, 2010). The purpose of the privilege is to "encourage self-evaluation and the benefits that may flow therefrom, and to avoid the chilling effect upon such self-analysis which would result from complete disclosure." Todd v. South Jersey Hosp. System, 152 F.R.D. 676, 682 (D.N.J. 1993). "[C]onfidentiality and the public need for confidentiality are sine qua non of effective internal self-critical analysis." Id. at 683-84 (citation and quotation omitted).

Although the precise parameters of the self-critical analysis privilege are fuzzy, some principles are clear. First, although the privilege has been applied in several New Jersey District Court cases, (see, e.g., Bracco Diagnostics, Inc. v. Amersham Health, Inc., C.A. No. 03-6025 (FLW), 2006 WL 2946469, at **1, 9 (D.N.J. Oct. 16, 2006); Brunt v. Hunterdon Cnty., 183 F.R.D. 181, 185-86

(D.N.J. 1998)), the privilege has not been recognized by the Third Circuit. See <u>Alaska Elec. Pension Fund v. Pharmacia Corp.</u>, 554 F.3d 342, 351 n.12 (3d Cir. 2009)("[W]e are unpersuaded by the [lower] court's reliance on the so-called 'self-critical analysis privilege'.... The self-critical analysis privilege has never been recognized by this Court and we see no reason to recognize it now."). Nor has the self-critical analysis privilege been adopted in New Jersey. <u>Payton v. New Jersey Turnpike Authority</u>, 148 N.J. 524, 545 (1997)(citation omitted)("We decline to adopt the privilege of self-critical analysis as a full privilege, either qualified or absolute, and disavow the statements in those lower court decisions that have accorded materials covered by the supposed privilege near-absolute protection from disclosure.").[3]

Another main principle that can be drawn from the case law is that even if the self-critical analysis privilege applies it only covers subjective or evaluative materials, not objective materials or facts. See <u>Harding</u>, 914 F. Supp. at 1100-1101; <u>Webb v. Westinghouse Elec. Corp.</u>, 81 F.R.D. 431, 434 (E.D. Pa. 1978)(finding

---

[3]The New Jersey Supreme Court reasoned that it "perceive[d] concerns arising from the disclosure of evaluative and deliberative materials to be amply accommodated by the 'exquisite weighing process' ... [New Jersey] courts regularly undertake when determining whether to order disclosure of sensitive documents in a variety of contexts." <u>Id.</u> at 545. The Court further reasoned that although self-critical analysis deserves "substantial consideration" in the balancing process, it is not "qualitatively different from other confidential information, and thus does not require the protection of a broad privilege as opposed to a balancing of interests." <u>Id.</u> at 546.

that subjective evaluations in the requested materials were protected by the self-critical analysis privilege, but "objective data contained in those same reports" were not protected); McAllister ex rel. McAllister v. Royal Caribbean Cruises, Ltd., No. 02-2393, 2004 WL 2216487, at *1 (E.D. Pa. Oct. 4, 2004) (holding that the self-critical analysis privilege applied to protect reports containing mostly subjective and evaluative material); Freiermuth v. PPG Industries, Inc., 218 F.R.D. 694, 698 (N.D. Ala. 2003)(concluding that the self-critical analysis privilege was not applicable because the requested documents did not contain subjective evaluations).

The most recent District of New Jersey case thoroughly analyzing the applicability of the self-critical analysis privilege is Bracco, supra. As Bracco noted, the factors a court must balance to decide whether the privilege applies are:

> (1) whether the information is the result of a self critical analysis undertaken by the party seeking protection, (2) the extent to which the information is available from other sources, (3) the degree of harm the litigant will suffer from the information's unavailability, (4) the possible prejudice to the party asserting the privilege, (5) the public interest in preserving the free flow of the type of information sought, and (6) whether the information is of the type whose flow would be curtailed if discovery were allowed.

