**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CINDY BOBRYK, *et al.* | |
| Plaintiffs, | |
| v. | CIVIL ACTION NO 1:12-05360 |
| DURAND GLASS MANUFACTURING COMPANY, INC., *et al.* | |
| Defendants. | |

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR**
**CONDITIONAL CERTIFICATION PURSUANT TO §216(b) OF THE FLSA AND FOR**
**CLASS ACTION CERTIFICATION PURSUANT TO RULE 23(b)(3)**

Dated:      April 21, 2014
Counsel:    Nicholas George, Esq.
            Justin L. Swidler, Esq.


            SWARTZ SWIDLER LLC
            1878 Marlton Pike East. Ste. 10
            Cherry Hill NJ, 08003
            (856) 685-7420
            Attorneys for Plaintiffs

# TABLE OF CONTENTS

I.   Introduction ................................................................................................. 1

   A.   The pertinent issues to be decided under the New Jersey Wage and Hour Law predominate amongst the class members, the liability issues to be decided in this matter are not individualized claims but are common to all class members, and the class is easily ascertainable by way of its limited number, scope, and geographic location. ................................................................................. 4

      1.   That Durand required PPE of all class members indicates that common issues predominate amongst the class that can be determined on a class wide basis. ........................................................ 7

      2.   Remaining issues to be resolved regarding compensability of pre-shift and post-shift work performed are the common and predominant issues that can be resolved among all class members particularly because the actual pre-shift and post-shift work performed is standardized by department and job. ................................................................................................ 7

      3.   Defendant's ability to "tally" hours of work performed by certain class members indicates that damages can be measured across the class with respect to Durand's post-July, 2012 policies. ........ 12

      4.   Common issues predominate with respect to Durand's pre-July, 2012, rounding policies and the compensability of class members' time worked ..................................................... 13

   B.   Defendant's merits-based contentions should not be decided by the Court at this stage of the proceedings. ......................................................................................................... 16

      1.   Defendant's post-July, 2012, rounding policy is not neutral as it is designed to consistently result in a failure to pay employees for overtime. .................................................... 17

      2.   Donning and inspecting necessary PPE, a task which must be performed by every employee on every shift, is not *de minimus*. ......................................................................... 20

   C.   Plaintiffs have met the lenient standard for conditional certification under the FLSA. ....... 22

II.   Conclusion ............................................................................................... 24

# TABLE OF AUTHORITIES

## Cases

*Alonzo v. Maximus, Inc.*, 2011 U.S. Dist. LEXIS 150265 (C.D. Cal. Dec. 5, 2011).................. 17

*Amgen Inc., v. Conn. Ret. Plans & Trust Funds,* 133 S. Ct. 1184, 1191 (2013) ..................... 1, 16

*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (U.S. 1946)........................................ 16

*Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 63 (3d Cir. 1994).  *See also In re General Motors Corp. Pick—Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 793 n. 14 (3d Cir. 1995) ................................................................................................................................ 6, 11

*Bowe v. Enviropro Basement Sys.*, 2013 U.S. Dist. LEXIS 170796 (D.N.J. Dec. 4, 2013) (Hillman, J.) ......................................................................................................................... 23

*Briggins v. Elwood TRI, Inc.*, 882 F. Supp. 2d 1256 (N.D. Ala., 2012) ...................................... 13

*citing Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 924 (3d Cir. 1992)......................... 5

*Comcast v. Behrend*, 133 S. Ct. 1426, 1432 (March 27, 2013) ......................................... 1, 3, 12

*De Asencio v. Tyson Foods, Inc*, 500 F.3d 361, 370 (3d. Cir., 2007)........................................... 7

*Demmick v. Cellco P'Ship*, 2010 U.S. Dist. LEXIS 94041, 2010 WL 3636216, at *12 (D.N.J. Sept. 8, 2010) (Linares, J.) .................................................................................................... 5

*East v. Bullock's, Inc.*, 34 F. Supp. 2d 1176, 1184 (D. Ariz. 1998)........................................... 17

*Eisenberg v. Gagnon,* 766 F.2d 770, 785 (3d Cir., 1985)............................................................. 5

*Goodman v. Burlington Coat Factory,* 2012 U.S. Dist. LEXIS 166910 (D.N.J. Nov. 20, 2012) 23

*IBP, Inc. v. Alvarez,* 546 U.S. 21, 28 (U.S. 2005). ...................................................................... 8

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 315 (3d Cir. 1993)........... 5

*Jacob v. Duane Reade, Inc.* 2013 U.S. Dist. LEXIS 111989 (S.D.N.Y. 2013)........................... 11

*Kurihara v. Best Buy Co., Inc.*, 2007 U.S. Dist. LEXIS 64224, 2007 WL 2501698, at *10 (N.D. Cal. Aug. 30, 2007)................................................................................................................ 5

*Levya v. Medline Indus. Inc.*, 716 F.3d 510 (9th Cir. 2013) ...................................................... 11

*Martin v. Selker Bros., Inc.,* 949 F.2d 1286, 1298 (3d Cir. Pa. 1991) ....................................... 16

*Nehmelman v. Penn Nat'l Gaming*, Inc., 2011 U.S. Dist. LEXIS 111485 *20-21 (N.D. Ill. Sept. 29, 2011) ............................................................................................................................. 18

*Polzin v. Schreiber Foods, Inc.*, 2011 U.S. Dist. LEXIS 142955 (W.D. Mo. Aug. 15, 2011)..... 19

*Reardon v. ClosetMaid Corp.*, 2013 U.S. Dist. LEXIS 169821; 37 I.E.R. Cas. (BNA) 535 (W.D. Pa., Dec. 2, 2013)................................................................................................................... 5

*Ruffin v. Avis Budget Car Rental, LLC,* 2012 U.S. Dist. LEXIS 89651, 14-16 (D.N.J. June 28, 2012) ..................................................................................................................................... 22

*Russell v. Ill. Bell Tel. Co.*, 721 F. Supp. 2d 804, 820 (N.D. Ill. 2010) ...................................... 18

*Sandifer v. U.S. Steel Corp.*, 134 S. Ct. 870, 880 (2014).......................................... 3, 21, 22

*Smilow v. Sw. Bell Mobile Sys., Inc*., 323 F.3d 32, 39 (1st Cir. 2003) .......................................... 5

*Stanford v. Foamex L.P.*, 263 F.R.D. 156, 168 (E.D. Pa., 2009)................................................ 11

*Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2558-59, 180 L. Ed. 2d 374 (2011).................. 5

