UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CINDY BOBRYK, individually and on behalf of all those similarly situated, et al., | CIVIL NO. 12-5360(NLH)(JS) |
| Plaintiffs, | **OPINION** |
| v. | |
| DURAND GLASS MANUFACTURING COMPANY, INC., | |
| Defendant. | |

Appearances:

JUSTIN L. SWIDLER
RICHARD STEVENS SWARTZ
NICHOLAS DENNIS GEORGE
SWARTZ SWIDLER, LLC
1878 MARLTON PIKE EAST, SUITE 10
CHERRY HILL, NJ 08003
*Attorneys for plaintiffs*

THOMAS J. BARTON
DANIEL H. AIKEN
DRINKER, BIDDLE & REATH, LLP
105 COLLEGE ROAD EAST, SUITE 300
PRINCETON, NJ 08542-0627
*Attorney for defendants*

**HILLMAN, District Judge**

Before the Court is plaintiffs' motion for conditional certification for a collective action pursuant to the Fair Labor Standards Act ("FLSA"), and motion for class certification pursuant to Rule 23 regarding their New Jersey state law wage claims. For reasons explained below, plaintiffs' motion for

conditional certification will be granted, and their motion for class certification will be denied without prejudice.

## I.   BACKGROUND

Plaintiffs are current or former employees of defendant Durand Glass Manufacturing Company. ("Durand"). Durand is a producer of commercial glassware and ceramics located in Millville, New Jersey and is an employer within the meaning of 29 U.S.C. § 203(d).[1]  Its production facility operates 24 hours a day, seven days a week, and employs over 500 individuals paid on an hourly basis.

Durand employees are required to wear personal protective equipment ("PPE"), gather any required equipment, supplies or tools, and report to work prior to their shift time, sometimes discussing work tasks to be performed with the employee whose shift was ending.  After their shift ends, some Durant employees are required to remain in their production location until relieved or until outstanding work assignments or work-related duties are completed, return work equipment, and

---

1   "'Employer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency, but does not include any labor organization (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization." 29 U.S.C. § 203(d).  There is no dispute that plaintiffs are employees of defendant.

take off or doff their PPE.  Plaintiffs allege that the required pre- and post-shift tasks, such as donning and doffing PPE, constitute unpaid overtime recoverable under FLSA and New Jersey Wage Laws.

Prior to July 2012, Durand paid only for hours worked between scheduled shift-start and shift-end times, or for overtime if pre-approved by management.  After July 2012, Durand instituted a "seven minute" rounding policy.  Under the rounding policy, if employees clocked in seven minutes or less before their scheduled start time, their paid start time would be rounded forward to their scheduled start time.  If employees clocked seven minutes or less after their scheduled end time, their paid end time would be rounded back to their scheduled end time.  The seven minute grace period is not paid compensation.  If, however, the employee clocks in more than seven minutes before his scheduled start time, or more than seven minutes after his scheduled end time, the employee could be penalized if he did not get prior approval for overtime.  With approval, the employee would get paid overtime.

## II.  JURISDICTION

Plaintiffs bring this action on behalf of themselves and others "similarly situated" to remedy alleged violations of

3

the Fair Labor Standards Act, 29 U.S.C. § 201, et seq., and therefore this Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction). The Court exercises jurisdiction over plaintiffs' pendant state law wage claims pursuant to 28 U.S.C. § 1367.[2]

### III. DISCUSSION

Plaintiffs allege that defendant violated the Fair Labor Standards Act ("FLSA"), the New Jersey Wage and Hour Law and the New Jersey Payment Law ("NJ Wage") by failing to pay named plaintiffs and those similarly situated overtime