Id.[4]

---

[4]These factors are not dissimilar from those identified in Todd, 152 F.R.D. at 683 (citation and quotation omitted)("1) the extent to which the information may be available from other sources; 2) the degree of harm that the litigant will suffer from

5

When applying these factors the Court is mindful that the Federal Rules of Civil Procedure "allow broad and liberal discovery." Pacitti v. Macy's, 193 F.3d 766, 777 (3d Cir. 1999). Pursuant to Rule 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense.... Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." The Court is also mindful that it is defendant's burden to prove that a privilege exists and applies. In re Grand Jury Investigation, 918 F.2d 374, 385 n. 15 (3d Cir. 1990). In addition, the Court notes that privileges "are not lightly created nor expansively construed, for they are in derogation of the search for truth." United States v. Nixon, 418 U.S. 683, 710 (1974); see also Zimmerman v. Norfolk Southern Corp., 706 F.3d 170, 181 (3d Cir. 2013)(evidentiary privileges are interpreted narrowly). Since Rule 26 favors full disclosure of relevant facts during discovery, privileges are not favored. Spencer Sav. Bank, SLA v. Excell Mortg. Corp., 960 F. Supp. 835, 836 (D.N.J. 1997).

The most obvious reason defendant's motion is denied is because defendant did not satisfy its burden to show that it conducted a self-critical analysis. The record evidences that the inspections

---

it's [sic] unavailability; and 3) the possible prejudice to the ... investigation").

at issue were initiated by defendant's customers and were performed by a third party for the customer's benefit.  In addition, defendant does not know if it paid for the inspections.  Defendant, therefore, did not perform or arrange for a self-critical analysis.  There is nothing "self-critical" about an inspection of defendant's facility that was initiated by a customer who hired and paid a third-party to perform the inspection for its benefit.  Not surprisingly defendant cites no case law to support its argument that an inspection under these circumstances is "self-critical."

Importantly, even if defendant arranged and paid for the inspections the Court would still find that a self-critical analysis did not occur.  The inspections at issue were not undertaken to prepare a mandated government report.  Nor did the defendant voluntarily initiate the inspections to ensure compliance with applicable statutes and regulations.  Instead, the inspections were initiated by defendant's customers who wanted to be assured defendant complied with applicable wage and hour laws. Defendant permitted the inspections to go forward because it was motivated by economic and business concerns.  Defendant wanted to satisfy its customers' requirements so it could keep their business.  "[W]here self-evaluation has been voluntarily undertaken, [n]either [the] fairness rationale nor [an] effective enforcement rationale operates....  No unfairness exists [if disclosure occurs], for no third party required [the defendant] to make a critical self-

7

evaluation, or indeed, any evaluation at all." Id. at 843 (citation and quotations omitted). The justification in support of applying the self-critical analysis privilege does not apply here. The inspections were not mandated because defendant did not have to consent to them occurring. They also were not required pursuant to any mandated government law or regulation. Further, no evidence has been presented that the inspections were initiated by defendant's genuine desire or intent to comply with applicable regulatory and statutory requirements. To be sure, this was likely a tangential benefit of the inspections. However, by no means were the inspections done because defendant wanted a "self-critical analysis." Defendant simply wanted to satisfy its customers to maintain their business.

Defendant argues that since the information in the inspection reports is available from other sources this weighs in its favor. The Court disagrees. Although it is possible the information may be obtained through depositions or interrogatories, there is no guarantee this will occur. The subjective or evaluative information in the reports is not likely to be voluntarily disclosed. Plaintiffs will only get the information if they ask the right questions. This information is important because it reflects defendant's contemporaneous impressions. Further, it is possible that when defendant's witnesses are deposed they will not recall their subjective thoughts from 2010-2011. Thus, the information in

the documents may not be available from other sources. Further, plaintiffs could be harmed if the documents are not produced. The documents are relevant to whether plaintiffs' wage and hour policies are uniform and whether the class should be certified (see <u>Morisky v. Public Serv. Elec. and Gas Co.</u>, 111 F. Supp. 2d 493, 496 (D.N.J. 2000); Fed. R. Civ. P. 23(a)(2)). The documents are also relevant to whether plaintiffs can prove a willful violation of the FLSA (see 29 U.S.C. §255(a)). Plaintiffs may be prejudiced if the certification and willfulness decisions are not made on a complete record.[5]

The last two factors the Court analyzes to determine if the inspection reports are privileged are the public interest in preserving the free flow of information and whether the information would be curtailed if discovery is permitted. These factors weigh heavily in favor of disclosure and will be analyzed together. No one can argue with the notion that there is a benefit to wage and hour inspections to assure compliance with applicable laws. However, the Court rejects defendant's argument that its inspections will be chilled or curtailed if the resulting reports are produced. The fact of the matter is that under the present circumstances it is likely nothing will change if the inspection reports are

---

[5]The Court is not weighing in on how the certification and willfulness issues should be decided. It is simply stating that the information in the inspection reports is relevant to these issues.