## <u>**Regulations**</u>

29 C.F.R. § 785.18 ............................................................................................. 15

29 C.F.R. § 785.48(b) ........................................................................................ 17

29 C.F.R. §516.6 ............................................................................................ 3, 15

29 C.F.R. §778.104 ............................................................................................ 19

29 C.F.R. §785.47 .............................................................................................. 21

## I.    <u>Introduction</u>

In its Opposition, Defendant, Durand Glass Manufacturing, Inc. ("Defendant" or "Durand"), made a number of merits-based arguments that placed the proverbial "cart before the horse" as to why Plaintiffs' request for class certification pursuant to Plaintiffs' New Jersey Wage and Hour Law claims should be denied.  In essence, Defendant has argued, *inter alia,* that (1) because Defendant contends that its pay-policies were neutrally applied to all employees, and (2) because Defendant contends that the PPE requirements (which it acknowledges applied to *all* putative class members) were *de minimus*, this matter is not appropriate for class certification under the Rule 23(a) and Rule 23(b).  Plaintiffs recognize that this Court must perform a "rigorous analysis" to determine if they have met the requirements of Rule 23(a) and 23(b); Defendants' arguments, however, go far beyond seeking the Court "to probe behind the pleadings before coming to rest on the certification question."  *See Comcast v. Behrend*, 133 S. Ct. 1426, 1432 (March 27, 2013).  While the analysis the Court must perform "will frequently entail overlap with the merits of the underlying claim," nothing in Rule 23 or its progeny, including in the standard discussed in *Comcast*, requires that the Court first confirm that Plaintiffs are entitled to judgment as a matter of law prior to certifying the case as a class action.  *Id.*  In fact, the United States Supreme Court precedent specifically disavows such a determination at the certification stage.  *Amgen Inc., v. Conn. Ret. Plans & Trust Funds,* 133 S. Ct. 1184, 1191 (2013) ("Rule 23(b)(3) requires a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class.").

Nonetheless, Defendant's arguments predominantly seek to discredit the merits of Plaintiffs' theory – as opposed to demonstrating why this matter is not apt for class certification. For example, in seeking to discredit Plaintiff's theory of the case, Defendant engaged in simple arithmetic to determine, *in the aggregate,* when Defendant's "rounding rules" denied wages to an

1

employee and instances in which the round incurred an illusory "benefit"[1] to the employee.  *See, e.g.,* Aiken Decl. (Dkt. 66-1, ¶¶6-13).  Defendant's ability to perform such calculations with ease demonstrates that liability arising from Defendant's rounding policy is ascertainable on a class wide basis.

Moreover, it is not in dispute that the requirement to don PPE is common amongst all of the individuals within the definition of Plaintiffs' proposed class.  As Defendant admitted in its Brief in Opposition (Dkt. 66, p. 10), each employee working on the production floor is required to wear PPE.  Because PPE is required upon all areas of the production floor, donning and doffing PPE was the first and last principal work activity performed by each hourly production employee. PPE was donned and doffed by all employees, demonstrating common and prevalent issues that can be determined by this Court on a class-wide basis.  Additionally, Defendant claimed in its Opposition that there are "over 100" job titles at issue in this case (*see* Defendant's Brief in Opposition (Dkt. 66, p. 3)), in direct contradiction with the "66" job titles disclosed in discovery. *See* Ex. X to George Decl. (Dkt. 59-29, p. 2 of 2, ECF numbering). That the number is a moving target is no surprise: Defendant has in essence artificially created different job titles for individuals who work in the same department, have the same pre- and post-shift duties, and are subject to the same pay policies that are subject to the instant litigation.  As reflected in the chart on page 10 of Defendant's Opposition, the number of total members in the class are easily identifiable, limited in number / scope, and all class members worked at a single location that applied the same pay-policies to each individual.[2]  The issues to be determined are common and predominant to all class

---

[1] Plaintiffs dispute Durand's ultimate premise that the round rules incurred a "benefit" to the employee in the manner claimed as set forth in the analysis set forth in Attorney Aiken's declaration because the time punches did not completely capture all time worked.  *See* Plaintiffs' Brief, p. 48 (Dkt. 59-2, p. 48).

[2] The chart generated by Defendant and relied upon in its Opposition revealed that there are 599 current employees working within 10 departments at Durand's production facility.  The chart repeated various departments – for example

members.   The liability issues to be determined on a class wide basis are namely (1) the compensability of time spent donning and doffing PPE and performing principal work activities outside of the scheduled shift, and (2) the legality of Defendant's pay policies that were uniformly applied to all class members.

Unlike *Comcast v. Behrend*, this matter does not involve "2 million" class members located in "16 different counties" whereby the permutations of theories of liability are "nearly endless." 133 S. Ct. 1426, 1434-35 (March 27, 2012).   Furthermore, Defendant's arguments that the PPE requirements across the class were *de minimus* (and therefore not subject to compensation) were recently rejected in *Sandifer v. U.S. Steel Corp.*, 134 S. Ct. 870, 880 (2014).   Defendant's argument that the time records of class members prior to July, 2012, do not reflect time actually worked is not supported by Defendant's admission that its time records are its most accurate reflection of time worked.   Even if there was a lack of efficiency in terms of the work performed by class members pre-July, 2012, an employee's hourly work performed must nonetheless be compensated from the onset of the employee's principal work activity until completion of the last principal activity per the "continuous workday" rule.   Moreover, should this Court determine that Defendant's pay records prior to July of 2012 do not accurately reflect time worked, representative testimony can be used to establish damages.   Defendant cannot argue that such evidence is too imprecise as such evidence is only necessary because of its own failure to keep accurate records as required by 29 C.F.R. §516.6.

Finally, Defendant's brief argument that Plaintiffs somehow failed to meet the lenient standard to conditionally certify a case for purposes of providing Court-approved notices to individuals who may be similarly situated to the Named Plaintiff is flawed.   Despite Defendant's

---

listing five "Maintenance" departments and 4 "Primary" (i.e. Hot-End) departments - to give the false appearance of differentiation among departments within Defendant's production facility.

faulty and unsupported claim that Plaintiff has presented *no evidence* that any employees performed work prior to their shift without being paid, *it is beyond dispute* that PPE was required of all class members; that the most significant segments of Defendant's work force were required *to report* to their work locations *prior to* the scheduled shift time (such as the 132 packers / packer reselect / packer sets employees, and the 94 operator / relief operator / operator trainee employees); and that Defendant's time policies were uniformly applied to all class members.  Accordingly, the standard for conditional certification pursuant to the FLSA (which Defendant concedes is lenient) has been met due to the fact that there is substantial evidence beyond mere speculation at this preliminary stage indicating that compensable work was performed by class members outside of the class members' scheduled work hours – thereby rendering this matter appropriate for certification at this juncture.