---

2  Pursuant to their New Jersey law wage claims, plaintiffs seek Rule 23 class certification in which plaintiffs must "opt-out" of the class, rather than "opt-in" under the FLSA's conditional certification.  Actions that proceed under both "opt-in" and "opt-out" procedural mechanisms are sometimes referred to as "hybrid" actions.  Although some courts have declined to exercise jurisdiction over the state law claims in such hybrid actions, the Third Circuit recently ruled that jurisdiction over a Rule 23 "opt-out" class action based on state-law claims that parallel the FLSA is not "inherently incompatible" with the FLSA's conditional certification "opt-in" procedure.  See Knepper v. Rite Aid Corp., 675 F.3d 249, 260 (3d Cir. 2012) (also concluding that the FLSA does not preempt state law claims).  Thus, the Court exercises supplemental jurisdiction over plaintiffs' state wage claims because the underlying operative facts concerning the state law claims are the same as the FSLA claim.  See Lyon v. Whisman, 45 F.3d 758, 761 (3d Cir. 1995) (district courts will exercise supplemental jurisdiction if the federal and state claims "are merely alternative theories of recovery based on the same acts,") (citing Lentino v. Fringe Employee Plans, Inc., 611 F.2d 474, 479 (3d Cir. 1979)).

compensation, as well as for certain hours worked.  Plaintiffs seek conditional certification for a collection action pursuant to the FLSA, and also seek class certification pursuant to Fed. R. Civ. P. 23.

### A. Conditional Certification

#### 1. Standard for Conditional Certification for a Collection Action Pursuant to the FLSA

The Fair Labor Standards Act ("FLSA") governs hour and wage practices and requires, among other things, that employers pay covered employees at least a specified minimum wage for work performed and overtime pay for hours worked in excess of forty hours per week.  See 29 U.S.C. §§ 202, 207.  Plaintiffs seek to sue on behalf of themselves and other employees similarly situated pursuant to Section 216(b) of the FLSA.[3]  See 29 U.S.C. § 216(b), ruled unconstitutional on other grounds in Alden v. Maine 527 U.S. 706, 712 (1999) ("finding unconstitutional provision of FLSA authorizing private actions against states in state courts without their consent).

Unlike a class certification pursuant to Fed. R. Civ. P. 23, under the FLSA, "conditional certification" does not produce

---

3   Section 216 permits, *inter alia,* a plaintiff and other employees similarly situated to file suit against his or her employer.  See 29 U.S.C. § 216(b).

5

a class with an independent legal status, or join additional parties to the action.  Genesis Healthcare Corp. v. Symczyk, 133 S.Ct. 1523, 1530 (2013); Pearsall-Dineen v. Freedom Mortg. Corp., --- F.Supp.2d ----, 2014 WL 2873878, at * (D.N.J. June 25, 2014) ("The conditional certification process, despite sometimes borrowing the language of class action certification from Federal Rule of Civil Procedure 23, is not really a certification but instead is a 'district court's exercise of [its] discretionary power ... to facilitate the sending of notice to potential class members.'") (citations omitted)).

The Third Circuit has outlined a two-step process for deciding whether an action may properly proceed as a collective action under the FLSA.  See Camesi v. University of Pittsburgh Medical Center, 729 F.3d 239, 243 (3d Cir. 2013) (citing Zavala v. Wal–Mart Stores Inc., 691 F.3d 527, 535 (3d Cir. 2012)).  In the first stage, "[a]pplying a 'fairly lenient standard' ... the court makes a preliminary determination as to whether the named plaintiffs have made a 'modest factual showing' that the employees identified in their complaint are 'similarly situated.'"  Id.  "If the plaintiffs have satisfied their burden, the court will 'conditionally certify' the collective action for the purpose of facilitating notice to potential opt-

6

in plaintiffs and conducting pre-trial discovery." Id.  Rather than opting-out as is done in a traditional class action lawsuit, in an FLSA class action, potential class members must opt-in by providing written consent filed with the Court. Manning v. Gold Belt Falcon, LLC, --- F.Supp.2d ----, 2011 WL 4583776, at *1 (D.N.J. Oct. 5, 2011) (stating that under the FLSA there are "two pertinent requirements to maintain a collective action: 1) each Plaintiff must manifest his written consent, and 2) Plaintiff's attorney must file that consent with the Court.").