9

disclosed. Even if defendant knew before its inspections that the resulting reports would be produced in discovery, the Court finds it highly unlikely that the defendant would not consent to the inspections. It is probable that defendant would not want to risk losing business. No public interest is advanced by cloaking from discovery a party's inspection reports that were done to assure its continued business relationship with its customers.

Defendant argues, "[t]he public interest supports encouraging companies to engage in the type of self critical analysis that underlies these documents." Brief at 6. Defendant, however, ignores the fact that it did not do a self-critical analysis since the inspections were arranged for by its customers for their benefit. One court noted that "[w]here the need for ... information is substantial and disclosure would have little effect on self-analysis, discovery has been compelled." Todd, 152 F.R.D. 683. For the reasons already discussed, this situation exists here. It is important that plaintiffs have all relevant information available to them, especially where a disclosure will not harm defendant. This may account for the fact that in the FLSA context numerous cases decline to apply the self-critical analysis privilege to a party's inspection reports. See Gutescu v. Carey Intern., Inc., No. 01-4026-CIV, 2003 WL 25589031, at *5 (S.D. Fla. June 23, 2003)(finding that "[w]ith respect to studies, policies and analyses of the Fair Labor Standards Act overtime requirements, broader discovery is relevant

to the issues of the knowledge of the Defendants with respect to the FLSA provisions and the willfulness of any violations"); Ravenell v. Avis Budget Group, Inc., No. 08-CV-2113 (SLT), 2012 WL 1150450, at *4-5 (E.D.N.Y. 2012)(finding that defendants' "blanket assertion that disclosure of employment audit documents in any case would discourage evaluation of employee position classifications" was not sufficient to warrant the application of the self-critical analysis privilege); Lewis v. Wells Fargo & Co., 266 F.R.D. 433, 439 (N.D. Cal. 2010)(ordering the production of Wells Fargo's internal FLSA audit documents, and noting that it "is not persuaded that allowing discovery of FLSA audit results would curtail such audits"); Deel v. Bank of America, N.A., 227 F.R.D. 456, 459 (W.D. Va. 2005)(concluding that the information within documents relating to a FLSA compliance audit would not be curtailed if discovery were allowed). Not surprisingly defendant does not cite any contrary authority in the FLSA context.[6]

Defendant primarily relies on Bracco, supra. In that case plaintiff sought to compel the production of the defendant's sales and marketing audit performed by Price WaterhouseCoopers ("PWC"). The audit was done as part of a compliance program to ensure

---

[6] Defendant argues the reports "were prepared with the expectation that they would be confidential, as evidenced by at least one of the reports being marked "Privileged and Confidential." Brief at 6. However, this self-designation is obviously not controlling. In addition, if confidentiality was a paramount concern the Court questions why the designation was not on all the documents at issue.

defendant's practices complied with the applicable law. After analyzing the relevant factors, the Court found that the PWC report was protected by the self-critical analysis privilege. 2006 WL 2946469, at *3. <u>Bracco</u> is inapposite. Most importantly, the Court found, and the plaintiff conceded, that the "real purpose" of the PWC report was "to meet government regulatory requirements." <u>Id.</u> at *4. That is not the case here for the reasons already discussed. Further, the Court explained the rationale for its opinion as follows:

> Thus, the Court finds that it is in the public interest for organizations, when faced with a possible violation of law or government regulation intended to protect the public, to attempt to expeditiously determine the causes and results, and correct them accordingly. The flow of information of this type is crucial to protection of the public-at-large from so-called 'breakdowns in the system'.

<u>Id.</u> at *7. This rationale is inapplicable here. Defendant did not initiate the inspections at issue and the main reason they went forward is because defendant wanted to keep its customers.

Conclusion

Accordingly, for all the foregoing reasons, defendant's Motion for Protective Order is DENIED.[7]

s/Joel Schneider<br>
JOEL SCHNEIDER<br>
United States Magistrate Judge

Dated: October 11, 2013

---

[7] The Court's Order denying defendant's motion and directing defendant to produce the subject documents was entered on September 27, 2013. Doc. No. 46.