    A.    **The pertinent issues to be decided under the New Jersey Wage and Hour Law predominate amongst the class members, the liability issues to be decided in this matter are not individualized claims but are common to all class members, and the class is easily ascertainable by way of its limited number, scope, and geographic location.**

In claiming that Plaintiffs' New Jersey Wage and Hour Law claims are not appropriate for Rule 23(b)(3) class certification, Defendant's lengthy and specious Opposition to Plaintiffs' Motion for Class Certification boils down to two flawed arguments: Defendant contends that (1) individualized issues predominate because some of the class members' pre-shift and post-shift duties differed, and (2) the proposed class is not ascertainable because it requires the Court to make a liability determination to define the appropriate class members.[3]

---

[3]  While Defendant makes a perfunctory argument that the Plaintiff fails under 23(a), these arguments ultimately are just additional assertions that individualized issues predominate.  For example, Defendant contends that class cannot be ascertained because of issues it claims are individualized in the class and because it contends that it is entitled to judgment on the merits.  Defendant's Opposition at pp. 17-19 (Dkt. 66).  Neither argument provides that Plaintiffs had not identified specifically, who is in the putative class.  The same is true for Defendant's claim against numerosity (again arguing that only Ms. Bobryk suffered injury because her allegations fail on the merits).  *Id.* at p.35.  Similarly, Defendant's arguments against typicality and adequacy are based on the its contentions as to merits and irrelevant

The "predominance" requirement of Rule 23(b)(3) does not require that all issues be common to the class, but only that common issues predominate.  *See In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 315 (3d Cir. 1993).  "Where there are sufficient material common questions, '[c]ourts traditionally have been reluctant to deny class action status under Rule 23(b)(3) simply because affirmative defenses may be available against individual members.'" *Demmick v. Cellco P'Ship*, 2010 U.S. Dist. LEXIS 94041, 2010 WL 3636216, at *12 (D.N.J. Sept. 8, 2010) (Linares, J.) (*quoting Smilow v. Sw. Bell Mobile Sys., Inc*., 323 F.3d 32, 39 (1st Cir. 2003), *citing Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 924 (3d Cir. 1992)).  Courts are even more reticent to disallow class action treatment on the basis of individualized liability issues "where the plaintiff points to a specific company-wide policy or practice that allegedly gives rise to consistent liability*."  Reardon v. ClosetMaid Corp.*, 2013 U.S. Dist. LEXIS 169821; 37 I.E.R. Cas. (BNA) 535 (W.D. Pa., Dec. 2, 2013), *quoting Kurihara v. Best Buy Co., Inc.*, 2007 U.S. Dist. LEXIS 64224, 2007 WL 2501698, at *10 (N.D. Cal. Aug. 30, 2007).  Likewise, the commonality requirement (of Rule 23(a)(2)) is met if there is at least one common issue which is central to the validity of the claims asserted.  *Id.*, *citing Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2558-59, 180 L. Ed. 2d 374 (2011).  The Third Circuit has further held that, when possible, Courts should rule in favor of certification.  *See Eisenberg v. Gagnon,* 766 F.2d 770, 785 (3d Cir., 1985) ("The interests of justice require that in a doubtful case . . . any error, if there is to be one, should be committed in favor of allowing a class action.").  Accordingly, the District Court "retains the discretion to decertify or modify the class so that the class action encompasses only the issues that

---

character attacks against Ms. Bobryk (attacks which do not affect whether she suffered the same injury as class members and do not affect her ability to act as a class representative) rather than whether the asserted policies affected employees class-wide.  *Id.* at pp. 36-37.  As to commonality, the Third Circuit has held that courts should "consider the Rule 23(a) commonality requirement to be incorporated into the more stringent Rule 23(b)(3) predominance requirement, and therefore deem it appropriate to 'analyze the two factors together, with particular focus on the predominance requirement.'" *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 297 (3d Cir. 2011) (*citing In re Ins. Brokerage Antitrust Litig*., 579 F.3d 241, 266 (3d Cir. 2009)).

are truly common to the class." *Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 63 (3d Cir. 1994). *See also In re General Motors Corp. Pick—Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 793 n. 14 (3d Cir. 1995) ("Under Rule 23(c)(1), the court retains the authority to re-define or decertify the class until the entry of final judgment on the merits."). Thus class certification is favored when the resolution of common claims can be determined on a class-wide basis.

Ms. Bobryk has asserted claims that can be commonly resolved across class members who worked in Defendant's facilities, who performed similar pre-shift and post-shift activities, and who were subjected to the same pay policies. Nonetheless, Defendant has claimed that individualized issues predominate between class members by citing to inalagous cases in which class certification was denied. Unlike the cases cited by Defendant, Ms. Bobryk seeks to represent a group of less than 600 employees, all of whom worked in the same shop, and all of whom suffered the same mechanical violations of wage laws due to a systematic failure to track time worked performing pre-shift and post-shift duties.

In direct contrast to the cases relied upon by Defendant to demonstrate that individualized issues predominate,[4] there is no dissimilarity in the issue to be decided in this matter; it is the same for all class members. Moreover, the damage calculation arising from the claims of prospective class members will not overwhelm questions common to the class as such damages can be based upon mechanical calculations generated from Defendant's own pay records.

---

[4]For example, Defendant has tried to analogize this matter to *Dukes v. Walmart*, 131 S.Ct. 2541 (2011) (concluding that 1.5 million Walmart employees working at locations throughout the United States who were subject to different – if any – supervisory discrimination could not proceed as a class action); *Cowden, et al. v. Parker & Associates*, *Inc.*, 2013 U.S. Dist. LEXIS 72253 (E.D. Ky., May 22, 2013) (*citing Comcast*, 133 S. Ct. 1426) (denying nationwide class of as many as 6,500 insurance agents requiring individualized proofs - such as reliance - which were orally conveyed to each class member); and *Roach, et al v. T.L. Cannon Corp.*, *et al.*, 2013 U.S. Dist. LEXIS 45373 (N.D. NY, March 29, 2013) (*citing Comcast*, 133 S. Ct. 1426) (denying class certification where no common policy existed).