In the second stage, "with the benefit of discovery, 'a court following this approach then makes a conclusive determination as to whether each plaintiff who has opted in to the collective action is in fact similarly situated to the named plaintiff.'" Camesi, 729 F.3d at 243 (citing Symczyk v. Genesis Healthcare Corp., 656 F.3d 189, 193 (3d Cir. 2011), rev'd on other grounds, Symczyk, 133 S.Ct. at 1526); Kronick v. Bebe Stores, Inc., No. 07-4514, 2008 WL 4546368 at *1 (D.N.J. 2008) ("In the second stage, after more evidence is available, the court makes a final determination as to whether the plaintiff is similarly situated to the rest of the class.").  "This step may be triggered by the plaintiffs' motion for 'final

7

certification,' by the defendants' motion for 'decertification,' or, commonly, by both." Id. "If the plaintiffs succeed in carrying their heavier burden at this stage, the case may proceed on the merits as a collective action." Id.; Armstrong v. Weichert Realtors, No. 05-3120, 2006 WL 1455781, at *1 (D.N.J. May 19, 2006) (In order for a collective action to proceed under § 216(b): (1) named plaintiffs must show that potential class members are "similarly situated" and (2) members must affirmatively "opt-in."). The plaintiff bears the burden of proving that class members are similarly situated. See Troncone v. Velahos, No. 10-2961, 2011 WL 3236219, at *4 (D.N.J. July 28, 2011).

### 2. Plaintiffs' Motion for Conditional Certification for "Opt-In" Collective Action Pursuant to the FSLA

At the first stage, plaintiffs have met the fairly lenient evidentiary standard to establish conditional certification for a collective action pursuant to the FLSA. Plaintiffs have submitted sworn declarations attesting to procedures they follow during their employment with Durand. The facts attested to in the declarations support plaintiffs' contentions that they engaged in some work related activity prior to the beginning of their shifts and at the conclusion of their shifts. All of Durand's employees are paid hourly. They

8

are all currently subject to the same seven minute rule and rounding policies. They are all subject to the same overtime policy. Although the amount of PPE required of each position can vary, all of Durand's employees are required to wear some PPE prior to beginning their shift, which they remove at the conclusion of their shift. Accordingly, plaintiffs have provided the requisite factual nexus between their situation and the situation of other employees sufficient to determine that they are similarly situated.

Therefore, plaintiffs' motion for conditional certification for an "opt-in" collection action pursuant to the FLSA will be granted.

    **B.   Class Certification**

        **1. Standard for Class Certification Pursuant to Rule 23**

In addition to their FLSA claim, plaintiffs brought NJ Wage claims. Pursuant to their state law wage claims, plaintiffs seek Rule 23 class certification in which plaintiffs must "opt-out" of the class, rather than "opt-in" under the FLSA's conditional certification. Federal Rule of Civil Procedure 23 permits "[o]ne or more members of a class [to] sue ... as representative parties on behalf of all members" of the class. FED. R. CIV. P. 23(a). Accordingly, Rule 23 "sets forth a

two-pronged standard for class certification."  Franco v. Conn. Gen. Life Ins. Co., 289 F.R.D. 121, 129 (D.N.J. 2013) (citing Fed. R. Civ. P. 23).  "To obtain certification, a plaintiff must demonstrate that the putative class meets the threshold requirements of Rule 23(a) as well as one of the three Rule 23(b) categories under which [the plaintiff] wishes to proceed on behalf of a class."  Id.; see also Wal–Mart Stores, Inc. v. Dukes, --- U.S. ---, 131 S. Ct. 2541, 2548–49 (2011)).  On a motion for class certification, "[i]t is plaintiff's burden to show that a class action is a proper vehicle for th[e] lawsuit."  Hayes v. Wal-Mart Stores, Inc., 725 F.3d 349, 354 (3d Cir. 2013); see also Comcast Corp. v. Behrend, --- U.S. ---, 133 S. Ct. 1426, 1432, 185 L.Ed.2d 515 (2013) ("The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only. ... To come within the exception, a party seeking to maintain a class action 'must affirmatively demonstrate his compliance' with Rule 23.") (citations omitted)).  "[P]laintiffs wishing to proceed through a class action must actually prove — not simply plead — that their proposed class satisfies each requirement of Rule 23 ... ."  Halliburton Co. v. Erica P. John Fund, Inc., 134 S.Ct. 2398, 2412 (2014).