    1.  **That Durand required PPE of all class members indicates that common issues predominate amongst the class that can be determined on a class wide basis.**

As demonstrated in Defendant's Opposition, PPE was required of all hourly production employees.  *See* Brief in Opposition, p. 10 (Dkt. 66).  Defendant's chart listing PPE provided the baseline PPE within each department of Durand's facilities.  *Id.*[5]  Thus, with respect to the allegations that Defendant violated the law by failing to compensate for donning and doffing PPE (and that such job duties alone are sufficient to trigger the start of the "continuous workday" recognized in *De Asencio v. Tyson Foods, Inc.*, 500 F.3d 361, 370 (3d. Cir., 2007)), Named Plaintiff has presented common issues that predominate among the class members which can be resolved on a class wide basis.

    2.  **Remaining issues to be resolved regarding compensability of pre-shift and post-shift work performed are the common and predominant issues that can be resolved among all class members particularly because the actual pre-shift and post-shift work performed is standardized by department and job.**

That additional PPE requirements, protective work clothes, and pre-shift and post-shift duties may slightly vary by department does not make the claim of each class member overly "individualized" in a manner that will overwhelm the issues predominant and common to the class. This is especially that case because it remains undisputed that the *first* principal activity required of all class members was to don/inspect PPE and the *final* activity required of all class members was to doff PPE.  *See, e.g.,* Golden Decl., Ex. A, George Decl. (Dkt. 59-6, ¶6); Dunn Decl., Ex. B, George Decl. (Dkt. 59-7, ¶6); Safety Orientation Guidelines, Ex. H, Durand 754-57 (Dkt. 59-13, p. 11-14 of 55, ECF numbering) (safety glasses, safe shoes, and hearing protection were required

---

[5] Despite Defendant's claim somehow that Plaintiffs' proposed class is not "ascertainable based upon objective criteria," Defendant's own chart that lists the PPE common to all class members indicates that Plaintiffs' proposed class is limited in number, scope, and geographic location. Accordingly, the class is easily "ascertainable based upon objective criteria" – contrary to Defendant's claim.  *See* Brief in Opposition, p. 17 (Dkt. 66).

within the operating areas of the plant).   Under the continuous workday rule, once the first

principal activity occurs, *all time*, even idle time, is compensable.   *IBP, Inc. v. Alvarez,* 546 U.S.

21, 28 (U.S. 2005). Hence, the fact that some members of the class engaged in other,

independently compensable activities following their first principal activity and prior to their final

principal activities does not change the fact that all class members were harmed because Defendant

failed to begin their paid workday at the start of the first compensable activity and failed to end

their paid workday at the conclusion of their final compensable activity (*i.e.* the donning and

doffing of PPE).

        While the types of PPE may have differed between departments, *the fact that PPE was*

*required remains true of all class members.*   Hence, that there were slightly different PPE

requirements of different class members does not render the claim too individualized for class

treatment when all class members were required to don and doff PPE.   Thus, this matter is not akin

to *Cowden*, 2013 U.S. Dist. LEXIS 72253, *9, *19, or *Roach*, 2013 U.S. Dist. LEXIS 45373 (both

of which involved highly individualized claims of prospective class members that could not be

resolved on a class-wide basis).

        Here, due to the class-wide, systemic policy of (1) pre-shift and post-shift duties required

of all hourly production employees (including the donning and doffing of PPE), and (2) the

common rounding system that applied to all members of the class causing class members' pre-shift

and post-shift work to go unpaid, Plaintiffs have presented sufficient evidence of a "class-wide

practice that gives rise to liability" common amongst all class members.

        Defendant's contention that differences in job titles (and therefore work responsibilities)

among members will lead to a countless number of "mini-trials" that will overwhelm the court

should be rejected.   The so-called "individualized" issues are questions common to all class

members (i.e. the compensability of time spent donning and doffing PPE and all time following and/or before pursuant to the continuous workday rule).   The issues to be determined (compensability of pre-shift and post-shift work performed) are exactly the same issues for each member of the class.  While the exact types of PPE may vary slightly, that PPE was required is common among all members.  Moreover, differences amongst class members (with respect to the donning and doffing of protective work clothes or PPE not reflected in Defendant's chart on page 10 of its Brief (Dkt. 66)) do not vary by individual but by department and in this regard do not predominate over issues common to the class.  Furthermore, as all class members donned *some* PPE, that the amount of PPE varied by department is of no mind because the issue here first is whether such time is work time under the law; if it is, all time following the donning of PPE is compensable (and hence, it is not important whether additional activities of any class member differ once the continuous workday is triggered).

Likewise, Defendant attempts to drastically overstate the differences between class members, failing to note that despite their new allegation that there are "100" job titles, there are only a few departments, and all the departments have requirements to wear PPE, hence triggering the continuous workday rule.  For example, there are 132 cold-end packers, repackers, and sets positions (*see* Ex. X to George Decl., Dkt. 59-29, p. 2 of 2, ECF numbering) and all share the same job duties and responsibilities.  *See* a true and correct copy of the packer/repack/sets job description, attached hereto as Exhibit A.  All of these class members first don their PPE (triggering the continuous workday rule) and then report to work five minutes before their scheduled start – when shift change occurs.  *See* Golden Decl., Ex. A, George Decl. (Dkt. 59-6, ¶7, p. 2-3 of 3, ECF numbering), Eldridge Decl., Ex. D, George Decl. (Dkt. 59-9, ¶17, p. 4 of 9, ECF numbering), E-mail from Mr. Fisher to Ms. Ojeda, dated 4/16/11 (acknowledging that "packers are

expected to be on their lines/assigned area at 5 minutes of the hour"), Ex. V, George Decl. (Dkt. 59-27, p. 3 of 4, ECF numbering).  Likewise, there are 94 hot-end operators, relief operators, and operator trainees (*see* Ex. X, George Decl., Dkt. 59-29, p. 2 of 2) and they all perform the same basic job functions.  *See* true and correct copies of job descriptions of hot end operators, relief operators, and trainees, attached as Exhibit B.  Operators and relief operators first don their PPE (triggering the continuous workday rule), and then perform additional standardized and regular pre-shift duties, such as the gathering of the tools, engaging in shift-changeover meetings, or replenishing supplies.  *See* Eldridge Decl., Ex. D, George Decl. (Dkt. 59-9, ¶¶23-24, pp. 6-7 of 9, ECF numbering) (describing the routine of an operator and relief operator before and during shift change-over).  The 67 employees within the Maintenance department, *see* Brief in Opposition, p. 10 (Dkt. 66), were likewise required to begin their workday by donning PPE.  *See, e.g.,* Sutton Decl., Ex. E, George Decl. (Dkt. 59-10, ¶8, p. 9 of 52) (first activity is to don uniform, steel toed boots, and safety glasses);  Safety Orientation Guidelines, Ex. H, Durand 754-57 (Dkt. 59-13, p. 11-14 of 55, ECF numbering) (safety glasses, safe shoes, and hearing protection were required in operating areas).  Defendants have provided no job titles (despite their claim that there are more than 100 of them) where the individual does not begin his or her workday by donning PPE.  Instead, Defendants attempt to cast holes in the class by asserting that *once the continuous workday is started*, duties may vary slightly.  Such a contention, even if true, does not prevent the Court from determining on a class-wide basis whether the continuous workday has been triggered by the donning and doffing of PPE.