10

As the Third Circuit has explained, the "party seeking class certification must first establish the four requirements of Rule 23(a): '(1) the class is so numerous that joinder of all members is impracticable [numerosity]; (2) there are questions of law or fact common to the class [commonality]; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class [typicality]; and (4) the representative parties will fairly and adequately protect the interests of the class [adequacy].'" In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 309 n.6 (3d Cir. 2008). "[Class] certification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.  Frequently that rigorous analysis will entail some overlap with the merits of the plaintiff's underlying claim.  That cannot be helped." Hayes, 725 F.3d at 353-54 (citing Dukes, 131 S. Ct. at 2551) (internal quotations omitted).

Where the plaintiff satisfies all four prerequisites under Rule 23(a) - numerosity, commonality, typicality, and adequacy – "a class of one of three types [set forth in Rule 23(b)] (each with additional requirements) may be certified." In re Hydrogen Peroxide, 552 F.3d at 309 n.6.  Plaintiffs in

11

this case seek certification under Rule 23(b)(3).  A class action may be maintained under Rule 23(b)(3) if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  FED. R. CIV. P. 23(b)(3).  "Factual determinations supporting Rule 23 findings must be made by a preponderance of the evidence."  In re Hydrogen Peroxide, 552 F.3d at 307.  "'A party's assurance to the court that it intends or plans to meet the requirements is insufficient.'"  Hayes, 725 F.3d at 354 (citing In re Hydrogen Peroxide, 552 F.3d at 307).

In addition to Rule 23(b)(3) requirements, the Third Circuit has increasingly emphasized the importance of ascertainability of the class with respect to classes certified under Rule 23(b)(3).  See, e.g., Carrera v. Bayer Corp., 727 F.3d 300, 305-08 (3d Cir. 2013); Hayes, 725 F.3d at 354-56; Marcus v. BMW of N. Am., LLC, 687 F.3d 583, 592-94 (3d Cir. 2012).[4] Beginning in Marcus, the Third Circuit recognized that "an essential prerequisite of a class action, at least with respect

---

4   In each of these cases, the district court's order certifying the class was vacated on appeal with respect to the ascertainability issue and remanded for further proceedings.

12

to actions [brought] under Rule 23(b)(3), is that the class must be currently and readily ascertainable based on objective criteria."  Marcus, 687 F.3d at 592-93; see also Hayes, 725 F.3d at 355 ("As 'an essential prerequisite' to class certification, ... plaintiff must show by a preponderance of the evidence that the class is ascertainable.") (citations omitted); Carrera, 727 F.3d at 306 ("a plaintiff must show, by a preponderance of the evidence, that the class is 'currently and readily ascertainable based on objective criteria,' and a trial court must undertake a rigorous analysis of the evidence to determine if the standard is met.")  (citations omitted).

      The Third Circuit has determined that several important objectives are served by virtue of the ascertainability requirement for Rule 23(b)(3) class actions: (1) the requirement "eliminates 'serious administrative burdens that are incongruous with the efficiencies expected in a class action' by insisting on the easy identification of class members[;]" (2) the requirement "protects absent class members by facilitating the 'best notice practicable' under Rule 23(c)(2)[;]" and (3) the requirement "protects defendants by ensuring that those persons who will be bound by the final judgment are clearly identifiable."  Marcus, 687 F.3d at 593;

13

see also Hayes, 725 F.3d at 355.

Ascertainability thus consists of "two important elements": (1) "the class must be defined with reference to objective criteria[;]" and (2) "there must be a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition."[5] Hayes, 725 F.3d at 355 (citing Marcus, 687 F.3d at 593-94). Ascertainability necessitates an inquiry into "whether the defendants' records can ascertain class members, and if not, whether there is a reliable, administratively feasible alternative."[6] Id. at 594. The Third Circuit has made clear

---

5  At least one commentator has observed that "[a]dministrative feasibility means that identifying class members is a manageable process that does not require much, if any, individual factual inquiry." Hayes, 725 F.3d at 355 (citing William B. Rubenstein, Newberg on Class Actions § 3:3 (5th ed. 2011)).