Thus, this is not a case involving highly "individualized" factual and legal inquiries (like *Roach, Dukes,* or *Cowden*) because each employee performed regular, compensable duties standardized by department and job function.  It must not be overlooked by this Court that

Defendant has accurate time punches for all members of the class. Defendant's computerized time-keeping system provides the exact time each class member clocked in and out each day. Hence, the amount of time worked that was captured by the punches but not paid as a result of Defendants' pay practices can be easily calculated using formulas and algorithms common for all class members (because the legal theory is the same among all class members). *See Levya v. Medline Indus. Inc.*, 716 F.3d 510 (9th Cir. 2013) (holding that class issues predominated, even though damages would be individualized, because the defendants' "computerized payroll and time-keeping database would enable the court to accurately calculate damages and related penalties to each claim."). *Id.* at 511.

Class treatment is not precluded simply because individual facts and circumstances are important to the resolution of the class wide issues. *Baby Neal*, 43 F.3d at 58. Moreover, individual damage determinations may be made at a separate phase of the trial, while the class phase may resolve the central issue of liability. *See Stanford v. Foamex L.P.*, 263 F.R.D. 156, 168 (E.D. Pa., 2009) ("Indeed, even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories."), *quoting Baby Neal*, 43 F.3d at 58; *see also Jacob v. Duane Reade, Inc.* 2013 U.S. Dist. LEXIS 111989 (S.D.N.Y. 2013) (holding that *Comcast* does not preclude class certification as to liability in overtime case where damages might be individualized).

Accordingly, the fact that some class members had slightly differing pre-shift duties (based on their department) should not prevent class certification because the initial and final duties of the workday (of which all time between must be paid, subject to the exception of *bona fide* meal period) are uniform for all class members.

**3. Defendant's ability to "tally" hours of work performed by certain class members indicates that damages can be measured across the class with respect to Durand's post-July, 2012 policies.**

Defendant has argued that the question of damages with respect to each class member will "overwhelm questions common to the class." *See Comcast*, 133 S. Ct. at 1433. However, Defendant's ability to identify with ease instances in which its post-July, 2012 rounding policy failed to account for work performed indicates that the calculation of damages can be determined on a class wide basis, unlike in *Comcast*.

In *Comcast v. Behrend*, the United States Supreme Court revisited the standards required in developing a damage model. The Court of Appeals for the Third Circuit had rejected three of four of the plaintiffs' theories for class certification, but certified a single antitrust theory. Even though the plaintiffs' damage model was not capable of isolating damages with respect to the actual violations for which the court granted class certification, the court still granted class certification, determining that attacks on the plaintiffs' methodology went to the ultimate merits of the claim, which were not before the court on a Rule 23 class certification motion. *Comcast, supra,* 133 S. Ct. at 1433-1434.

The United States Supreme Court reversed. Because there was "no question that the model failed to measure damages resulting from the particular antitrust injury on which [the plaintiffs'] liability [was] premised," class certification was held inappropriate. The damage model provided by the plaintiffs in *Comcast* calculated damages by comparing the price paid by a subscriber to the price a subscriber would have paid in the absence of all four of the antitrust theories. "This methodology might have been sound, and might have produced commonality of damages, if all four of those alleged distortions remained in the case." *Id.* But because the model could not be molded to determine damages on a class-wide basis based on the single remaining theory of the case, the damage model failed. *Id.* For class certification to be granted under Rule

12

23(b)(3), the damage model must be able to "translate[] [the] *legal theory of the harmful event* into an analysis of the economic impact of *that* event." *Id.* (Emphasis in original).

Here, Plaintiffs will first need to demonstrate that Defendants' rounding policy is not neutral; this must be done on a class-wide basis. Once determined, if Plaintiffs demonstrate same, Plaintiffs can simply total class members' punches in a given week without the effect of the round (as Defendant did), and then compare that number in a given week to Defendant's calculation of time worked in a given week. Thus, a damage model for class members' post-July, 2012, damages can indeed be molded to determine damages on a class wide basis.

### 4. <u>Common issues predominate with respect to Durand's pre-July, 2012, rounding policies and the compensability of class members' time worked.</u>

Defendant's Opposition conceded that the time punches recorded by class members after July, 2012 reflect times in which class members were performing compensable work duties. Defendant has disputed that prior to July, 2012, class members' time punches accurately reflected compensable hours worked by class members.  Prior to July, 2012, and throughout its history, Defendant used the time punches of the class members to measure the hours worked by its employees.  Plaintiffs' Brief, p. 28 (Dkt. 59-2) (quoting the deposition testimony of Ms. Mauro, Defendant's 30(b)(6) representative).

In this respect, this matter is not factually similar to *Briggins v. Elwood TRI, Inc.*, 882 F. Supp. 2d 1256 (N.D. Ala., 2012).  Unlike the present matter, the time clocks in *Briggins* were used merely for attendance purposes or to reduce pay if an employee swiped in late or swiped out early. *Id.*, at 1261.  Notably, the court in *Briggins* concluded that the members of the putative class "were not required to perform any preparatory work before the start of their shift." *Id.,* at 1269. Furthermore, the defendants in *Briggins* had an official policy prohibiting the performance of unauthorized overtime, and specifically advised employees that they "should not perform any work

before the start of shift, during lunchtime, or after the end of shift unless the work has been authorized by their Team Manager and they have been given an overtime code." *Id.,* at 1262.