6  In Hayes, the district court "did not see [the defendant's lack of records identifying potential class members] as a barrier to class certification, reasoning that plaintiff should not be hindered from bringing a class action because defendant lacked certain records." 725 F.3d at 355. The Third Circuit, however, reached the opposite conclusion, explaining that "the nature or thoroughness of a defendant's recordkeeping does not alter the plaintiff's burden to fulfill Rule 23's requirements." Id. at 356. Therefore, in circumstances where a defendant "lacks records that are necessary to ascertain the class ... plaintiff must offer some reliable and administratively feasible alternative that would permit the court to determine" which individuals fit the definition of the class. Id.; see id. ("Rule 23's requirements that the class be administratively

14

that where "class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate." Marcus, 687 F.3d at 593.

When considering a plaintiff's proposed mechanism for ascertaining the class, the Third Circuit has cautioned "against approving a method that would amount to no more than ascertaining by potential class members' say so[,]" by, for example, "having potential class members submit affidavits" that they meet the class definition. Marcus, 687 F.3d at 594. Without "further indicia of reliability," permitting such a method would essentially force defendants "to accept as true absent persons' declarations that they are members of the class," raising "serious due process implications." Id. A "petition for class certification will founder if the only proof of class membership is the say-so of putative class members or if ascertaining the class requires extensive and individualized fact-finding." Hayes, 725 F.3d at 356.

### 1. Plaintiffs' Motion for Class Certification

Plaintiffs seek to certify a class of all former and

---

feasible to ascertain and sufficiently numerous to warrant class action treatment cannot be relaxed or adjusted on the basis of [plaintiff's] assertion that [defendant's] records are of no help to him.").

15

current hourly production employees of defendant.  With regard to all of the former and current employees' pre- and post-shift duties, plaintiffs have not met the ascertainability requirement of this proposed class because they have not established that each employee is subject to the same pre-shift and post-shift routine or duties.  Although all proposed class members are required to wear safety glasses and ear plugs, some employees are required to wear boots, some require tools, and some are required have "shift report" conversations with the person they are relieving from their shift.  However, to determine how much time each employee should be compensated for pre- and post-shift activities, the Court would have to determine each employee's, or at least each group of employees with the same job description, duties.  Undertaking this type of individual analysis makes it difficult to ascertain the class.  For example, if an employee's pre-shift duties took over eight minutes, then presumably, that employee would have gotten paid (if her overtime was approved), while the employee whose pre-shift duties took her less than five minutes, her time would have been "rounded up" and she would not have gotten paid.  The unknown is how long it takes each employee to perform her pre- or post-shift duties which directly impacts whether the employee

16

got paid.  Plaintiffs have not presented a proposed class in which the Court can ascertain the employees' pre- and post-shift routine, including the donning and doffing of PPE, without undergoing an individual analysis of each employee and how much time it took her to complete such duties.  The sworn declarations submitted by plaintiffs indicate that each plaintiff performed slightly different pre- and post-shift duties than her fellow co-workers.[7]  Although they all wear some

---

7  By way of example, the first four declarations highlight the variations in pre- and post-shift duties of some of the employees:

    Lashon Golden states that her pre-shift duties include: "donning protective work gear and obtaining new gloves if needed; reporting to the cold-end office to receive critical information such as my lineup sheet, assignments, and reviewing sample rejects for the day; and relieving the outgoing shift worker which includes going to the line, being at the line upon the ringing of the bell (which rings approximately 5 minutes before the scheduled shift start time signaling when the relieving packer is required to be on the line), relieving the prior shift worker, and transitioning to the line at the scheduled shift start time."  Golden's post-shift duties include: "working on the production line until being relieved; providing critical information to the relieving packer such as explaining problem issues on the line, walking to the clock-out station, and doffing protective gear after I clock out and leave DGMC's facilities."