Unlike *Briggins,* Defendant has always required all Plaintiffs to arrive at their workstation ready to work, which necessitated donning of PPE before their shifts. Similarly, Plaintiffs were not permitted to remove their PPE until after the end of their shift. This pre- and post-shift work time was not optional, occurred on every shift, was for the benefit of Defendant, and was never compensated. Moreover, Defendant has never had a policy prohibiting the performance of any work before or after the scheduled shift time. *See, e.g.,* Ex. V, George Decl. (Dkt. 59-27), Plaintiffs' Brief, p. 28 (Dkt. 59-2) ("WE have no way to PROVE that they [i.e. hourly production employees] were not working.").

From the outset of this litigation, Defendant has nevertheless tried to paint a picture of individualized behavior with respect to each class member's work behaviors and routines. Despite Defendant's full knowledge that it has strategically benefited from structural violations of overtime laws spanning years, Durand engaged in this strategy merely to defeat Rule 23 class certification and FLSA conditional certification. To effectuate this plan, during the early stages of discovery in this matter, Defendant's counsel interviewed an unspecified number of class members and obtained misleading statements through questionable means without fully explaining the technical significance of the terms within the statements or the detrimental effect such statements could have upon the rights of class members. *See, e.g.,* Eldridge Decl., Ex. D, George Decl. (Dkt. 59-9, ¶¶4-12). This Court, therefore, should disregard any statements reflecting a class members' belief as to when he or she began performing "work" in a given day or statements reflecting that he or she had been paid for such time worked.

Thus, despite Defendant's unsupported claim that the "catalysts" for arriving in advance of one's shift was so employees could get a "full, hot breakfast,"[6] evidence in the record indicated that employees performed work while clocked in prior to July, 2012, and also prior to the initiation of the seven minute rule.  L. Golden Decl., Ex. A, George Decl. (Dkt. 59-6, ¶5), Dunn Decl., Ex. B, George Decl. (Dkt. 59-7, ¶9), Brownlow Decl., Ex. C, George Decl. (Dkt. 59-8, ¶8).  Work performed (even if not requested or performed inefficiently) must be accounted for as hours worked.  29 C.F.R. § 785.18.  *See also* Plaintiffs' Brief, p. 28 (Dkt. 59-2) (quoting Ms. Mauro's testimony indicating that Defendant's policy or practice was not to account for time worked during "grace" period).  Moreover, once the "continuous workday" rule is triggered, breaks of short duration (typically between 5 to 20 minutes), including coffee breaks or rest breaks, must be counted as hours worked. 29 C.F.R. § 785.18.

Accordingly, the issue whether employees performed compensable work during the time clocked in prior to July, 2012, and whether Defendant's rounding policy denied class members overtime as a result, are common issues to be decided among all of the class members.

Moreover, Defendant cannot defeat class or collective adjudication by arguing that its violations of the FLSA record-keeping requirements make the class unmanageable.  Pursuant to 29 C.F.R. §516.6, an employer must maintain the "daily starting and stopping time of individual employees."  Defendant in essence claims that its records prior to the initiation of the rounding rule are so inaccurate the information which it was required to maintain (*i.e.* the starting and stopping times) cannot be determined from said documents.  *See* Brief in Opposition, p. 25 (Dkt. 66).

---

[6] Factual statements by Defendant's counsel made without reference to the record should be disregarded by the Court because such statements are made without personal knowledge.  Other statements unsupported by fact include Defendant's counsel's claim that there are "many more positions – Quality Control Inspector, Set up Decorator, Relief Operator, Forklift Driver – for which being ready to work means only showing up at the appointed time."  Brief in Opposition, p. 31 (Dkt. 66).  Such statements should be disregarded, in part, because it is undisputed that all employees are subject to PPE requirements, and furthermore, Mr. Eldridge, who has factual information and who has signed a sworn declaration in this matter, has attested that when acting as a Relief Operator, he performed significant pre-shift duties.  Eldridge Decl., Ex. D, George Decl. (Dkt. 59-9, ¶24, p. 6-7 of 9, ECF numbering).

Plaintiffs disagree with this assertion because Plaintiffs have provided evidence that employees donned and doffed PPE immediately upon clocking in – whether before or after the initiation of the rounding rule – and hence triggered the continuous workday rule (requiring compensation for all such time).  Regardless, it is well established law that an employer cannot be heard to complain that representative testimony (which can, on a class-wide basis, provide damages and liability) is too speculative to permit class certification or adjudication solely when it is the employer's own violations of the FLSA record-keeping requirements that make such proof necessary.  *See, e.g.* *Martin v. Selker Bros., Inc.,* 949 F.2d 1286, 1298 (3d Cir. Pa. 1991) ("When an employer does not have accurate records . . . the testimony and evidence of representative employees may establish prima facie proof of a pattern and practice of FLSA violations."); *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (U.S. 1946).

Hence, Defendants' arguments that class and collective certification must be denied because Plaintiffs will inherently be forced to use representative evidence (if this Court determines that the pre-rounding rule records are inaccurate) must fail because, even if such records are inaccurate, the fact remains that *all* employees performed pre and post-shift work and, once established, damages can be determined by a just and reasonable inference.  *See Anderson*, 328 U.S. at 687.

## B.    <u>Defendant's merits-based contentions should not be decided by the Court at this stage of the proceedings.</u>

As noted above, this Court does not determine the merits of each of Plaintiffs' theories when ruling on class certification.  While the Court should involve itself in a merits analysis to the extent necessary to determine if Plaintiffs have satisfied their burden under Rule 23, the Court should not deny certification *even if* the Court is not convinced at this stage that Plaintiffs will prevail.  *Amgen Inc., supra,* 133 S. Ct. 1184, 1191 (2013).  Regardless, Defendant is

misguided in its merits-based arguments that its rounding policy is objectively neutral and that its PPE required across the class is *de minimus.*

### 1. **Defendant's post-July, 2012, rounding policy is not neutral as it is designed to consistently result in a failure to pay employees for overtime.**

Defendant has argued that Plaintiffs' rounding claim fails because its current policy for rounding time "appears" neutral on its face. Such an argument misses the point; regardless of how a rounding policy appears on its face, a rounding policy is not legal if it results, over a period of time, in failure to compensate employees properly for all the time they have actually worked. See 29 C.F.R. § 785.48(b) ("Section § 785.48(b)").  An employer's rounding practices thus violate Section § 785.48(b) if the practices systematically undercompensate employees. *Alonzo v. Maximus, Inc.*, 2011 U.S. Dist. LEXIS 150265 (C.D. Cal. Dec. 5, 2011).