    Brenda Dunn states that her pre-shift duties include: "donning protective work gear, reporting to my work area, at which time I turned on my computer and checked email for any work orders or to determine what maintenance was needed at that time, and performing a visual inspection of certain work areas within DGMC grounds (including the forklift parking area,

17

PPE, some wear more than others and some engage in more duties outside their shift time than others.  There is also no indication how long it takes to get from the clock where the employees punch in and out to their respective work stations.

      Likewise, it is not possible to ascertain a class of all former and current hourly employees prior to the commencement of the seven minute rule.  The facts show that some employees would punch in upon arrival and then proceed to get a cup of coffee, maybe breakfast, or socialize prior to beginning

---

warehouse, and cold-end area) to determine which forklifts required maintenance.  Her post-shift duties include: "changing out of my PPE" and "general maintenance tasks such as checking lifts, tires, air, oil, light bulbs, wiring or horns."

    Cynthia Brownlow states that her pre-shift duties include: "donning protective gear, reporting to my work area, receiving shift report, gathering my cart and tools from my locker ... reviewing and inspecting the decorating machines... ."  Her post shift duties include: performing post shift duties until relieved, providing critical information to oncoming employee, returning tools, returning cart, cleaning under machines with a blow hose when needed and doffing PPE.

    Christopher Eldridge states that his pre-shift duties include: checking the line up sheet on the bulletin board in the cafeteria, putting on ear plugs, obtaining work gloves, having a "change-over" conversation with outgoing worker.  His post-shift duties include: a change-over conversation with incoming employee, doffing his PPE, and inspecting his gloves.

of their work shift, as well as don PPE.  There is no way to group all the employees in one class without undergoing an individualized inquiry with each employee as to her pre-shift routine.  Although plaintiffs complain that it was Durand's failure to properly account for time worked by allowing employees to clock in well ahead of their start time, plaintiffs have not presented evidence that, prior to the seven minute rule being implemented, all the employees in the proposed class, after clocking-in, engaged in work that went uncompensated (with the exception of the donning and doffing of PPE which has been addressed above).[8]

Therefore, plaintiffs have not presented an ascertainable class.  See Hayes, 725 F.3d at 354 (plaintiff must show by a preponderance of the evidence that the class is

---

8    Durand argues that plaintiffs have not identified an ascertainable class with regard to their seven minute policy because their rounding practices have been applied neutrally, and the donning and doffing of PPE is considered *de minimus*.  Whether the policy was applied neutrally, or the action *de minimus*, is a fact specific inquiry that goes beyond the present motion for class certification.  The issue before the Court is whether the class can be ascertained and whether it meets Rule 23 requirements.  Although the Court must undergo a rigorous analysis to determine whether the prerequisites of Rule 23 have been satisfied, and that analysis will entail some overlap with the merits of the underlying claim, Hayes, 725 F.3d at 353-54, that is not to say that the ultimate merits of the case are to be decided on a motion for class certification.

19

ascertainable which is an essential prerequisite to class certification under Rule 23).  The proposed class is not ascertainable with regard to employees who vary in the amount of time required to don or doff PPE depending upon the amount of PPE required and any pre- or post-inspection duties.[9]  Thus, because plaintiffs have not met the ascertainability requirement, the Court finds that plaintiffs' proposed class does not meet Rule 23 requirements at this time.

### IV. CONCLUSION

For the foregoing reasons, plaintiffs' motion for conditional certification for a collective action pursuant with regard to their FLSA claim will be granted.  Plaintiffs' motion for class certification pursuant to Rule 23(b)(3) will be denied will be denied without prejudice.

An Order consistent with this Opinion will be entered.

                                                 S/Noel L. Hillman
                                                 NOEL L. HILLMAN, U.S.D.J.

Date:  September 29, 2014
At Camden, New Jersey

---

9    The Court notes that it may be possible that a more defined class of hourly employees all of whom are subject to the seven minute "rounding up" policy is ascertainable, or subclasses that are grouped according to level of PPE, or time-needed to complete pre- or post-inspection duties.  However, the Court cannot decide at this time whether such limitations on the proposed class would make it ascertainable or satisfy Rule 23 requirements.