In other words, employers may only use a rounding policy for recording and compensating employee time if it does not "consistently result in a failure to pay employees for time worked." *Alonzo v. Maximus, Inc.,* 2011 U.S. Dist. LEXIS 150265 (C.D. Cal. Dec. 5, 2011). This test has also been framed as requiring the rounding policy to, *on average*, neither favor overpayment nor underpayment. *East v. Bullock's, Inc.*, 34 F. Supp. 2d 1176, 1184 (D. Ariz. 1998).

Defendant has instituted a rounding policy that rounds back to the previous quarter hour if an employee punches the clock within the first seven minutes of the quarter hour, and rounds forward to the next quarter hour if the employee punches in at or after eight minutes.  Brief in Opposition, p. 8 (Dkt. 66).  Defendant's "seven minute" rule also provides they must punch in within seven minutes of the start of their shift, and punch out within seven minutes of the end of their shift.  *See* Plaintiffs' Brief, pp. 12-13 (Dkt. 59-2). Finally, employees cannot and do not punch in after the start of their shifts because doing so would result in disciplinary action (for

tardiness). See *id.*  Employees, per the attendance policy, are also expected to remain at their work station until the end of the day.  *Id.*  As a result, employees regularly punch in and begin working during the seven minutes before their shift, and regularly punch out and stop working after the end of their shift. This practice results in the systemic and repeated underpayment of employees for the time actually worked. See *id.*, pp. 12-16.

Defendant has made no real argument as to why this system does not violate Section § 785.48(b).  Instead, Defendant introduced an inappropriate evidentiary argument that Durand's attendance policy has not been in effect since July, 2012.  *See* Ojeda Decl. (Dkt 66-18).  Ms. Ojeda's statement that the attendance policy in question no longer is in effect directly contradicts Defendant's previous response to Plaintiffs' Requests for Admissions that the "lateness" policy was still current – albeit sporadically enforced. *See* Ex. O, Defendant's Answer to Admission No. 6, George Decl., (Dkt. 59-20, p. 4 of 5, ECF numbering).[7]

Furthermore, even if the Court were to consider Defendant's dubious contentions as to its written attendance policy, the absence of a consistently applied disciplinary policy is not evidence that the rounding policy was neutral.  This is because regardless of whether an employee was actually disciplined for violating the tardy rule, the *threat* of said discipline is enough to compel most employees to follow said rule, which results in their systemic underpayment of time worked.

Defendants are not the first employer to have such a combined policy that looks neutral but actually works against employees. In *Nehmelman v. Penn Nat'l Gaming*, Inc., 2011 U.S. Dist. LEXIS 111485 *20-21 (N.D. Ill. Sept. 29, 2011), plaintiffs alleged the exact same policy, and the exact same systematic underpayment of employees. The court in *Nehmelman* found that such a policy and practice was, if true, a violation of FLSA, and held that the application of this policy to all employees rendered them similarly situated for the purpose of preliminary collective action

---

[7] A matter admitted in response to a request for admission is "conclusively established."  Fed. R. Civ. P. 36(b).

certification.  *Id.*; *see also Russell v. Ill. Bell Tel. Co.*, 721 F. Supp. 2d 804, 820 (N.D. Ill. 2010) ("If, as plaintiffs allege, Illinois Bell's time rounding and log out policies often caused plaintiffs to work unpaid overtime in increments of under eight minutes, then these company-wide practices may have resulted in unpaid overtime work."); *see also Polzin v. Schreiber Foods, Inc.*, 2011 U.S. Dist. LEXIS 142955 (W.D. Mo. Aug. 15, 2011) (rounding policy that systematically underpaid plaintiff was a sufficient common policy to support preliminary certification).

Accordingly, the rounding was not neutral and resulted in injury to all class members, albeit to differing degrees.  While Defendant has mistakenly argued that not all class members were harmed by its rounding policy, Defendant clearly misses the mark. Defendants point out that for a very select few (and cherry picked) outliers, the rounding policy "in the aggregate" benefited the class member.  Overtime, however, is measured *each week,* not on the aggregate over all weeks employed.  Hence, if the rounding policy is determined to work in a non-neutral fashion, any class member who has been harmed during any week as a result of said policy has been injured, and Defendant may not "credit" the injury with alleged overpayment that occurred during a different workweek.  29 C.F.R. §778.104.

Defendant admitted, for example, that its rounding policy caused William Pierce to work 42 hours without pay.  Contrary to Defendant's understanding of Plaintiffs' theory of this case, if Defendant's round policy was found to be neutral, Mr. Pierce would not entitled to any damages for said time (even though he worked a week of time without pay).  This is true even though Defendant admitted that its rounding policy had a significantly detrimental effect on Mr. Pierce's pay.  Likewise, if the round is found to be non-neutral, Stanislav Goussev (who Defendant claimed was benefited as a result of its round-policy) is still owed compensation for weeks in

which his hours exceeded the time which he was paid (regardless of any so-called "benefit" rendered to Mr. Goussev in other weeks).

Hence, Plaintiffs have adduced evidence that the rounding policy worked in a non-neutral fashion as to all class members, and accordingly, Defendants' merits-based defenses should be rejected, not only because they are pre-mature, but because they are substantively incorrect.

### 2. **Donning and inspecting necessary PPE, a task which must be performed by every employee on every shift, is not** *de minimus*.

Defendants argue to this Court that individualized issues will predominate because different employees don, inspect, and doff different types of PPE depending on their job title.[8] What is not in dispute, however, is that all employees were required to don and doff certain pieces of PPE, and that Defendant's policies required individuals to don, doff, and inspect PPE prior to being on-the-clock.

Defendant has argued that despite such uniform policies, an individualized analysis would be necessary to determine, with respect to each employee, whether such donning and doffing was *de minimus* as a matter of law. To emphasize its argument, Defendant has apparently sent this Court a pair of goggles and earplugs, apparently hoping the Court will find such items inconsequential. The factual record, however, clearly provides that such items are not inconsequential, and are an absolute requirement for all employees pursuant to federal law (OSHA) and the employer's own regulations due to the hazardous workplace in which the putative class works. Safety Orientation Guidelines, Ex. H, Durand 754-57 (Dkt. 59-13, p. 11-14 of 55,

---

[8] As discussed, Defendant has attempted to confuse the Court by claiming that there are over "100" job titles at issue, a number significant higher than the "66" job titles that Defendant contended existed during discovery. In reality, despite extraordinary minute differences between individuals working in each department, there are just 10 departments, and the PPE requirements accordingly involve, in essence, slight differentiations among 10 departments. Moreover, the issue that *all* departments were required to don and doff PPE and were not paid for such time is not in dispute.

ECF numbering) (safety glasses, safe shoes, and hearing protection were required within all operating areas of the plant).

Moreover, Defendant fails to address that the United States Supreme Court earlier this year explicitly acknowledged that the *de minimus* doctrine is not applicable to donning and doffing PPE, even when such PPE consists only of safety goggles and ear plugs. *See Sandifer v. U.S. Steel Corp.* 134 S. Ct 870, 880 (2014). In *Sandifer,* the Court determined that "clothes," referred to under §203(o), included certain types of PPE, and accordingly held that unionized employees were not entitled to compensation relating to washing and changing such PPE when their collective bargaining agreement agreed to forgo compensation for such time.[9] *Id.* However, and of great importance to the instant matter, the Court held the earplugs and goggles were not "clothes" under 203(o) and hence then had to determine whether payment for donning and doffing (and attendant waiting, travel and other time) was rendered compensable.[10] The Court flatly rejected the Seventh Circuit of Appeals interpretation that such time was legally *de minimus.* *Sandifer*, 134 S. Ct. at 880. As the Court noted, 29 C.F.R. §785.47 forbids an employer from arbitrarily failing "to count as hours worked **any part, however small**, of the employee's fixed or regular working time or practically ascertainable period of time he is regularly required to spend on duties assigned to him." *Id.*, quoting 29 C.F.R. §785.47 (emphasis added). Ultimately, in the context of 203(o), the Court essentially created a new doctrine, instructing courts to determine if the "vast majority" of the time at issue was spent changing "clothes" or donning and doffing non-clothes items. *Sandifer*, 134 S. Ct. 870 at 881. In *Sandifer*, the Court denied payment for such time – *not because the time*

---

[9] It is worth noting that in this case, the employees are not unionized, and hence, §203(o) does not apply. The Court explicitly acknowledged that in the absence of a collective bargaining agreement, such donning and doffing time "would otherwise be compensable under the Act." *Sandifer*, 134 S. Ct. at 872.

[10] The Court also held that a respirator did not constitute clothes, but noted that the respirator was not donned or doffed pre or post-shift, and hence, the issue before the Court was whether pre-shift and post-shifting donning and doffing of goggles and ear plugs was *de minimus*.

*was legally de minimus* – but because the "vast majority" of time spent donning and doffing was non-compensable due to the fact that most of the PPE constituted "clothes" and all the employees were subject to a collective bargaining agreement which did not provide payment for such time. *Id.*

Applying such a rule to the instant case, none of the employees here are subject to a collective bargaining agreement and hence §203(o) does not apply.  Accordingly, the entire time spent donning and doffing PPE is compensable – even if the PPE at issue consists only of goggles and ear plugs.  *See Sandifer*, 134 S. Ct. at 872. This is because such time occurs every workday and can be tracked simply by requiring employees to clock-in prior to donning and doffing same.  Because, as provided in *Sandifer,* such time is not legally *de minimus*, such work is a primary activity which triggers the start of the continuous workday.  Accordingly, regardless of the amount or types of PPE which each employee must don, doff, and inspect, because Defendant concedes that *all* employees must wear PPE, all have been injured as a result of Defendant's failure to compensate employees for such time, in addition to the attendant waiting and travel time.

### C. Plaintiffs have met the lenient standard for conditional certification under the FLSA.

Defendants argue that this Court should adopt the more stringent second-phase analysis regarding certification of the FLSA class.  However, in the instant matter, while some class discovery has taken place, discovery is nowhere near complete and Defendants do not appear to dispute that the case is not ready for trial.  In such circumstances, courts within this Circuit and in this district apply the lenient standard which requires nothing more than a "modest factual showing" that the putative class is similarly situated.  *Ruffin v. Avis Budget Car Rental, LLC,* 2012 U.S. Dist. LEXIS 89651, 14-16 (D.N.J. June 28, 2012) (conditionally certifying a nationwide collective action under the lenient "stage one" standard, despite depositions and other discovery

having occurred, because "the case is not yet ready for trial and discovery has not been formally concluded); *Goodman v. Burlington Coat Factory,* 2012 U.S. Dist. LEXIS 166910 (D.N.J. Nov. 20, 2012) (conditionally certifying a collective action under the lenient standard even though depositions and discovery had occurred, and refusing to consider 38 affidavits submitted by the defendant in opposition because merits and credibility are not considered during the initial phase of conditional certification), cited in *Bowe v. Enviropro Basement Sys.*, 2013 U.S. Dist. LEXIS 170796 (D.N.J. Dec. 4, 2013) (Hillman, J.).

Named Plaintiff has easily met the "modest factual showing" that she and the all hourly production employees are similarly situated based upon the limited discovery that has taken place in this matter.  Despite Defendant's contention that discovery in this matter has been "substantial," discovery has only been taken on less than 10% of the time records of the proposed class members. Through such records, Named Plaintiff demonstrated (by modest factual showing) that she is similarly situated with all hourly production employees by demonstrating that (1) all employees were subjected to the same pay policies; (2) all employees performed pre-shift and post-shift duties that went unpaid; (3) the previous pay-system categorically denied employees' unscheduled work to go unpaid; and (4) the current pay system is non-neutral and favors Defendant. *See* Plaintiffs' Brief, pp. 15-23 (Dkt. 59-2).  Thus, in addition to meeting her burden with respect to certification under Rule 23(b)(3), Named Plaintiff has clearly met the "modest factual showing" that she is similarly situated with the proposed class members.[11]

---

[11] Courts have indeed granted conditional certification pursuant to the FLSA even where plaintiffs failed to establish the more demanding standard of class certification under Rule 23.  *Adami v. Cardo Windows, Inc.*, 2014 U.S. Dist. LEXIS 10805, *1 (Jan. 29, 2014) (Simandle, J.).

## II.   <u>Conclusion</u>

For the foregoing reasons, Plaintiffs respectfully request that this Court grant Plaintiffs'

Motion to Certify in its entirety.

Respectfully Submitted,

<u>s/Nicholas D. George</u>
Nicholas D. George, Esq.
Justin L. Swidler, Esq.
**SWARTZ SWIDLER, LLC**
1878 Marlton Pike East, Suite 10
Cherry Hill, NJ 08003
ngeorge@swartz-legal.com
Phone: (856) 685-7420
Fax: (856) 685-7417

Dated:  April 21, 2014                                   **ATTORNEYS FOR PLAINTIFFS**